1   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
2   MORRISON & FOERSTER LLP
    425 Market Street
3   San Francisco, California 94105-2482
    Telephone:      (415) 268-7000
4   Facsimile:      (415) 268-7522

5   BITA RAHEBI (CA SBN 209351)
    brahebi@mofo.com
6   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
7   Los Angeles, California  90017
    Telephone: (213) 892-5200
8   Facsimile:  (213) 892-5454

9   *Attorneys for Plaintiff*
    FIGMA, INC.

10

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13

| 14 | FIGMA, INC., | Case No. |
|----|----|----|
| 15 | Plaintiff, | **COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT** |
| 16 | v. | |
| 17 | MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDING GROUP CO. LTD., | **DEMAND FOR JURY TRIAL** |
| 18 | | |
| 19 | Defendants. | |

20

21

22

23

24

25

26

27

28

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT

Plaintiff Figma, Inc. ("Figma"), for its Complaint against Defendants Motiff Pte. Ltd., Yuanfudao HK Ltd., and Kanyun Holding Group Co. Ltd. (collectively, "Defendants"), alleges as follows:

**<u>PARTIES</u>**

1.     Founded in 2012, Figma is a leader in cloud-based design software.  Its suite of web-based tools combines powerful features with multi-user functionality to make it faster, easier, and more fun for teams to ideate, design, and build products together, from start to finish.  Figma is a corporation organized under the laws of the State of Delaware and has its corporate headquarters at 760 Market Street, Floor 10, San Francisco, California 94102.

2.     Upon information and belief, Defendant Motiff Pte. Ltd. ("Motiff") is a corporation organized under Singapore law in March 2024 with its principal place of business at 6 Raffles Quay, #14-02, Singapore 048580.

3.     Upon information and belief, Defendant Yuanfudao HK Ltd. a/k/a Ape Counseling ("Yuanfudao") is a corporation organized under the laws of China with its principal place of business at Floor 6, Area F, Block A, Lei Shing Hong Center, No. 8, Guangshun South Street, Wangjing, Chaoyang District, Beijing, 100000, China.

4.     Upon information and belief, Defendant Kanyun Holding Group Co. Ltd. a/k/a Beijing Kanyun Holdings Co., Ltd. ("Kanyun") is a corporation organized under the laws of China with its principal place of business at Floor 6, Area F, Block A, Lei Shing Hong Center, No. 8, Guangshun South Street, Wangjing, Chaoyang District, Beijing, 100000, China.

5.     Defendants Motiff, Yuanfudao, and Kanyun have common and overlapping leadership and employees, utilize shared premises, and have shared operations including email and services procurement.

6.     Defendants Motiff, Yuanfudao, and Kanyun, individually, collectively, or acting in concert, develop and distribute the Motiff software product worldwide and advertise it in the United States.  The Motiff product can be accessed directly from www.motiff.com in the United States.  Motiff also offers desktop applications for Windows and MacOS and mobile applications for Apple devices on Apple's App Store and for Android devices on the Google Play Store.

1

**JURISDICTION AND VENUE**

2      7.     This Court has subject matter jurisdiction over Figma's copyright and state law

3  claims under 28 U.S.C. §§ 1331, 1338(a), (b), and 1367(a).  The Court also has diversity

4  jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.

5      8.     This Court has personal jurisdiction over Defendants.  Defendants have conducted,

6  and continue to conduct, business within the State of California and within this District.

7  Defendants have purposefully aimed the effects of their conduct to cause harm in the State of

8  California and within this District.  Defendants, directly or through intermediaries, make,

9  distribute, offer for sale or license, sell or license, or advertise their products and services in the

10  United States, the State of California, and this District.

11      9.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or

12  omissions giving rise to the claim occurred in, or a substantial part of property that is the subject

13  of the action is situated in, this District.

14

**INTRADISTRICT ASSIGNMENT**

15      10.     This is an Intellectual Property Action to be assigned on a district-wide basis

16  pursuant to Civil Local Rule 3-2(c).

17

**BACKGROUND**

18

**1.   Figma's Groundbreaking Design Software**

19      11.     The field of digital product design (often referred to simply as, "product design") is

20  relatively new, having evolved with the rise of the digital economy.  Product design focuses on

21  improving a user's interaction with a digital product (*e.g.*, a mobile application or website) by

22  enhancing the user interface ("UI") and user experience ("UX").  High quality product design

23  makes products attractive and easy to use.  For example, when designing a mobile app, a product

24  design team will typically create the look of an app by laying out components (*e.g.*, buttons,

25  icons, headers, images, and text boxes) while considering their visual elements (*e.g.*, their size,

26  contrast, and spacing) and incorporating feedback from a variety of cross-functional stakeholders.

27  Then, the team typically creates a prototype (*i.e.*, an interactive mockup) for the team to simulate

28  a user's experience. With the prototype, the team can test the feel of navigating and using the app.

Once the team is satisfied with the app's look and feel, the designs are typically handed off to software developers to implement (*i.e.*, translate into code).  As many people are involved in developing mobile applications and websites, users of product design software frequently span product designers, software developers, product managers, and other cross-functional stakeholders, such as user researchers, marketers, copywriters, lawyers, executives, and other team members.

12.   Figma is well-known for its leadership and innovation in developing web-based, collaborative software tools to ideate, design, and build digital products.  Figma introduced its flagship product, Figma Design, in 2016.  Figma's key insight was that designing great digital products is a team sport.  By building the first product design tool on the web, Figma enabled multiple users to work on the same file simultaneously (*i.e.*, in real-time) for the first time.  Figma's groundbreaking web-based tool made sharing design files as easy as sharing a link.  Everyone involved can always review, comment on, or edit the most current version.  Figma Design gained immediate traction due to its revolutionary capabilities and instant appeal.

13.   Since Figma Design's initial release, Figma has continued to invest in research and development to enhance its software product suite, address emerging market needs, and provide state-of-the-art technology to help customers build digital products.  Its offerings include: Dev Mode, a workspace in Figma Design that helps a software developer efficiently translate a Figma design file into software code; FigJam, a collaborative online whiteboarding tool; and Figma Slides, a presentation tool for collaborative, interactive presentations.  Collectively, this suite of offerings is known as the "Figma Platform."

14.   Through its commitment to quality and innovation, Figma has fundamentally changed the way teams build digital products and, in the process, established tremendous consumer goodwill.  With millions of users of its design products, Figma is one of the most widely used design software platforms in the world.  Today, companies such as Netflix, Airbnb, Zoom, and Dropbox have come to rely on Figma to create and build their products.

**2.   Figma's Protected Copyrights**

15.   Figma's source code is one of the company's most valuable and closely guarded

assets, and Figma has gone to great lengths to protect it.  Access to the source code is allowed only on an as-needed basis.  Figma protects the source code by placing it in secure, access-controlled source code repositories, maintaining confidentiality policies, and requiring comprehensive device security measures.  Figma's source code is protected by U.S. Copyright Registrations TXu002441751, TXu002441752, and TXu002441753.

16.    Figma maintains a Help Center, allowing users to find answers and inspiration on all things Figma—in essence, Figma's products' manual.  Figma's Help Center is protected by U.S. Copyrights TXu002443057, TXu002443868, and TXu002443873.

### 3. Figma's Master Subscription Agreement

17.    To obtain a limited license to access and use Figma's software and services, users must obtain a license that varies based on the scope of the subscription.

18.    Defendant Yuanfudao is a former Figma customer.  Defendant Yuanfudao agreed to Figma's Master Subscription Agreement ("MSA").  The MSA binds Defendant Yuanfudao and Defendant Yuanfudao's affiliates, Defendant Motiff and Defendant Kanyun.  Attached as Exhibit A, and incorporated by reference, is a true and correct copy of Figma's MSA.

19.    The MSA's limited license is conditioned on compliance with various terms that protect Figma's intellectual property.  By entering into the MSA, users agree not to "reverse engineer, decompile, disassemble or otherwise attempt to discover the source code, object code or underlying structure, ideas, know-how or algorithms relevant to the Figma Platform."  Users also agree not to "modify, translate, or create derivative works based on the Figma Platform . . . or Documentation."

20.    The MSA provides notice to users that Figma owns the Figma Platform, Documentation, and all associated intellectual property ("Figma IP").  The MSA also provides notice to users that Figma IP is protected by copyright.

21.    Defendant Yuanfudao agreed to the MSA by executing an initial Service Order on May 18, 2020.  Between May 2020 and August 2021, Defendants were provided four separate "Organization" accounts under the initial Service Order and three subsequent Service Orders.

22.    After agreeing to the MSA, Defendant Yuanfudao facilitated access to Figma's

software and services for employees of Defendant Kanyun and Defendant Motiff through these Organization accounts.  On information and belief, Defendants used this access to develop the Motiff product.

**4.   Motiff Introduces a "New" Cloud-Based Design Software**

23.    Defendant Motiff unveiled the Motiff product at a public launch at the SuperAI Singapore Summit on June 5, 2024.  Like Figma, Motiff also offers a workspace identically named "Dev Mode" to help a software developer translate a design file into software code.

24.    Attached as Exhibit B is a true and correct copy of a contemporaneous blog post dated June 5, 2024, entitled, "Welcome to Motiff: UI design tool for AI era."

25.    In the blog post, Defendant Motiff's purported co-founders—as employees of Defendant Kanyun—claim to have begun work on the Motiff product in October 2021.  The blog post further states that "[c]reating a comprehensive editor demanded significant effort from the Motiff team."

26.    But rather than describing those "significant effort[s]," the post refers to Defendant Motiff "ow[ing] a debt of gratitude to Figma for paving the way."  The post further acknowledges "Figma's creation of a complex yet refined online graphic editor [as] a source of constant learning" for Motiff and refers to Figma's "blog shares" as benefiting Motiff "immensely."

27.    Shortly after the June 5 launch of the Motiff product, Defendants' employees attended Config (Figma's annual user conference), in person in San Francisco, beginning June 26, 2024.  At this year's Config, Defendants advertised their product's recent launch by having a billboard truck featuring the Motiff product brazenly circle the conference site at Moscone Center in San Francisco.

28.    From "day one," Defendant Motiff has intended to "pursue business opportunities at home and abroad," including in the United States.  *See* "Chinese apps eye overseas users amid local competition," South China Morning Post (Aug. 26, 2024) (quoting Defendant Kanyun employee and Defendant Motiff co-founder Haoran (Ryan) Zhang) (Exhibit C).  Defendant Motiff has, in fact, "quickly secured its first batch of users" for its copied product in the United States" -- by undercutting Figma's prices by 80%.  *See id.*

29.     Defendants have directed their conduct to the United States and to this District, in particular.  Defendants distribute the Motiff product using copies made in the Northern District of California.  To enhance the responsiveness and performance for their users, Defendants employ servers within this District to distribute their copied product to users.

**5.  The Motiff Product is Built on Copied Figma Code**

30.     Defendant Motiff's blog post is in many ways inaccurate.  Defendants did not develop the Motiff product's editor—the "foundation" of the product—merely from reading Figma's blog shares and employing their own honest labor.  Instead, Defendants impermissibly reversed engineered Figma's products and misappropriated significant portions of Figma's proprietary code.

31.     The Motiff product is not merely inspired by Figma Design, nor does it simply share similar interfaces and commands.  In crucial and unmistakable ways, the Motiff product performs identically to prior versions of Figma Design and the Figma Platform.  This duplication could not have been accomplished by coincidence or by applying similar programming logic.

32.     Software naturally evolves as new features are added during a product's lifecycle.  This evolution results in distinctive signatures in the source code—much like the unique patterns in the genetic code of living organisms.  Just as the existence of mutations and other anomalies can demonstrate genetic lineage, the existence of "bugs," programming remnants, and other idiosyncrasies in software code can establish programming lineage.

33.     So, too, do design decisions—whether and how to express a function or data structure in code, how to create an interface so that the user interacts with a product logically and intuitively, and how to phrase error messages, user notifications, and online education materials—reveal engineers' and product marketing's unique stamp on a product.  Defendants' copying of Figma's design choices—reflected in code, strings of text, and even inefficiencies and bugs—present perhaps the clearest case for Defendants' extensive copying of Figma and its code.  These elements could not have been introduced without the wholesale copying of significant portions of Figma's proprietary code.

34.     All software code has quirks, but no two independently developed pieces of code

should have *identical* quirks.  It is revealing—troubling, even—that the Motiff product displays many of the same idiosyncrasies and "bugs" found in Figma Design.

35.    The inescapable conclusion is that Defendants improperly and illegally copied substantial portions of Figma's code, appropriating years of Figma's development effort.  The Motiff product is replete with not only identical bugs and idiosyncrasies, but also copied code, data structures, interface elements, and text indicating its origins in the Figma Platform.  The non-exhaustive examples of Defendants' widespread copying below confirm Defendants' breach of contract and copyright infringement.

### 1.    Copied Code

#### a.    Copied Shader Code

36.    The Motiff product copies the Figma Platform's shaders.  Shaders are small programs that run locally on a user's graphics processor.  They are tightly coupled to the code that invokes them (*i.e.* that asks the graphics processor to run the shader) and indicative of the invoking code's content.

37.    When distributed by a web program to a user's machine to compile and run, shader code is provided in a condensed ("minified") form.  The automated "minifying" process condenses the shader code into the smallest packets of data possible to increase transmission speed and reduce bandwidth costs.  Minifying eliminates white space by substituting expressive variable names for single characters, retaining only the minimum set of information needed for the graphics drivers and processor to compile and run the shader.  The minified shader only retains: (1) variable types, (2) single character variable names, (3) hardcoded numerical values, (4) operations, and (5) the structure of the shader code.  The minified code, rather than the expressive code from which it is built, is visible to a user through developer tools.

38.    The image below shows the results of a "diff"—a software developer's version of a "redline"—making a character-by-character comparison of one of the Motiff product's minified shaders with the equivalent minified Figma Platform shader.  The green font indicates characters in the Motiff product that differ from those in the Figma Platform's minified shader.  The red font indicates characters that do not appear in the Motiff product but appear in the Figma Platform's

minified shader.  The grey font indicates code common to both shaders.  The green and red pairs, which show a substitution or re-arrangement of one variable for another, reveal Defendants' copying of the Figma Platform's shader:

```
precision highp float;uniform sampler2D gi,yB;uniform int uq;uniform float CE;varying vec2 e;const vec3 h
=vec3(.2126,.7152,.0722);const float l=float(255)/float(255),m=float(230)/float(255),k=float(204)/float(2
55);float Aa_(vec3 a){return min(min(a.r,a.g),a.b);}float Hma(vec3 a){return max(max(a.r,a.g),a.b);}float
Iga(vec3 a){return Hma(a)-Aa_(a);}float Jha(vec3 a){return dot(a,vec3(.3,.59,.11));}vec3 Bna(vec3 c,vec3
id){float ab=Jha(id);vec3 ba=c+(ab-Jha(c));float de=Aa_(ba),fg=Hma(ba);ba=de<0.?mix(vec3(a),b),a,b/(ab-d
e)):fg>1.?mix(vec3(ab),ba,(1.-ab)/(fg-ab)):ba;return ba;}vec3 KNa(vec3 a,vec3 db,vec3 fe){float bc=Iga(a)
;vec3 cd=vec3(0.);if(bc>0.){float ig=Aa_(a),nh=Iga(db);cd=(a-ig)*nh/bc;}return Bna(cd,fe);}void main(){ve
c4 rj=texture2D(gi,ef)*CE,vk=texture2D(yB,ef);float bc=rj.a,a=vk.a;vec3 cb=vk.rgb;if(bc==0.)gl_FragColor=
vec4(cb,a);else{vec3 d=rj.rgb,fg=d*(1.-a)+cb*(1.-bc);if(uq==3)fg+=min(d*a,c*b*c);else if(uq==4)fg+=d*cb;e
lse if(uq==5)fg=max(vec3(0.),d+c-b-c*a);else if(uq==6){vec3 zx=max(d*a,.003922),Dz=(a-cb)*bc*step(.003922
,a-cb);fg+=bc*a*(1.-min(vec3(1.),D/z/x));}else if(uq==7)fg+=max(d*a,c*b*c);else if(uq==8)fg=d+cb-d*cb;els
e if(uq==9)fg=min(vec3(1.),d+cb);else if(uq==10){vec3 EO=max(a*(bc-d),.003922),FR=c*b*c*step(.003922,cb);
fg+=bc*a*min(vec3(1.),FR/EO);}else if(uq==11)fg+=mix(bc*a-2.*(a-cb)*(bc-d),2.*d*cb,vec3(lessThanEqual(2.*
cb,vec3(a))));else if(uq==13)fg+=mix(2.*d*c,b,2.*(a-cb)*(bc-d),vec3(greaterThan(2.*d,vec3(bc))));else
if(uq==14)fg+=abs(c*b*c-d*a);else if(uq==15)fg+=d*a+c*b*c-2.*d*cb;else{vec3 pl=vec3(0.),nh=d,ie=cb;if(bc
>0.)nh/=bc;if(a>0.)ie/=a;if(uq==12){vec3 IT=1.-ie,Jp=(16.*ie-12.)*ie+3.,Mr=inversesqrt(ie+1e-6)-1.,qm=mix
(Jp,Mr,vec3(greaterThan(ie,vec3(.25))));qm=mix(qm,IT,vec3(greaterThan(nh,vec3(.5))));pl=ie*(1.+qm*(2.*nh-
1.));}else pl=uq==16?KNa(nh,ie,ie):uq==17?KNa(ie,nh,ie):uq==18?Bna(nh,ie):uq==19?Bna(ie,nh):pl;fg+=bc*a*p
l;}gl_FragColor=vec4(fg,bc+a-bc*a);}}const float j=1./float(512);
```

### b. Copied GPU Strings

39.   On information and belief, the Motiff product also copies workarounds for bugs specific to certain graphics processors that Figma has identified through years of product development.  Just as all software has bugs, graphics drivers and graphics processors have bugs.  Through years of operating at scale, Figma has identified bugs that result from bugs within the user's graphics card.

40.   Figma therefore has added unique workarounds to the Figma Platform to avoid these bugs when it detects specific graphics cards or drivers.  In particular, when the Figma Platform detects hardcoded strings referring to those graphics cards or drivers, the product applies the appropriate workaround.  These hardcoded strings are not visible to the typical user.

41.   The newly released Motiff product inexplicably contains the same set of hardcoded strings, such as those for the following graphics cards or drivers:

- Mesa Intel(R) Graphics (ADL GT2)
- Mesa Intel(R) Xe Graphics (TGL GT2)
- Adreno (TM) 725
- Adreno (TM) 730

- Adreno (TM) 740

- Adreno (TM) 750

       **c.**      **Copied Data Transfer, Data Representation, and User Permissions Idiosyncrasies**

42.    These are not the only examples indicating that Defendants copied the code for the Figma Platform when developing the Motiff product. Other idiosyncrasies in the newly released Motiff product confirm this.

43.    Like the Figma Platform, the Motiff product unnecessarily repeats certain data transfers to the user's graphics processor—an unusual design choice. Like the Figma Platform, the Motiff product represents quadratic curves as cubic curves—another unusual design choice. And further, the Motiff product reproduces an undisclosed bug in Figma's network application programmer interface ("API") calls that enables a free-tier user to bypass the three collaborative design file limit included in that tier.

       **2.**      **Copied Data Structures**

44.    Figma's design and selection of data structures used in its products likewise reflect years of product development and evolution. Unlikely similarities in the Motiff product's data structures also underscore Defendants' extensive copying of Figma's code.

45.    **Copied ".fig" document format.** For example, the Motiff product's document format copies the Figma Platform's ".fig" document format. The Motiff product's document format uses similarly (and often identically) named structures and non-intuitive capitalization choices (*e.g.*, isFirstLineOfList; lineType):

| Figma | Motiff |
|---|---|

Figma | Motiff



46.   **Copied autosave schema.**  As another example, the Motiff product's autosave schema mirrors an older version of Figma Design's autosave schema, even using the same version number ("v2") despite the Motiff product's recent June 2024 release.  The Motiff product's autosave schema changes the structure names only slightly using simple substitutions. As the image below reveals, multiple tables in the Motiff product's autosave schema and its session-index share identical names with an older version of Figma Design's autosave schema:



47. The table format is the same. The data stored in the tables have corresponding fields, in the same order, except for variations in a few names. For example, Figma Design's autosave v2's session-index contains fields for "userID," "fileKey," and "sessionID." The Motiff product includes functionally identical fields ("userId," "docId," and "sid") that appear in the same order.

48. **Copied render tree and debugging tool.** As another example, Figma employs a specific approach to rendering that uses an intermediate data structure—a render tree—that has specific types of elements as nodes. Figma also has a debugging tool that prints out the render tree in a particular text format.

49. As depicted below, the Motiff's product's "RenderTree" employs the same non-trivial organization of elements as the Figma Platform's render tree:

Figma



```
> DebuggingHelpers.logAndGetRenderTree('6:6')                                         vendor-core-
  GROUP hasBgBlurs nocache
  ├─FILL path=RoundedRectPath paints=[SOLID color=#FFFFFF opacity=1] isRect bgBlurSafe
  ├─FILL path=UniquePath paints=[SOLID color=#743D3D opacity=1] bgBlurSafe
  ├─FILL path=UniquePath paints=[SOLID color=#000000 opacity=0.5] bgBlurSafe
  ├─FILL path=UniquePath paints=[SOLID color=#4BAE5B opacity=1] bgBlurSafe
  └─METADATA hasBgBlurs nocache
    └─GROUP bgBlurSafe
      ├─MASK type=BACKGROUND_BLUR bgBlurSafe
      ├─FILL path=RoundedRectPath paints=[SOLID color=#FF0000 opacity=0.5] isRect bgBlurSafe
      └─BLUR radius=10 bgBlurSafe
        └─GROUP bgBlurSafe
          ├─FILL path=RoundedRectPath paints=[SOLID color=#FFFFFF opacity=1] isRect bgBlurSafe
          ├─FILL path=UniquePath paints=[SOLID color=#743D3D opacity=1] bgBlurSafe
          ├─FILL path=UniquePath paints=[SOLID color=#000000 opacity=0.5] bgBlurSafe
          └─FILL path=UniquePath paints=[SOLID color=#4BAE5B opacity=1] bgBlurSafe
    └─FILL path=RoundedRectPath paints=[SOLID color=#FF0000 opacity=0.5] isRect bgBlurSafe
<  ▶ i {maxBounds: Ur, _isOptimized: false, flags: 6, children: Array(5), _isFirstChildSolidBackground: false}
   reconnecting with reconnect key 7ec268976db0f391f92c5a443b75a7e6799bf7b6              vendor-core-
> |
```

Motif



```
> wukong.printCurrentTreeRenderObject()
[2024-06-15 12:13:09.267] [info] Group bounds=(x=839 y=-985 w=927 h=635) kHasBackgroundBlur kHasVolatileOffset
├─Fill shape=(Rect w=897 h=635) paints=[(Solid 0xFFFFFFFF)] transform=(869 -985) bounds=(x=869 y=-985 w=897 h=635)
├─VolatileOffset mode=kChildren direction=kHorizontal offsetX=-167 offsetY=0 bounds=(x=839 y=-896 w=608.228 h=439) kHasBackgroundBlur kHasVolatileOffset
│ └─Group bounds=(x=1006 y=-896 w=608.228 h=439) kHasBackgroundBlur kHasVolatileOffset
│   ├─Cache bounds=(x=1179 y=-797 w=363 h=300)
│   │ └─Fill shape=(RRect bounds=(x=363 h=300) radius=(tl=100 tr=100 bl=100 br=100)) paints=[(Solid 0xFF743D3D)] transform=(1179 -797) bounds=(x=1179 y=-797 w=363 h=300)
│   ├─Cache bounds=(x=1139 y=-837 w=443 h=380)
│   │ └─Fill shape=(Blob id=2 bounds=(x=-40 y=-40 w=443 h=380)) paints=[(Solid 0x80000000)] transform=(1179 -797) bounds=(x=1139 y=-837 w=443 h=380)
│   ├─Cache bounds=(x=1160.13 y=-727.035 w=454.102 h=36.5234)
│   │ └─Fill shape=(Glyphs size=15) paints=[(Solid 0xFF4BAE5B)] transform=(1156 -738) bounds=(x=1160.13 y=-727.035 w=454.102 h=36.5234)
│   ├─Mask mode=kBackgroundBlur bounds=(x=1026 y=-896 w=297 h=317) kHasBackgroundBlur kHasVolatileOffset
│   │ └─Fill shape=(Rect x=317 h=317) paints=[(Solid 0x80FF0000)] transform=(-1 8.74228e-08 1323 -8.74228e-08 -1 -579) bounds=(x=1006 y=-896 w=317 h=317)
│   └─Blur radius=10 clamp=(x=1006 y=-896 w=317 h=317) bounds=(x=1026 y=-995 w=917 h=655) kHasBackgroundBlur
│     └─VolatileOffset mode=kBackground direction=kBoth offsetX=167 offsetY=0 bounds=(x=1036 y=-985 w=897 h=635) kHasVolatileOffset
│       └─Group bounds=(x=869 y=-985 w=897 h=635) kHasVolatileOffset
│         ├─Fill shape=(Rect w=897 h=635) paints=[(Solid 0xFFFFFFFF)] transform=(869 -985) bounds=(x=869 y=-985 w=897 h=635)
│         └─VolatileOffset mode=kChildren direction=kHorizontal offsetX=-167 offsetY=0 bounds=(x=972 y=-837 w=475.228 h=380) kHasVolatileOffset
│           ├─Cache bounds=(x=1139 y=-837 w=475.228 h=380)
│           │ └─Group bounds=(x=1139 y=-837 w=475.228 h=380)
│           │   ├─Fill shape=(RRect bounds=(w=363 h=300) radius=(tl=100 tr=100 bl=100 br=100)) paints=[(Solid 0xFF743D3D)] transform=(1179 -797) bounds=(x=1179 y=-797 w=363 h=300)
│           │   ├─Fill shape=(Blob id=2 bounds=(x=-40 w=443 h=380)) paints=[(Solid 0x80000000)] transform=(1179 -797) bounds=(x=1139 y=-837 w=443 h=380)
│           │   └─Fill shape=(Glyphs size=15) paints=[(Solid 0xFF4BAE5B)] transform=(1156 -738) bounds=(x=1160.13 y=-727.035 w=454.102 h=36.5234)
│           └─Fill shape=(Rect x=317 h=317) paints=[(Solid 0x80FF0000)] transform=(-1 8.74228e-08 1323 -8.74228e-08 -1 -579) bounds=(x=1006 y=-896 w=317 h=317)
```

50.    Despite copying the organization and elements of the Figma Platform's render tree and debugging tool, Defendant Motiff falsely claims in a blog post to have "developed a unique data structure dedicated to rendering, named RenderTree" itself.  Attached as Exhibit D, and incorporated by reference, is a true and correct copy of Defendant Motiff's blog post, dated June 18, 2024, entitled "Performance magic behind Motiff."

### 3.    Copied Rendering Bugs

51.    In addition, from years of experience developing the Figma Platform, Figma's

engineers are aware of certain bugs and idiosyncrasies that occur when rendering images.  These bugs and idiosyncrasies reflect specific coding decisions and the evolution of the code base.  The existence of these bugs and idiosyncrasies in the Motiff product underscores Defendants' extensive copying of Figma's code.  A sampling of these idiosyncrasies and bugs appears below.

52.  **Copied outside stroke error.**  When rendering an outside stroke, the Figma Platform will display an unintended error.  *E.g.*, when applying an outside stroke with a width of 200 pixels to a 100-pixel diameter red circle, an unexpected "bullseye" (depicted as the gap between the circle and the stroke below) will appear.  The Motiff product displays the same error.

Figma                                           Motiff



53.  **Copied offset path error.**  As yet another example, the Figma Platform depicts another stroke rendering bug when displaying certain offset paths that should be smooth and continuous.  The Motiff product displays the same error.

Figma                                           Motiff



54. **Copied curved stroke error.** As another example, when rendering a curved stroke with a final segment shorter than the stroke width, the Figma Platform will display another unintended error. *E.g.*, when defining a stroke with three points slightly out of line, the rendered stroke will unexpectedly omit a semicircle where the stroke segments overlap. The Motiff product displays the same error.

Figma

Motiff

55. **Copied red heart emoji error.** As yet another example, when rendering a red heart emoji (❤️), the Figma Platform will display another unintended error—a flat black heart (🖤). The Motiff product displays the same error.

Figma

Motiff





56.   **Copied drop shadow error.**  As yet another example, when rendering a drop shadow that has been applied to an object with a gradient within a frame, the Figma Platform will display an unintuitive behavior upon swapping the frame's direction: the gradient flips, but the drop shadow does not.  The Motiff product displays the same unintuitive behavior.

Figma                                                      Motiff

          

57.   **Copied dash line idiosyncrasy.**  As yet another example, when rendering certain dashed lines, the Figma Platform will display a unique design idiosyncrasy.  *E.g.*, a user-specified dashed line that is 30 pixels in length will instead appear substantially shorter in certain scenarios. The corners also have a specific shape.  The Motiff product displays these same idiosyncrasies.

Figma                                                      Motiff

          

58.   **Copied line node to vector node conversion.**  As yet another example, when converting a line node to a vector node, the Figma Platform will shift the node to a half-pixel position.  Specifically, instead of snapping to standard grid positions, the converted vector node will unintuitively be shifted half a pixel.  The Motiff product displays the same behavior.

59.   **Copied SVG export rendering error.**  As yet another example, Figma Design has an error that causes certain SVG exports to render inappropriately.  The centered Figma Design image below mistakenly renders with a transparent top layer when exported.  The Motiff product produces the same error.



Figma's Export                          Motiff's Export



### 4.   Copied Interface "Look and Feel"

60.   Defendants' indiscriminate copying extends beyond copied code and data structures.  The Motiff product's interface also inexplicably mirrors Figma Design's interface, including when the product is in "Dev Mode."  The copying includes copying of the Figma Platform's introductory/onboarding messages, warning messages, error messages, images, icons, layouts, toggles, visual style, and options, among other things.

61.   **Copied error panes.**  Error panes in the Motiff product are identical to those in the Figma Platform.  *E.g.*, the tabs ("Comment," "Properties," and "Export") and error notification ("Export disabled" – "Someone with  . . .") in the Motiff product and Figma Design's export panes are identical.  Other examples include error messages when attempting prototyping connections between frames when only one frame exists, notifications when recovering from network interruptions, and missing fonts.  An exemplary comparison of the Figma Platform's and the Motiff product's "export disabled" error message is shown below.

Figma                                    Motiff



62.   **Copied setup and onboarding panes.**  The same is true of the Motiff product's setup and onboarding instruction panes, which copy those in the Figma Platform.  The exemplary library onboarding pane is shown below.  Additional examples include moving files to a team to publish assets, multiplayer onboarding, and team library onboarding.

Figma                                    Motiff

    

63. **Copied interface elements.** The Motiff product also copies the distinctive visual style of dozens of the Figma Platform's interface elements. An example involving how margins are displayed upon hovering is shown below. In the Motiff product, as in Figma, pixel values are shown in orange boxes with white numbers. Additional examples include icon detection, toggles, and library update notifications.

Figma                          Motiff

64. **Copied multi-step user workflows.** The Motiff product also copies the layout, visual style, and options in numerous multi-step guided workflow panes in the Figma Platform. Depicted below is an example involving the color profile settings workflow (with just one representative pane shown).

Figma                           Motiff

65.   **Copied content editing panes.**  The Motiff product also copies the layout, visual style, and property names of numerous content selection panes of the Figma Platform.  Examples involving selected text and selected frames appear below.  Additional examples include the Fill Rule editor plugin panes, the Skew Dat plugin panes, and scroll behavior editing panes.

Figma                                                       Motiff




Selected Text Pane (Dev Mode)

1

Figma                                                    Motiff

2




Selected Frame Pane (Dev Mode)

66.    The preceding examples further demonstrate that Defendants did not build their platform "learning" from Figma's blog shares as they falsely claim, but by copying significant portions of Figma's code and the Figma Platform.

67.    **Copied Help Center documentation.**  The Motiff product's Help Center documentation also blatantly copies Figma's Help Center documentation.  One example (from perhaps hundreds) involving managing color profiles appears below.  Other examples include documentation on corner radius smoothing, colors generally, smart selections, browser configuration, user management, code snippets, linking Dev resources to layers in Dev Mode, prototypes, library descriptions, swapping components, shows and blurs, and text properties.

Figma's Help Center                    Motiff's Help Center



68.     The preceding examples involving copied code, data structures, rendering bugs and idiosyncrasies, look-and-feel, and documentation are far from exhaustive of Defendants' disregard for Figma's intellectual property rights.  For example, Figma has recently learned that Defendants have used dozens of free user accounts to systematically scrape content from Figma Community resources for use in Defendants' Motiff product.

69.     Defendants have purposefully, actively, and voluntarily advertised and distributed the Motiff product and related services in the United States.  Defendants have thus committed copyright infringement and are in breach of contract.  By purposefully and voluntarily appropriating Figma's code and distributing the Motiff product, Defendants have injured Figma and thus are liable for copyright infringement and breach of contract.

1

**COUNT I: COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

2      70.     Figma hereby restates and re-alleges the allegations set forth in paragraphs 1

3 through 69 above and incorporates them by reference.

4      71.     The Figma products contain a substantial amount of original material that is

5 copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq*.

6      72.     Without consent, authorization, approval, or license, Defendants collectively or

7 acting in concert, knowingly, willingly, and unlawfully copied, prepared, published, and

8 distributed Figma's copyrighted work, portions thereof, or derivative works and continues to do

9 so.  Defendants' Motiff products infringe Figma's copyrights in its products, and Defendants are

10 not licensed to do so.

11      73.     Defendants are aware of Figma's copyrights in its products.  Defendants'

12 infringement therefore is and has been knowing and willful.

13      74.     By their unlawful copying, use, and distribution, Defendants have violated Figma's

14 exclusive rights under 17 U.S.C. § 106.

15      75.     Defendants have realized unjust profits, gains, and advantages as a proximate result

16 of its infringement.

17      76.     Defendants will continue to realize unjust profits, gains, and advantages as a

18 proximate result of its infringement as long as such infringement is permitted to continue.

19      77.     Figma is entitled to an injunction restraining Defendants from engaging in any

20 further acts in violation of the United States copyright laws.  Unless Defendants are enjoined and

21 prohibited from infringing Figma's copyrights and unless all infringing products and advertising

22 materials are seized, Defendants will continue to intentionally infringe Figma's registered

23 copyrights.

24      78.     As a direct and proximate result of Defendants' direct willful copyright

25 infringement, Figma has suffered, and will continue to suffer, monetary loss to its business,

26 reputation, and goodwill.  Figma is entitled to recover from Defendants, in amounts to be

27 determined at trial, the damages it has sustained and will sustain, and any gains, profits, and

28 advantages obtained by Defendants as a result of Defendants' acts of infringement and

Defendants' use and publication of the copied materials.

## COUNT II: BREACH OF CONTRACT

79.    Figma hereby restates and re-alleges the allegations set forth in paragraphs 1 through 69 above and incorporates them by reference.

80.    Each of the defendants, or agents for each of the defendants, knowingly and willingly agreed to Figma's MSA.

81.    Defendants' agreement to Figma's MSA creates a valid and enforceable contract.

82.    Figma has fully performed or tendered all performance required under the MSA.

83.    As alleged above, Defendants have breached their obligations under Figma's MSA, including but not limited to their duties to refrain from some or all of the following conduct:

- "[R]everse engineer[ing], decompil[ing], disassembl[ing] or otherwise attempt[ing] to discover the source code, object code or underlying structure, ideas, know-how or algorithms relevant to the Figma Platform";
- "[M]odify[ing], translat[ing], or creat[ing] derivative works based on the Figma Platform . . . or Documentation";
- "[C]ircumvent[ing] or disabl[ing] any security or other technological features or measures of the Figma Platform"; and
- "[R]emov[ing] any proprietary notices or labels from the Figma Platform, Third-Party Applications and Materials, or Documentation."

84.    Figma is entitled to recover compensatory and consequential damages resulting from Defendants' breaches of their contractual duties.  Figma is also entitled to an injunction restraining Defendants from engaging in any further acts in violation of the MSA.

## PRAYER FOR RELIEF

WHEREFORE, Figma respectfully requests the following relief:

A.    A preliminary injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors-in-interest, and those persons in active concert or participation with them, from continued acts of infringement of the Figma copyrights at issue in this litigation;

B.      A permanent injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors-in-interest, and those persons in active concert or participation with them, from continued acts of infringement of the Figma copyrights at issue in this litigation;

C.      Entry of judgment holding Defendants liable for infringing the Figma copyrights at issue in this litigation;

D.      A preliminary injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors-in-interest, and those persons in active concert or participation with them, from disclosing, exploiting, or utilizing Figma's confidential information, including but not limited to the Figma source code;

E.      A permanent injunction prohibiting Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with them, from disclosing, exploiting, or utilizing Figma's confidential information, including but not limited to the Figma source code;

F.      Entry of judgment holding Defendants liable for breaching Figma's MSA;

G.      An order that all copies made or used in violation of Figma's copyrights or trade secrets, and all means by which such copies may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

H.      An order awarding damages, together with pre-judgment and post-judgment interest, to compensate Figma for Defendants' copyright infringement and breach of contract, including actual and exemplary damages and lost profits, in an amount greater than $75,000.00, or in the alternative, statutory damages under 17 U.S.C. § 504(c) for copyright infringement;

I.      An order awarding Figma its costs and attorneys' fees; and

J.      Any and all other legal and equitable relief as may be available under law and which the court may deem proper.

1

## **<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Rule 38(b) of the Federal Rules for Civil Procedure, Figma demands trial by jury on all issues raised by the Complaint.

Dated: September 16, 2024

RICHARD S.J. HUNG
BITA RAHEBI
MORRISON & FOERSTER LLP

By: */s/ Richard S.J. Hung*
RICHARD S.J. HUNG

*Attorneys for Plaintiff*
FIGMA, INC.