RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JONATHAN M. MORRIS (CA SBN 356152)
jonathanmorris@mofo.com
HOLLY M. PETERSEN (CA SBN 351588)
hollypetersen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

*Attorneys for Plaintiff*
FIGMA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FIGMA, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDINGS GROUP CO. LTD.,<br><br>　　　　　　Defendants. | Case No. 3:24-cv-06507-JD<br><br>**DECLARATION OF W. TODD SCHOETTELKOTTE IN SUPPORT OF FIGMA'S PRELIMINARY INJUNCTION MOTION**<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>Courtroom:  11, 19th Floor<br>Judge:  Hon. James Donato |

I, W. Todd Schoettelkotte declare as follows:

I.    BACKGROUND AND PURPOSE OF DECLARATION

1.    I have been retained by Morrison & Foerster LLP as an expert in this matter on behalf of Plaintiff Figma, Inc. ("Figma" or "Plaintiff").

2.    I understand that Figma has sued Motiff Pte. Ltd. ("Motiff"), Yuanfudao HK Ltd. ("Yuanfudao"), and Kanyun Holdings Group Co. ("Kanyun") (collectively, "Defendants") for copyright infringement and breach of contract.[1]

3.    I have been asked to prepare this declaration in support of Figma's preliminary injunction motion.  For purposes of this declaration, I have been asked to assume Defendants' liability.  In connection with the preparation of this declaration, I have considered the information and declarations identified in the footnotes herein.

II.    CREDENTIALS AND COMPENSATION

4.    I am a Senior Managing Director of J.S. Held,[2] a global consulting firm providing specialized technical, scientific, financial, and advisory services.  I currently serve as a member of the firm's Intellectual Property Practice leadership.  For over 25 years, I have provided financial consulting services in a variety of litigation matters and disputes, including intellectual property, breach of contract, business interruption, valuation, and general damage assessments.  My services have included analyzing irreparable harm, lost sales, lost wages, lost profits, incremental profits, reasonable royalty, product line profitability, fixed and variable cost analysis, cash flows, and other related financial information.  I have consulted with numerous publicly traded and closely held companies in a variety of industries, including construction, automotive, oilfield services, oil and gas, chemical, software, Internet, telecommunications, electronics, consumer products, medical products, food services, and others.

5.    I am a Certified Public Accountant ("CPA") licensed in Texas and a Certified Valuation Analyst ("CVA").  I am a member of the American Institute of CPAs ("AICPA"), the

---

[1] Complaint for Copyright Infringement and Breach of Contract, September 16, 2024 ("Complaint")

[2] J.S. Held is a consulting firm and not a CPA firm.

Texas CPA Society, and the National Association of Certified Valuators and Analysts ("NACVA"). I am also a member of the Licensing Executives Society ("LES"), an organization of over 2,500 members, including corporate executives and professionals involved in the licensing and valuation of patents, trademarks, and other intellectual property. Additionally, I have served as a Guest Lecturer at the Chicago-Kent College of Law, the Georgetown Law School, the John Marshall Law School, and the University of Oregon Law School on topics including accounting, valuation of intellectual property, and intellectual property management. For the past several years, Intellectual Asset Management repeatedly named me as one of the leading patent damages experts in the United States. Attached as **Schedule 1** to this declaration is a summary of my professional background and testifying experience, including all publications over the last ten years and all expert testimonies over the last four years.

6.    J.S. Held is being compensated for its involvement in this matter based upon its standard hourly billing rates for this type of engagement. J.S. Held's billing rate for my time is $795 per hour for my analysis, preparation of this report, and testimony. J.S. Held's fee is not contingent upon the outcome of this litigation or my findings.

III.    PARTIES AT ISSUE

A.    Figma

7.    Figma is a Delaware corporation and has its corporate headquarters in San Francisco, California.[3] Founded in 2012, Figma states that it seeks "to make it easy for anyone to design and build digital products on a single multiplayer canvas—from start to finish, idea to production."[4] Figma's products "make it easier to ideate, design and build software."[5] Figma's products at issue are product design software, which focus on improving a user's interaction with a digital product by enhancing the user interface ("UI") and user experience ("UX").[6] Figma's

---

[3] Complaint, p. 1
[4] Complaint, p. 1; https://www.figma.com/blog/figma-adobe-abandon-proposed-merger/
[5] https://www.figma.com/blog/figma-adobe-abandon-proposed-merger/
[6] Complaint, p. 2; *see also* https://medium.com/design-bootcamp/is-figma-disappearing-analyzing-the-popularity-and-future-prospects-678af5898236

customers include Microsoft, Uber, Zoom, Netflix, among others.[7]  Dylan Field and Evan Wallace founded Figma.[8]

8.    I understand that, before Figma's entry into the market, designers primarily relied on tools which required the installation of apps on individual computers, such as Sketch.[9]  Figma introduced Figma Design in 2016, "the first product design tool on the web," which allowed "multiple users to work on the same file simultaneously."[10]  Upon its launch, Figma reported that it had raised $18 million in funding from Greylock, Index, OATV, and angel investors including Jeff Weiner, DJ Patil, Adam Nash, and Soleio Cuervo.[11]  In June 2021, Figma "raised $200 million from investors, valuing Figma at $10 billion."[12]  In developing its product, Figma has invested over ████████ in research & development.[13]

9.    Figma's cloud-based approach allowed for increased accessibility, real time collaboration, and improved version control.[14]  Its product "revolutionized the UI/UX design space and differentiated from legacy design tools by being browser-based and having real-time collaboration at the center of its platform."[15]  Figma has been recognized as a market disruptor in the UI/UX design space.  Figma was listed on CNBC's annual Disruptor 50 list in 2024 due to its "fast growth" and suitability for the remote work era.[16]  Figma's choice to build a platform for the browser "disrupted the traditional design workflow by creating an integrated platform."[17]

---

[7] https://www.figma.com/customers/
[8] https://medium.com/figma-design/design-meet-the-internet-4140774f2872
[9] https://medium.com/@sikirus81/how-figma-became-the-go-to-tool-for-ui-ux-design-ec4459229b4f
[10] Complaint, p. 3
[11] https://medium.com/figma-design/design-meet-the-internet-4140774f2872
[12] https://www.forbes.com/sites/alexkonrad/2021/08/10/how-figma-became-designs-hottest-startup-valued-at-10billion/
[13] Declaration of Megg Meneguzzi in Support of Figma's Preliminary Injunction Motion ("Meneguzzi Decl.") Ex. 1
[14] https://medium.com/@sikirus81/how-figma-became-the-go-to-tool-for-ui-ux-design-ec4459229b4f
[15] William Blair, On the Ground and In the Cloud - A Developer Technology Quarterly: Agile Software Development Edition, July 26, 2023, p. 15
[16] https://www.cnbc.com/2024/05/14/figma-cnbc-disruptor-50.html
[17] https://menlovc.com/perspective/winning-with-product-featuring-figmas-cpo-yuhki-yamashita/

10.     Figma's current plan pricing is summarized in the figure below.

**Figure 1: Figma's Current Product Plan Pricing[18]**



11.     I understand that Figma has announced that it plans to update its billing practices model.  Specifically, Figma announced that "[p]roduct design looks very different today than it did when we first launched Figma in 2016.  Multiplayer design was still a novel concept, and features that are now core to our product—Auto Layout, Interactive Components, Variables, and Multi-edit—were just ideas we hoped to one day build.  While our features and products have expanded since then, our billing experience hasn't kept pace."[19]  Figma further stated that "[t]hese new billing workflows are designed to give admins the control they need without getting in the way of important work."[20]  In addition to making improvements to its billing architecture and processes, beginning March 11, 2025, Figma intends to adjust its pricing as reflected in the figure below:

---

[18] https://www.figma.com/pricing/#figma
[19] https://www.figma.com/blog/billing-experience-update-2025/
[20] https://www.figma.com/blog/billing-experience-update-2025/

**Figure 2: Figma's Updated Product Plan Pricing**[21]



| | | Professional | Organization | Enterprise |
|---|---|---|---|---|
| **Full seat** | Figma Design<br>Dev Mode<br>FigJam<br>Figma Slides | $16/mo billed annually<br>$20/mo billed monthly<br>Previously $12–15/mo | $55/mo<br>Previously $45/mo | $90/mo<br>Previously $75/mo |
| **Dev seat** | Dev Mode<br>FigJam<br>Figma Slides | $12/mo billed annually<br>$15/mo billed monthly<br>New starting March 11, 2025 | $25/mo | $35/mo |
| **Collab seat** | FigJam<br>Figma Slides | $3/mo billed annually<br>$5/mo billed monthly | $5/mo | $5/mo |
| **View seat** | View/comment access | Free | Free | Free |

Our free Starter plan will continue to be available. Prices reflected above are in USD.

### B.    The Motiff Entities

12.    **Motiff.**  Motiff "is a corporation organized under Singapore law in March 2024 with its principal place of business" in Singapore.[22]  Motiff's primary product is also referred to as Motiff.[23]  Motiff launched in June 2024.[24]  Motiff also offers a beta version of a suite of AI features for its primary product.[25] I understand Motiff was established as a Kanyun subsidiary to launch the Motiff product.[26]

13.    **Yuanfudao.**  Yuanfudao (a/k/a Ape Counseling) "is a corporation organized under the laws of China and its principal place of business" in Beijing, China.[27]  I understand Yuanfudao is another subsidiary of Kanyun, sharing the same offices in Beijing.[28]  I understand Yuanfudao facilitated access to the Figma Platform for affiliates Motiff and Kanyun.[29]

---

[21] https://www.figma.com/blog/billing-experience-update-2025/
[22] Complaint, p. 1; Declaration of Richard S.J. Hung in Support of Figma's Preliminary Injunction Motion ("Hung Decl.") Ex. 7
[23] https://motiff.com/
[24] Hung Decl. Ex. 13, https://motiff.com/blog/welcome-to-motiff-ui-design-tool-for-ai-era
[25] *E.g.*, Hung Decl. Ex. 27, https://www.motiff.com/pricing
[26] Complaint, p. 5; Hung Decl. Ex. 11
[27] Complaint, p. 1; Hung Decl. Ex. 8
[28] Complaint, p. 1; Hung Decl. Exs. 8 and 9
[29] Complaint, pp. 4 – 5; Lai Decl. ¶¶ 5 and 6

14. **Kanyun.** Kanyun (a/k/a Beijing Kanyun Holdings Co., Ltd.) "is a corporation organized under the laws of China with its principal place of business" in Beijing, China.[30] I understand that the purported Motiff co-founders undertook development efforts as employees of Kanyun before incorporating Motiff ahead of its launch.[31]

15. I also understand the Motiff entities share common employees and directors.[32] For example, I understand Motiff President Yang Yuanzu is Vice President of Kanyun.[33] I further understand purported co-founders Haoran (Ryan) Zhang and Max Zhang and Product Manager Tim Yang are also Kanyun employees.[34]

## IV.   IRREPARABLE HARM RELATED TO INJUNCTION

16. I have been asked by Figma's counsel to provide information and analyses for the Court's consideration as to whether to grant a preliminary injunction. I understand there are certain factors that courts consider when assessing whether to grant an injunction, such as those enumerated by the Ninth Circuit. Specifically, the Ninth Circuit indicated that a party seeking a preliminary injunction must demonstrate: (1) "serious questions going to the merits," (2) "a likelihood of irreparable injury," (3) "a balance of hardships that tips sharply towards the plaintiff," and (4) "the injunction is in the public interest."[35]

17. While damages in copyright cases may be considered, such as "actual damages" and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages,"[36] there will be additional harm that Figma will suffer if the Defendants are permitted to continue selling the accused product that would be difficult to compensate or cannot be fully compensated monetarily. Below, I discuss certain types of harm that

---

[30] Complaint, p. 1; Hung Decl. Ex. 9
[31] Complaint, p. 5; Hung Decl. Ex. 11
[32] Complaint, p. 1; Hung Decl. Ex. 11
[33] Hung Decl. Ex. 11
[34] Hung Decl. Exs. 11, 13, and 28; Lai Decl. ¶¶ 5 and 6
[35] *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).
[36] 17 U.S.C. § 504(a)(1), (b)

1  Figma would experience in the absence of the preliminary injunction that Figma has requested

2  which could not be fully compensated by monetary damages.

3        **A.**    **Lost Customers and Impact on Figma's Pricing Strategy**

4      18.    "Actual damages" and "any profits of the infringer that are attributable to the

5  infringement and are not taken into account in computing the actual damages" are not adequate to

6  compensate Figma as Defendants' pricing strategy will alter the economics of Figma's market and

7  lead to lost customers.

8      19.    Based on documents available to date, Defendants are openly attempting to compete

9  with Figma for sales to the same customers.  Further, documents indicate that with its entrance into

10  the market, Defendants have sold or offered to sell the accused product at prices significantly lower

11  than the prices for which Figma generally sells its software.

12      20.    For example, Motiff's website includes a section entitled "Figma to Motiff," which

13  asserts that Motiff users can "[e]njoy a high-performance, AI-powered UI design tool at a fair price.

14  A painless switch from Figma to Motiff."[37]  Further, when discussing one of the features included

15  in both Figma Design and the accused product, Motiff states on its website that "[a]s a novel

16  technological product, we need more early adopters to experience and validate our AI features,

17  which is the primary reason for the limited-time free offer."[38]  In other words, Motiff's strategy

18  appears to include offering use of the accused product for no fee or fees much lower than Figma—

19  especially as Motiff seeks to gain "early adopters"—presumably current Figma customers.  On

20  December 11, 2024, co-founder Ryan Zhang confirmed in a post on X that Motiff has "had quite a

21  few Figma users switch over."[39]

22      21.    Further, Motiff co-founder Ryan Zhang wrote that:

23          Years ago, Figma introduced a collaborative UI design tool, including
        features like collaboration and Auto Layout, which brought new value to
24          users and thus set a new price bar.  Today, by offering these basic
        functionalities, I believe Motiff's current pricing accurately matches the
25          value of a "standard package", while we strive to offer better performance

26  ---

27  [37] Hung Decl. Ex. 20, https://motiff.com/figma-to-motiff
[38] Hung Decl. Ex. 23, https://motiff.com/blog/pricing-philosophy-of-motiff
28  [39] Hung Decl. Ex. 18, https://x.com/Ryan_Motiff/status/1866733271670984760/

and foundational experiences.[40]

Additionally, Mr. Zhang acknowledged that "[g]iven the *similarity* of basic features offered by Motiff to those of Figma, *pricing comparisons are inevitable*."[41]

22.    A comparison of the publicly stated pricing between Figma and Motiff reflects a significant disparity.  Motiff's current publicly stated pricing is reflected in Figure 3 below.  As an initial observation, I note that Motiff adopted a tiered pricing structure that mirrors Figma's current pricing structure (as shown in Figure 1 previously in this declaration), such as use of the free "starter" tier as well as a "professional" tier with Motiff's highest tier of "organization" to match Figma's "organization" tier.

**Figure 3: Motiff Product Pricing[42]**



23.    When compared to Figma's current pricing previously summarized in Figure 1, Motiff's $4 per seat per month for the "Professional" tier is over 73% lower than Figma's $15 per seat per month for its "Professional" tier.[43]  In addition, Motiff's $15 per seat per month for the "Organization" tier is over 66% lower than Figma's $45 per seat per month for its "Organization"

---

[40] Hung Decl. Ex. 23, https://motiff.com/blog/pricing-philosophy-of-motiff
[41] Hung Decl. Ex. 23, https://motiff.com/blog/pricing-philosophy-of-motiff (emphasis added)
[42] Hung Decl. Ex. 27, https://www.motiff.com/pricing
[43] Hung Decl. Ex. 27, https://www.motiff.com/pricing (fine print note below cards indicating pricing is per seat per month)

tier and 80% lower than Figma's $75 per seat per month for its "Enterprise" tier.  When compared to Figma's updated pricing previously summarized in Figure 2, Motiff's pricing disparity will be even greater than it is currently.  Specifically, Motiff's $4 per seat per month for the "Professional" tier will be 75% lower than Figma's $16 per seat per month for its "Professional" tier.  In addition, Motiff's $15 per month for the "Organization" tier is over 72% lower than Figma's $55 per month for its "Organization" tier and over 83% lower than Figma's $90 per month for its "Enterprise" tier. The comparison of Motiff's and Figma's pricing is summarized in the figure below.

**Figure 4: Comparison of Figma and Motiff Product Pricing[44]**

| Figma v. Motiff | Current Figma Pricing | Updated Figma Pricing |
|---|---|---|
| Professional v. Professional | 73.3% Lower | 75.0% Lower |
| Organization v. Organization | 66.7% Lower | 72.7% Lower |
| Enterprise v. Organization | 80.0% Lower | 83.3% Lower |

25.    Third parties have identified the price disparity above.  For example, an August 25, 2024 *South China Morning Post* article stated that "Motiff's platform, supporting team collaboration and AI-assisted design and generation, ha[ve] quickly secured its first batch of users across the US, Japan, Southeast Asia, and Latin America, with *pricing set at about 20 per cent of the current market leader Figma*."[45]  In addition, an August 14, 2024 *Medium* article identified "cost-effective pricing" as a reason to switch from Figma to Motiff stating, "[o]ne of the *significant advantages* of Motiff is its *competitive pricing structure*."[46]

---

[44] The Figma seat prices shown in the figure reflect Figma's "full seat" access. The "full seat" tier is the only tier with access to Figma Design. The "full seat" tier also includes include access to Dev Mode with access to FigJam and Figma Slides being added in 2025. (See https://www.figma.com/pricing/; https://www.figma.com/blog/billing-experience-update-2025/)
[45] https://finance.yahoo.com/news/chinese-ai-apps-eye-overseas-093000439.html (emphasis added)
[46] https://medium.com/@mileysu309/the-best-figma-alternatives-in-2024-why-you-should-consider-motiff-5971cd0c24dd (emphasis added)

26.     Comments on various social media platforms indicate that current and potential Motiff users (as well as comments by Motiff personnel) recognize the similarity between Figma and Motiff as well as Motiff's significantly lower pricing.  For example, Mr. Zhang commented on X that "Figma pioneered the web-based graphic editor.  Motiff is striving to do even better."[47]  An X user replied, "I'm all about competition, but you guys literally ripped off the UI down to the last icon.  Like wtf?"[48]  In response, Mr. Zhang stated, "Figma is very powerful and we have always respected and learned from it."[49]  Further, Mr. Zhang indicated that "[f]or the basic functions, we once tried to do 'differently', but after some feedback from test users, they expected to make 'the change in habits as small as possible'.  After some struggling, we made the current choice."[50]  In a separate X comment, Mr. Zhang also stated that the similarity between Motiff and Figma was intentional: in that "it may be the best solution to reduce the user's switching cost.  Even if criticized, at present we prefer that users can use a tool with better performance and a more reasonable price."[51]  Additionally, in response to Figma's recently announced pricing update, Mr. Zhang posted on X that "I bet the comments are going to be full of complaints.  Honestly, though, users aren't really mad about it being 'expensive'—the real question is whether the price matches the value."[52]  Mr. Zhang also stated that "[l]ately, we've had quite a few Figma users switch over to us…."[53]

27.     In a Reddit post within r/FigmaCommunity entitled, "Figma Vs Motiff – New AI Design Tool! – Better Pricing, AI UI Design, Design Systems & More," a commenter stated that "[h]aving used Motiff for a while, I can say that its AI UI Design features are quite impressive.  It's not without its quirks, but the cost savings and streamlined workflow have been worth it for me."[54]

---

[47] Hung Decl. Ex. 16, https://x.com/Ryan_Motiff/status/1798406789584888115
[48] Hung Decl. Ex. 16, https://x.com/Murrzeak/status/1800869431800898015
[49] Hung Decl. Ex. 16, https://x.com/Ryan_Motiff/status/1800910637062856763
[50] Hung Decl. Ex. 16, https://x.com/Ryan_Motiff/status/1800910637062856763
[51] Hung Decl. Ex. 17, https://x.com/Ryan_Motiff/status/1800912225865253302
[52] Hung Decl. Ex. 18, https://x.com/ryan_motiff/status/1866733271670984760
[53] Hung Decl. Ex. 18, https://x.com/ryan_motiff/status/1866733271670984760
[54] Hung Decl. Ex. 29,
https://www.reddit.com/r/FigmaCommunity/comments/1f2aid2/figma_vs_motiff_new_ai_design

A LinkedIn post by a self-identified UX / UI (Design) Engineer stated that "[f]or a look of it, Motiff is the old @Figma UI with low price."[55]

28.     Figma customer service tickets also provide examples of Figma customers indicating a potential switch to Motiff.  For example, a customer requested beta access to Figma AI for his company.  In response to Figma's reply that it was not yet available, the customer asked if there was a way to "accelerate the process" and disclosed his company was "testing other tools like… Motiff."[56]  In another example, after Figma responded to a customer's inquiry on behalf of his team whether Figma offered Brazilian specific pricing, confirming it did not, the customer asked whether there "[e]xist[ed] some way to migrate all [his] Figma projects to https://motiff.com."[57] These customer interactions indicate Motiff already impacts the market for product design tools in competition with Figma, here at least as a negotiating tool or even potential alternative.

29.     As noted above, Motiff's pricing strategy appears to be aimed at Figma's current or prospective customers.  Figma will experience pressure from current or prospective customers to lower its prices.  I understand that courts recognize that price erosion attributable to infringement is rarely reversible.[58]  The impact of Motiff's significantly lower prices will be further pronounced as Figma adjusts its pricing as reflected in Figure 2.

30.     If Figma were forced to reduce its prices, the economic impact of such would be difficult to fully quantify.  As described above, Motiff's actions could introduce a downward trend in Figma's pricing strategy—not only for sales potentially lost to Motiff, but also those customers retained by Figma.  As such, Figma would be irreparably harmed.

## B.    Loss of Market Share

31.     To the extent that Figma were to lose control of its technology advantage, an award of "actual damages" and "any profits of the infringer that are attributable to the infringement and

---

_tool_better_pricing/?rdt=64371 (see related YouTube video at
https://www.youtube.com/watch?v=-hPeN2EWjjc)
[55] Hung Decl. Ex. 30, https://www.linkedin.com/feed/update/urn:li:share:7221329764370771968/
[56] Meneguzzi Decl. Ex. 3, Figma Ticket #1155813
[57] Meneguzzi Decl. Ex. 2, Figma Ticket #1147903
[58] *See, e.g.*, *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1362 (Fed. Cir. 2008)

are not taken into account in computing the actual damages" would not be adequate to compensate Figma.  The harm to Figma would not be fully redressed with money damages as it would not be possible to completely account for all lost market share, or its ability to grow market share and customer relationships.

32.    On its launch, Figma Design "gained immediate traction due to its revolutionary capabilities and instant appeal."[59]  A *Medium* article stated that "Figma's launch brought something new to the design world.  It focused on real-time collaboration, which made it stand out from other tools like Adobe XD and Sketch.  By 2023, Figma had become one of the top choices for UX/UI designers[60] Figma's adoption by users is reflected in surveys such as those cited below:

- A 2022 survey by UX Tools "showed that 66% of UX designers preferred Figma, compared to 20% for Sketch and 14% for Adobe XD."[61,62]

- A 2023 survey of over 3,000 designers showed Figma's UI design tool was used by over 80% of survey respondents, increasing from 11% in 2017.[63]

- "In 2023, Figma was the primary choice of software for UI design for 75% of product designers.  []  According to a 2023 survey of designers around the world, Figma's tools have been among the most popular across categories including UI design, prototyping, digital whiteboarding, and design systems."[64]

---

[59] Complaint, p. 3
[60] https://uxtools.co/survey/2023/ui-design
[61] https://medium.com/design-bootcamp/is-figma-disappearing-analyzing-the-popularity-and-future-prospects-678af5898236
[62] However, in mid-2024, Adobe XD was only supported in "maintenance mode" (meaning Adobe is "not investing in ongoing development or shipping new features within the product"). (See https://helpx.adobe.com/support/xd.html; https://medium.com/uxness/the-phasing-out-of-adobe-xd-what-you-need-to-know-in-2024-b78ee35caef4
[63] https://uxtools.co/survey/2023/ui-design
[64] https://research.contrary.com/company/figma

33.     Should Figma lose market share (compounded with pressure to lower its prices), the economic impact of such would be difficult to fully quantify.  As such, Figma would be irreparably harmed.

### C.    Loss of Brand Recognition / Goodwill

34.     To the extent that Figma loses its exclusive right to use the copyrights at issue, Figma's brand—and associated goodwill—will suffer harm due to the erosion of the affiliation of the benefits with Figma.  As previously discussed, Figma's success is a result of pioneering a unique product in the UI/UX design market.  For example, Figma was listed on CNBC's annual Disruptor 50 list in 2024 due to its "fast growth" and suitability for the remote work era.[65]  Figma has also been listed on Forbes Cloud 100 for several years, ranking at #12 in 2024 (outranking numerous companies with higher annual revenues).[66]  A summary of Figma's awards is summarized in the figure below.  Because of Figma's choice to build a platform for the browser, it was recognized "disrupt[ing] the traditional design workflow by creating an integrated platform."[67]

---

[65] https://www.cnbc.com/2024/05/14/figma-cnbc-disruptor-50.html
[66] https://www.forbes.com/lists/cloud100/
[67] https://menlovc.com/perspective/winning-with-product-featuring-figmas-cpo-yuhki-yamashita/

**Figure 5: Figma Awards**

| Year | Award |
|------|-------|
| 2017[68] | Forbes Cloud 100 (Rising Star) |
| 2021[69] | Wing VC's Enterprise Tech 30 |
| 2022[70] | Time 100 Next (Dylan Field)<br>Forbes Cloud 100<br>Fast Company Most Innovative By Design<br>    *Enterprise* |
| 2023[71] | Sunbridge Emerging Leader Award<br>Fast Company Most Innovative Companies<br>    *Design*<br>Fast Company Most Innovative By Design<br>    *Branding – Collins' NGIMA Campaign*<br>    *General Excellence*<br>Product School Proddy Award<br>    *Prototyping* |
| 2024[72] | CNBC Disruptor 50<br>Fast Company Most Innovative By Design<br>    *Enterprise*<br>Fast Company Most Innovative Companies<br>    *Applied AI*<br>Forbes Cloud 100 |

---

[68] https://www.forbes.com/pictures/5963c0544bbe6f269f7f2998/figma/;
https://www.forbes.com/sites/alexkonrad/2017/07/11/cloud-100-rising-stars-for-2017/
[69] https://assets.website-files.com/643f233757edc323870e651f/6446d2d93335fce851f4e0f2_2021-ET30-Report.pdf
[70] https://time.com/collection/time100-next-2022/6214949/dylan-field/;
https://www.forbes.com/sites/rashishrivastava/2022/08/09/cloud-100-rising-stars-2022-meet-the-newest-cohort-of-cloud-innovators/; https://www.fastcompany.com/innovation-by-design/2022
[71] https://www.usjinnovate.org/2023/07/10/figma-treasure-data-emerging-leaders-2023-pr/;
https://www.fastcompany.com/90846965/most-innovative-companies-design-2023;
https://www.fastcompany.com/90929593/figma-ad-collins-collaboration-innovation;
https://www.fastcompany.com/90932710/branding-innovation-by-design-2023;
https://www.fastcompany.com/90933815/general-excellence-innovation-by-design-2023;
https://www.fastcompany.com/90931685/figmas-collaborative-figjam-spotlight;
https://productschool.com/blog/product-fundamentals/proddy-award-winners-announced-the-best-digital-products-of-2023
[72] https://www.forbes.com/lists/cloud100/; https://www.cnbc.com/2024/05/14/these-are-the-2024-cnbc-disruptor-50-companies.html; https://www.fastcompany.com/91129463/enterprise-innovation-by-design-2024; https://www.fastcompany.com/91128367/figma-innovation-by-

35.     Motiff also has acknowledged Figma's innovation.    For example, Motiff acknowledged that "[w]e owe a debt of gratitude *to Figma for paving the way*.  Figma's *creation* of a complex yet refined online graphic editor has been a source of constant learning for us.  Our product and technology team have benefited immensely from Figma's blog shares.  Moreover, we realized the critical importance of 'performance' for an online graphic editor.  Figma has *always excelled in this*, and Motiff aimed to do even better."[73]

36.     As previously discussed, Figma's Design product "gained immediate traction due to its revolutionary capabilities and instant appeal."[74]  As a result of Figma's innovation, it has achieved leadership in the market it pioneered which has built significant goodwill and brand recognition as evidenced by the industry awards discussed above.  According to a Forbes article, a company's brand "is often at the heart of the companies that thrive."[75]  Establishing a brand "requires something distinctive"—"one special thing that separates it from the competition."[76]  Further, as an *Inc.* article explained, "[i]t's simply not enough for a company brand to be good.  It has to be unique.  It has to suggest a role in the market that cannot be fulfilled by anyone else, and if it's a really good brand, it has to carry the promise of offering something even better in the future."[77]  Similarly, a *Medium* article stated that "[i]nnovation serves as a bridge between a brand's strategic vision and market reality.  Brands that innovate effectively capitalize on emerging market opportunities and navigate shifts in consumer preferences with agility.  This synergy is not only beneficial; it is essential for long-term survival and growth in fast-changing markets."[78]  The *Medium* article further explained that "[e]ach successful innovation reinforces the brand's image,

---

design-2024; https://www.fastcompany.com/91033169/applied-ai-most-innovative-companies-2024

[73] Hung Decl. Ex. 13, https://motiff.com/blog/welcome-to-motiff-ui-design-tool-for-ai-era (emphasis added)

[74] Complaint, p. 3

[75] https://www.forbes.com/sites/jaysondemers/2013/11/12/the-top-7-characteristics-of-successful-brands/#5b12299b42f9

[76] https://www.forbes.com/sites/jaysondemers/2013/11/12/the-top-7-characteristics-of-successful-brands/#5b12299b42f9

[77] https://www.inc.com/young-entrepreneur-council/how-good-brands-can-distinguish-themselves-in-market.html

[78] https://medium.com/theymakedesign/brand-innovation-a6cb9b7eba98

attracts new business, and solidifies its position as a leader in its industry. Thus, the connection between brand and innovation is a powerful catalyst for immediate gains and sustainable growth."[79] These observations are consistent with my experience consulting with companies with significant investments and innovation in their respective markets. Figma has achieved the aforementioned uniqueness. As discussed above, the market has recognized the uniqueness and differentiating (*e.g.*, "revolutionary") nature of Figma's Design product.

37.    As previously identified in this declaration, social media users as well as current Figma customers are using or threatening to use Motiff's accused product enabled by the similarities between the two products and the significantly lower prices charged by Motiff. These examples illustrate how the harm to Figma's brand recognition and goodwill will occur as users no longer associate Figma with its industry-recognized innovation and the copyrights at issue.

38.    "Actual damages" and "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages" are not adequate to compensate Figma for the losses described above. In particular, these damage remedies would not fully compensate Figma for the decline in value of its brand name nor the investments it has made to build its brand.

**D.    Conclusion**

39.    Each of the impacts discussed above would result in significant, irreparable harm to Figma. In my opinion, it is difficult, if not impossible, to calculate the full scope of the monetary impact to Figma from any of the above events and actions. This is particularly compounded by Motiff's significantly reduced pricing strategy which would make it difficult, if not impossible, for Motiff's revenues and profits to compensate Figma for its own lost profits.

40.    In addition, I understand that there is a connection, or nexus, between the irreparable harms discussed above and the claims at issue. Specifically, I understand that "significant aspects of the Figma Platform and Figma Design have been copyrighted."[80] Further, I understand that

---

[79] https://medium.com/theymakedesign/brand-innovation-a6cb9b7eba98
[80] Declaration of Karan Singh, Ph.D. in Support of Figma's Preliminary Injunction Motion ("Singh Decl.") ¶ 39

Figma asserts that the copyrights at issue enabled Defendants with the means to provide a duplication of Figma Design and the Figma Platform.[81]   I understand that Figma asserts that Defendants have "improperly and illegally copied substantial portions of Figma's code, appropriating years of Figma's development effort."[82]   According to Professor Karan Singh, I understand Motiff copies Figma's user interface, documentation, and code, based on a comparison of numerous common elements including:

- Shader and invoking code;
- GPU strings;
- Functional design choices;
- Data structures, such as ".fig" document format, autosave database schema, render tree, and debugging tool;
- Rendering idiosyncrasies (bugs);
- Paid features access bug; and
- Objectively similar interface elements.[83]

41.    Further, in his opinion, Dr. Singh states that "the Motiff product and articles from Motiff's Help Center show substantial similarities to the Figma Platform and articles from Figma's Help Center.  The similarities include numerous similarities that are unlikely to arise in the absence of copying. Numerous specific expressive elements, protected by Figma's copyrights, show objective similarity with expressive elements of the Motiff product and articles from Motiff's Help Center."[84]   Dr. Singh also states "[i]n [his] expert opinion, the similarities between the Figma Platform and the Motiff product would not arise between independently developed products or without substantial copying."[85]

42.    Further, Motiff acknowledges there is a nexus between the irreparable harm discussed above and the claims at issue.  As Motiff acknowledged, "[w]e owe a debt of gratitude

---

[81] Complaint, p. 6
[82] Complaint, p. 7
[83] Singh Decl. ¶ 40 – 139
[84] Singh Decl. ¶ 33
[85] Singh Decl. ¶ 34

to Figma for paving the way.  Figma's creation of a complex yet refined online graphic editor has

been a source of constant learning for us."  Motiff also acknowledged "[t]he editor lies at the heart

of a product design tool."[86]

43.    I understand that there has not yet been discovery in this case.  I may supplement

this declaration and my opinions if additional information becomes available to me.


I declare under the penalty of perjury under the laws of the Unites States of America that

the foregoing is true and correct.

Executed January 23, 2025, at Houston, Texas.


_____

W. Todd Schoettelkotte

_____

[86] Hung Decl. Ex. 13, https://motiff.com/blog/welcome-to-motiff-ui-design-tool-for-ai-era

1

**ATTESTATION OF E-FILED SIGNATURE**

2

I, Richard S.J. Hung, am the ECF User whose ID and password are being used to file this

3

Declaration of W. Todd Schoettelkotte in Support of Figma's Preliminary Injunction Motion.  In

4

compliance with Civil L.R. 5-1(i)(3), I hereby attest that W. Todd Schoettelkotte has concurred in

5

this filing.

6

7

Dated: January 23, 2025                                    */s/ Richard S.J. Hung*

8

Richard S.J. Hung

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OCEAN TOMO®**

**Schedule 1**



A PART OF JS|HELD

# W. Todd Schoettelkotte, CPA, CVA
*Senior Managing Director*

333 Clay Street, Suite 3960
Houston, Texas 77002
713-335-5455 | tschoettelkotte@jsheld.com

**Certifications**
Certified Public Accountant, Texas
Certified Valuation Analyst

**Professional Affiliations**
State Bar of Texas' Grievance
Committee, Committee Member,
2004 – 2009

Federal Bar Association,
South Texas Chapter, Treasurer,
2007 – 2015

Institution for Law and Technology
Advisory Board Member

**Associations**
American Institute of Certified
Public Accountants

Texas Society of Certified Public
Accountants

Licensing Executives Society

National Association of Certified
Valuators and Analysts

**Education**
Master of Accounting
Rice University, Houston, TX

BS Management
Rice University, Houston, TX

W. Todd Schoettelkotte is a Senior Managing Director of Ocean Tomo, a part of J.S. Held LLC, a global consulting firm providing specialized technical, scientific, financial, and advisory services. Mr. Schoettelkotte has more than 25 years of experience in the evaluation and quantification of economic damages arising from patent, copyright and trademark infringement, and trade secret misappropriation disputes. His clients have included numerous Fortune 500 companies in a wide variety of industries including semiconductor, telecommunication, energy, consumer products, life sciences and computers (hardware, software and the internet). Mr. Schoettelkotte has been recognized by Intellectual Asset Management Magazine as one of the leading patent damages experts in the United States. Mr. Schoettelkotte's background is in accounting, finance and economics, and he has a specific, focused understanding of those issues integral to the valuation and management of intellectual property.

**Intellectual Property Valuation**

Mr. Schoettelkotte has directed numerous valuation projects related to patents, trademarks and trade secrets. A significant portion of his practice is focused on the determination of royalty rates and terms for licensing agreements. Additionally, Mr. Schoettelkotte has conducted numerous studies involving lost profits and unjust enrichment.

In the process of assisting clients in the valuation of intellectual property assets, Mr. Schoettelkotte has participated in the identification and review of business plans, market studies, financial documents and other related information.

**Patent, Copyright and Trademark Infringement**

Mr. Schoettelkotte has performed market analyses/studies wherein the patented, trademarked or copyrighted product is sold, assessed lost profits stemming from alleged infringements, evaluated the contribution of the patented process/method to the end product and established the economic value of the underlying intellectual property.

Mr. Schoettelkotte is skilled in the application of the Georgia-Pacific factors to the determination of reasonable royalty rates. He has determined reasonable royalty rates within infringement suits on many occasions in numerous industries. Over the course of his career, Mr. Schoettelkotte has reviewed hundreds of license agreements, providing a broad frame of reference for reasonable royalty damages analyses. Mr. Schoettelkotte has testified in federal and state court and arbitration proceedings on matters involving intellectual property valuation, lost profits, reasonable royalty and economic damages issues.

**Articles and Presentations**

"Intellectual Property Damages," Chicago-Kent College of Law, October 15, 2019

"Damages in Other Areas of Intellectual Property," The University of Arizona IP Conference, March 5, 2018

# W. Todd Schoettelkotte

"Impact of Recent Court Cases on 'Real World' Royalty Rates," LES (USA & Canada) Houston Chapter, July 20, 2017

"What is Discoverable and Admissible for Damages, Willfulness and Other Purposes," Intellectual Property Owners Association, March 21, 2011

"Strategies in Intellectual Property," Chicago Kent, College of Law, Spring 2004 – 2010

Damages, Part II: "Litigation Strategies" – 15th Annual Advanced Patent Law Institute - University of Texas School of Law, October 28-29, 2010

"IP Damages and Valuation," Global Intellectual Property Management, Georgetown University Law Center, July 2, 2008

"Keys for Effectively Working with Your Damages Expert Throughout the Litigation Life Cycle," Houston Bar Association, March 22, 2007

"Advanced Evidence and Discovery – Working With Experts From Start To Finish" – Texas Bar Association, April-May 2006

"Trademarks – Financial Disclosure and Corporate Governance" – International Trademark Association, Emerging Issues in Trademark Law Forum, February 2-3, 2006

"Valuation of IP – A Licensing Perspective" – Lighthouse Seminar Group, IP Licensing Nuts & Bolts, March 3, 2005

"Measuring the Value of Damages in Trademark Infringement Claims" – DuPont's 18th Annual CLE Intellectual Property Law Seminar, October 12, 2004

"Measuring the Value of Damages in Patent and Trademark Claims" – Houston CPA Society, September 2004

"Measuring Damages in Trademark Infringement and Related Claims in Light of Recent Court Decisions" – The 19th Annual Intellectual Property Law Conference – American Bar Association, April 1, 2004

"Intellectual Property Damages: Patents & Trademarks" – Houston CPA Society "Litigation and Valuation Services Committee," January 28, 2004

Co-Author: "Accounting for Attorneys" – University of Oregon School of Law, November 12, 2003

"What are the Financial Stakes in Litigation? What are the Costs and the Return on Investment (ROI) That Can Be Expected? The Question of Intangible Returns?" – 2003 Fourth International Conference on Intellectual Property by CNCPI, October 7, 2003, Paris, France

"Current Issues in the Analysis of Reasonable Royalties in Patent Infringement Actions" – 2003 Licensing Executives Society Annual Meeting, September 24, 2003

Co-Author FTI Consulting Training Course: "Calculating Damages in Patent Infringement – A Lost Profits and Reasonable Royalty Case Study," July 17, 2003



**W. Todd Schoettelkotte
Four Year List of Testimony
As of January 2025**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*Acme Worldwide Enterprises, Inc.* v. *United States of America and Industrial Smoke & Mirrors;* U.S. District Court, Washington, D.C., Expert Report, Deposition

*Grant Prideco, Inc., et al v. Schlumberger Technology Corporation et al.;* U.S. District Court, Southern District of Texas (Houston), Rebuttal Expert Report, Deposition

*Lindis Biotech GmbH v. Amgen Inc.;* U.S. District Court, District of Delaware, Initial Report, Expert Report, Reply Report, Deposition, Trial

*In the Matter of Certain Cellular Base Station Communication Equipment, Components Thereof, and Products Containing Same (Respondents);* U.S. International Trade Commission, Washington, D.C., Expert Report, Witness Statement

*Philips North America LLC v. Image Technology Consulting, LLC, et al.;* U.S. District Court, Northern District of Texas (Dallas), Expert Report, Deposition, Hearing

*In the Matter of Certain Cellular Base Station Communication Equipment, Components Thereof, and Products Containing Same (Respondents);* U.S. International Trade Commission, Washington, D.C., Expert Report, Rebuttal Expert Report, Deposition, Supplemental Report, Hearing

*Signify North America Corporation, et al. v. Lepro Innovation, et al.;* U.S. District Court, District of Nevada (Las Vegas), Expert Report, Deposition

*Fate Therapeutics, Inc., et al. v. Shoreline Biosciences, Inc., et al.;* Superior Court of the State of California, County of San Diego, Rebuttal Expert Report, Deposition

*In the Matter of Certain Electronic Devices, Including Mobile Phones, Tablets, Laptops, Components Thereof, and Products Containing the Same (Complainant);* U.S. International Trade Commission, Washington, D.C., Expert Report, Hearing

*Multimedia Technologies Pte. Ltd. v. LG Electronics Inc., et al;* U.S. District Court, Eastern District of Texas (Marshall), Rebuttal Expert Report, Deposition

*Distoric Design Group, LLC and Derek Underhill v. The NOCO Company;* U.S. District Court, District of Arizona (Phoenix), Expert Report, Deposition

*Boston Dynamics, Inc. v. Ghost Robotics Corporation;* U.S. District Court, District of Delaware (Wilmington), Rebuttal Expert Report, Deposition

*Arm Ltd. v. Qualcomm Inc., et al.;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Second Reply Report, Deposition



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of January 2025**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*CMC Materials, LLC v. DuPont de Nemours., et al.;* U.S. District Court, District of Delaware (Wilmington), Rebuttal Expert Report, Deposition

*BlueRadios, Inc. v. Kopin Corporation, Inc.;* U.S. District Court, District of Colorado (Denver), Rebuttal Expert Report, Deposition, Supplemental Rebuttal Expert Report, Deposition, Trial

*Continuous Composites, Inc. v. Markforged, Inc.;* U.S. District Court, District of Delaware, Expert Report, Reply Report, Deposition, Trial

*In the Matter of Certain Semiconductor Devices, and Methods of Manufacturing Same and Products Containing the Same (Respondents);* U.S. International Trade Commission, Washington, D.C., Expert Report, Deposition, Hearing

*Demaray LLC v. Samsung Electronics Co. Ltd., et al.:* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition, Supplemental Report, Deposition, Second Supplemental Report, Deposition, Trial

*Ningde Amperex Technology Limited v. Zhuhai CosMX Battery Co., Ltd., et al.;* U.S. District Court, Eastern District of Texas (Marshall), Initial Report, Rebuttal Expert Report, Deposition, Trial

*HID Global Corporation v. Vector Flow., et al.;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Trial

*Persawvere, Inc. v. Milwaukee Electric Tool, Corporation;* U.S. District Court, District of Delaware (Wilmington), Rebuttal Expert Report, Deposition, Trial

*Beacon Navigation GmbH v. Bayerische Motoren Werke AG; BMW of North America, LLC and BMW Manufacturing Co., LLC;* U.S. District Court, Southern District of Michigan, Expert Report, Deposition

*Plastipak Packaging, Inc. v. Nestlé Waters North America, Inc.;* U.S. District Court, Eastern District of Virginia (Alexandria), Opening Expert Report, Rebuttal Expert Report, Supplemental Expert Report, Supplemental Rebuttal Expert Report, Deposition

*Ollnova Technologies Limited v. ecobee Technologies, ULC d/b/a Ecobee;* U.S. District Court, Eastern District of Texas (Marshall), Rebuttal Expert Report, Deposition, Trial

*EIS, Inc. v. IntiHealth GER GmbH, et al.;* U.S. District Court, District of Delaware, Expert Report, Rebuttal Expert Report, Commercial Success Report, Reply Report, Trial

*Bay Materials, LLC v. 3M Company;* U.S. District Court, District of Delaware (Wilmington), Declaration, Deposition, Commercial Success Report, Deposition

*Fate Therapeutics, Inc., et al. v. Shoreline Biosciences, Inc., et al.;* U.S. District Court, Southern District of California (San Diego), Rebuttal Expert Report, Deposition

OCEAN TOMO®

A PART OF JS|HELD

**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of January 2025**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*Delta Air Lines, Inc. v. Marriott International, Inc.;* U.S. District Court, Northern District of Georgia (Atlanta), Rebuttal Expert Report, Supplemental Rebuttal Report, Deposition

*Textron Innovations Inc. v. SZ DJI Technology Co., Ltd., et al.;* U.S. District Court, Western District of Texas (Waco), Expert Report, Deposition, Supplemental Expert Report, Trial

*VoIP-Pal.com, Inc. v. Verizon Communications Inc., et al.;* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition

*Ragnarok Game, LLC and ESDFOS, LLC v. ZeniMax Media Inc, et al.;* Superior Court of the State of California, County of Los Angeles, Central District, Opening Expert Report, Rebuttal Expert Report, Deposition

*DivX, LLC v. Harman International Industries, Inc.;* New York Supreme Court, New York County, Expert Report, Rebuttal Expert Report, Deposition

*Shimon Maimon v. Lockheed Martin Corporation;* Judicial Arbitration and Mediation Services, Rebuttal Expert Report, Deposition, Arbitration

*WSOU Investments, LLC d/b/a Brazos Licensing and Development v. ZTE Corporation;* U.S. District Court, Western District of Texas (Waco), Rebuttal Expert Report, Deposition

*Wonderland Switzerland AG v. Evenflo Company, Inc.;* U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Supplemental Expert Report, Trial

*NNCrystal US Corporation and The Board of Trustees of The University of Arkansas v. Nanosys, Inc.;* U.S. District Court, District of Delaware, Expert Report, Reply Report, Deposition

*Pavemetrics Systems, Inc. v. Tetra Tech, Inc. and Tetra Tech Tas Inc.;* U.S. District Court, Central District of California (Los Angeles), Expert Report, Deposition, Trial

*Global Tubing, LLC v. Tenaris Coiled Tubes, LLC and Tenaris, S.A.;* U.S. District Court, Southern District of Texas (Houston), Expert Report, Deposition

*The Cookie Department, Inc. v. The Hershey Company, One Brands, LLC;* U.S. District Court, Northern District of California (Oakland), Rebuttal Expert Report, Deposition

*Unirac, Inc. v. EcoFasten Solar, LLC and Esdec, Inc.;* U.S. District Court, District of Delaware, Expert Reports, Deposition

*In the Matter of Certain Integrated Circuits, Chipsets, and Electronic Devices, and Products Containing the Same (Respondents);* U.S. International Trade Commission, Washington, D.C., Rebuttal Expert Report, Deposition



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of January 2025**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

*In the Matter of Certain High-Density Fiber Optic Equipment and Components Thereof (<u>Complainant</u>)*; U.S. International Trade Commission, Washington, D.C., Expert Report, Deposition, Witness Statement, Hearing; Enforcement Proceeding - Expert Report, Supplement to the Expert Report, Deposition, 2nd Supplement to the Expert Report, 3rd Supplement to the Expert Report, Witness Statement, 4th Supplement to the Expert Report, Supplement to Witness Statement, Hearing

*Blue Mountain Holdings, Ltd., et al. v. <u>Bliss Nutraceticals LLC, et al.</u>*; U.S. District Court, Northern District of Georgia (Atlanta), Expert Report, Deposition

*Gibson Brands, Inc. v. <u>Armadillo Distribution Enterprises, Inc. and Concordia Investment Partners, LLC</u>*; U.S. District Court, Eastern District of Texas (Sherman), Rebuttal Expert Report, Deposition, Supplemental Rebuttal Expert Report, Trial

*Conformis, Inc. v. <u>Medacta USA, Inc. and Medacta International SA</u>*; U.S. District Court, District of Delaware, Rebuttal Expert Report, Supplemental Rebuttal Expert Report, Deposition

*In the Matter of Certain Silicon Photovoltaic Cells and Modules with Nanostructures, and Products Containing Same (<u>Respondents</u>)*; U.S. International Trade Commission (Washington, D.C.), Expert Report, Deposition, Witness Statement, Hearing

*EcoFactor, Inc. v. <u>Google LLC</u>*; U.S. District Court, Western District of Texas (Waco), Expert Report, Deposition, Supplemental Report, Trial, Declaration

*<u>G.W. Lisk Company, Inc.</u> v. GITS Manufacturing Company*; U.S. District Court, Southern District of Iowa (Central); Expert Report, Reply Report, Deposition

*<u>American Eagle Outfitters, Inc. and Retail Royalty Company</u> v. Walmart, Inc.*; U.S. District Court, Western District of Pennsylvania (Pittsburgh), Expert Report, Rebuttal Report, Deposition

*<u>Simply Wireless, Inc.</u> v. T-Mobile US, Inc., et al.*; U.S. District Court, Eastern District of Virginia (Alexandria), Expert Report, Reply Report, Deposition, Sur-Sur Reply Report

*<u>Gentex Corporation</u> v. Galvion LTD and Galvion Inc.*; U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition

*Kirsch Research and Development, LLC v. <u>DuPont de Nemours, Inc., FT Synthetics, Inc. and Atlas Roofing Corporation</u>*; U.S. District Court, Eastern District of Texas (Texarkana), Expert Report, Deposition

*<u>Malvern PanAnalytical Inc.</u> v. TA Instruments-Waters LLC and Waters Technologies Corporation*; U.S. District Court, District of Delaware (Wilmington), Expert Report, Rebuttal Report, Reply Report, Deposition

*Finalrod IP, LLC v. <u>Endurance Lift Solutions, Inc.</u>*; U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Deposition

*Pierce Manufacturing, Inc. and Oshkosh Corporation v. <u>E-One, Inc. and REV Group, Inc.</u>*; U.S. District Court, Middle District of Florida (Tampa), Declaration, Expert Report, Deposition, Trial



**W. Todd Schoettelkotte**
**Four Year List of Testimony**
**As of January 2025**

| CASE DESCRIPTION / TYPE OF TESTIMONY |
| --- |

_Polar Electro Oy_ v. _Suunto Oy, et al._; U.S. District Court, District of Utah (Central), Expert Report, Deposition

_Wonderland Switzerland AG_ v. _Evenflo Company, Inc., et al._; U.S. District Court, District of Delaware (Wilmington), Expert Report, Reply Report, Deposition, Trial

_Lufkin Industries, Inc. v. International Business Machines Corporation, et al._; 159th Judicial District Court of Angelina County, Texas, Expert Report #1, Supplemental Report #1, Expert Report #2, Supplemental Report #2, Deposition

_The Hillman Group, Inc._ v. _KeyMe, LLC_; U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Deposition #1, Consolidated Report, Deposition #2

_Team Worldwide Corporation v. Academy, LTD d/b/a Academy Sports + Outdoors, et al._; U.S. District Court, Eastern District of Texas (Marshall), Expert Report, Rebuttal Report, Deposition #1, Deposition #2, Supplemental Report