1  Michael Bettinger (CA SBN 122196)
   mbettinger@sidley.com
2  SIDLEY AUSTIN LLP
   555 California Street, Suite 2000
3  San Francisco, California 94104
   Telephone: (415) 772-1200
4  Facsimile: (415) 772-7400

5  Samuel N. Tiu (CA SBN 216291)
   stiu@sidley.com
6  Brooke S. Böll (CA SBN 318372)
   brooke.boll@sidley.com
7  Marissa X. Hernandez (CA SBN 341449)
   marissa.hernandez@sidley.com
8  SIDLEY AUSTIN LLP
   350 South Grand Avenue
9  Los Angeles, CA 90071
   Telephone: (213) 896-6095
10 Fax: (213) 896-6600

11 *Attorneys for Defendants*
   MOTIFF PTE. LTD., YUANFUDAO HK LTD.,
12 and KANYUN HOLDING GROUP CO. LTD.

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

| | |
|---|---|
| 16  FIGMA, INC., | Case No. 3:24-cv-06507-JD |
| 17              Plaintiff, | **DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT, AND DEFENSES** |
| 18         vs. | |
| 19  MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDING GROUP CO. LTD., | |
| 20 | **DEMAND FOR JURY TRIAL** |
| 21              Defendants. | |

22

23

24

25

26

27

28

Defendants Motiff Pte. Ltd. ("Motiff"), Yuanfudao HK Ltd. ("Yuanfudao"), and Kanyun Holding Group Co. Ltd. ("Kanyun") (collectively, "Defendants"), hereby respond to Plaintiff Figma, Inc.'s ("Plaintiff" or "Figma") Complaint for Copyright Infringement and Breach of Contract and sets forth their defenses to the Complaint.

On September 16, 2024 (US time), Plaintiff filed a separate legal proceeding for alleged copyright infringement against Defendant Motiff in the General Division for the High Court of the Republic of Singapore, HC/OC 733/2024 ("Singapore Action). On October 18, 2024, Motiff filed a Defence (Answer) in the Singapore Action denying any copyright infringement. Motiff hereby incorporates by reference each of the responses set forth in its Defence filed in the Singapore Action.

## ANSWER

The headings contained in this Answer are copied from Plaintiff's Complaint and should not be considered as admissions by Defendants, and Defendants hereby deny them.

## PARTIES

1.      Founded in 2012, Figma is a leader in cloud-based design software. Its suite of web-based tools combines powerful features with multi-user functionality to make it faster, easier, and more fun for teams to ideate, design, and build products together, from start to finish. Figma is a corporation organized under the laws of the State of Delaware and has its corporate headquarters at 760 Market Street, Floor 10, San Francisco, California 94102.

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 1, and on that basis, deny them.

2.      Upon information and belief, Defendant Motiff Pte. Ltd. ("Motiff") is a corporation organized under Singapore law in March 2024 with its principal place of business at 6 Raffles Quay, #14-02, Singapore 048580.

**ANSWER:**  Motiff admits that it is incorporated in Singapore with a registered address at 6 Raffles Quay, #14-02, Singapore 048580. To the extent paragraph 2 contains legal conclusions, no response is required. Except as so admitted, Motiff denies the allegations of paragraph 2.

3.      Upon information and belief, Defendant Yuanfudao HK Ltd. a/k/a Ape Counseling ("Yuanfudao") is a corporation organized under the laws of China with its principal place of business

at Floor 6, Area F, Block A, Lei Shing Hong Center, No. 8, Guangshun South Street, Wangjing, Chaoyang District, Beijing, 100000, China.

**ANSWER:** Yuanfudao admits that it is incorporated in Hong Kong with a registered address at Suite 603, Floor 6, Laws Commercial Plaza, 788 Cheung Sha Wan Road, Hong Kong SAR, China. To the extent paragraph 3 contains legal conclusions, no response is required. Except as so admitted, Yuanfudao denies the allegations of paragraph 3.

4.      Upon information and belief, Defendant Kanyun Holding Group Co. Ltd. a/k/a Beijing Kanyun Holdings Co., Ltd. ("Kanyun") is a corporation organized under the laws of China with its principal place of business at Floor 6, Area F, Block A, Lei Shing Hong Center, No. 8, Guangshun South Street, Wangjing, Chaoyang District, Beijing, 100000, China.

**ANSWER:** Kanyun admits that it is incorporated in China with a registered address at Floor 6, Area F, Block A, Lei Shing Hong Center, No. 8, Guangshun South Street, Wangjing, Chaoyang District, Beijing, 100000, China. To the extent that paragraph 4 contains legal conclusions, no response is required. Except as so admitted, Kanyun denies the allegations of paragraph 4.

5.      Defendants Motiff, Yuanfudao, and Kanyun have common and overlapping leadership and employees, utilize shared premises, and have shared operations including email and services procurement.

**ANSWER:** Defendants admit that they are directly or indirectly owned by a common parent company. To the extent that paragraph 5 contains legal conclusions, no response is required. Except as so admitted, Defendants deny the allegations of paragraph 5.

6.      Defendants Motiff, Yuanfudao, and Kanyun, individually, collectively, or acting in concert, develop and distribute the Motiff software product worldwide and advertise it in the United States. The Motiff product can be accessed directly from www.motiff.com in the United States. Motiff also offers desktop applications for Windows and MacOS and mobile applications for Apple devices on Apple's App Store and for Android devices on the Google Play Store.

**ANSWER:** To the extent that paragraph 6 contains legal conclusions, no response is required. Defendants admit that the Motiff product was launched in June 2024 as a software as a service ("SaaS") platform, and primarily functions as an artificial intelligence-powered professional user

2

interface and user experience design tool. The Motiff product can be accessed from Motiff's website www.motiff.com, or downloaded from Apple's "App Store," or from "Google Play Store." Except as so admitted, Defendants deny the allegations of paragraph 6.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over Figma's copyright and state law claims under 28 U.S.C. §§ 1331, 1338(a), (b), and 1367(a). The Court also has diversity jurisdiction under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000.

**ANSWER:**  To the extent paragraph 7 contains legal conclusions, no response is required. Defendants admit that Plaintiff purports to allege a copyright claim, but specifically denies they have committed any acts of infringement or caused any injury or damage to Plaintiff. Defendants admit that this Court has subject matter jurisdiction over actions arising under the copyright laws of the United States, but denies that the Court has subject matter jurisdiction over alleged infringing activities occurring outside the United States. Defendants admit that they are citizens of foreign states. Except as so admitted, Defendants deny the allegations of paragraph 7.

8.    This Court has personal jurisdiction over Defendants. Defendants have conducted, and continue to conduct, business within the State of California and within this District. Defendants have purposefully aimed the effects of their conduct to cause harm in the State of California and within this District. Defendants, directly or through intermediaries, make, distribute, offer for sale or license, sell or license, or advertise their products and services in the United States, the State of California, and this District.

**ANSWER:**  To the extent paragraph 8 contains legal conclusions, no response is required. For purposes of this action only, Defendants do not contest personal jurisdiction in the U.S. District Court for the Northern District of California. Defendants deny all remaining allegations of paragraph 8 and specifically deny that they have caused any harm in the United States, State of California, or within this District.

9.    Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in, or a substantial part of property that is the subject of the action is situated in, this District.

**ANSWER:** For the purposes of this action only, Defendants do not contest venue in the U.S. District Court for the Northern District of California. To the extent paragraph 9 contains legal conclusions, no response is required. Except as so admitted, Defendants deny the allegations of paragraph 9.

## INTRADISTRICT ASSIGNMENT

10. This is an Intellectual Property Action to be assigned on a district-wide basis pursuant to Civil Local Rule 3-2(c).

**ANSWER:** For the purposes of this action only, Defendants do not contest that this case can be assigned on a district-wide basis. To the extent paragraph 10 contains legal conclusions, no response is required. Except as so admitted, Defendants deny the allegations of paragraph 10.

## BACKGROUND

**1.    Figma's Groundbreaking Design Software**

11. The field of digital product design (often referred to simply as, "product design") is relatively new, having evolved with the rise of the digital economy. Product design focuses on improving a user's interaction with a digital product (*e.g.*, a mobile application or website) by enhancing the user interface ("UI") and user experience ("UX"). High quality product design makes products attractive and easy to use. For example, when designing a mobile app, a product design team will typically create the look of an app by laying out components (*e.g.*, buttons, icons, headers, images, and text boxes) while considering their visual elements (*e.g.*, their size, contrast, and spacing) and incorporating feedback from a variety of cross-functional stakeholders. Then, the team typically creates a prototype (*i.e.*, an interactive mockup) for the team to simulate a user's experience. With the prototype, the team can test the feel of navigating and using the app. Once the team is satisfied with the app's look and feel, the designs are typically handed off to software developers to implement (*i.e.*, translate into code). As many people are involved in developing mobile applications and websites, users of product design software frequently span product designers, software developers, product managers, and other cross-functional stakeholders, such as user researchers, marketers, copywriters, lawyers, executives, and other team members.

**ANSWER:**  Consistent with Motiff's Defence statement in the Singapore Action, Motiff admits the allegations in sentences 2-6 of paragraph 11. Except as so admitted, Defendants are without sufficient information to admit or deny the allegations in paragraph 11 and, on that basis, deny them.

12.    Figma is well-known for its leadership and innovation in developing web-based, collaborative software tools to ideate, design, and build digital products. Figma introduced its flagship product, Figma Design, in 2016. Figma's key insight was that designing great digital products is a team sport. By building the first product design tool on the web, Figma enabled multiple users to work on the same file simultaneously (*i.e.*, in real-time) for the first time. Figma's groundbreaking web-based tool made sharing design files as easy as sharing a link. Everyone involved can always review, comment on, or edit the most current version. Figma Design gained immediate traction due to its revolutionary capabilities and instant appeal.

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 12, and on that basis, deny them.

13.    Since Figma Design's initial release, Figma has continued to invest in research and development to enhance its software product suite, address emerging market needs, and provide state-of-the-art technology to help customers build digital products. Its offerings include: Dev Mode, a workspace in Figma Design that helps a software developer efficiently translate a Figma design file into software code; FigJam, a collaborative online whiteboarding tool; and Figma Slides, a presentation tool for collaborative, interactive presentations. Collectively, this suite of offerings is known as the "Figma Platform."

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 13, and on that basis, deny them.

14.    Through its commitment to quality and innovation, Figma has fundamentally changed the way teams build digital products and, in the process, established tremendous consumer goodwill. With millions of users of its design products, Figma is one of the most widely used design software platforms in the world. Today, companies such as Netflix, Airbnb, Zoom, and Dropbox have come to rely on Figma to create and build their products.

1    **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

2    paragraph 14, and on that basis, deny them.

3    **2.    Figma's Protected Copyrights**

4    15.    Figma's source code is one of the company's most valuable and closely guarded assets,

5    and Figma has gone to great lengths to protect it. Access to the source code is allowed only on an as-

6    needed basis. Figma protects the source code by placing it in secure, access-controlled source code

7    repositories, maintaining confidentiality policies, and requiring comprehensive device security

8    measures. Figma's source code is protected by U.S. Copyright Registrations TXu002441751,

9    TXu002441752, and TXu002441753.

10    **ANSWER:**  To the extent paragraph 15 contains legal conclusions, no response is required.

11    Defendants are without sufficient information to admit or deny the allegations in paragraph 15, and on

12    that basis, deny them.

13    16.    Figma maintains a Help Center, allowing users to find answers and inspiration on all

14    things Figma—in essence, Figma's products' manual. Figma's Help Center is protected by U.S.

15    Copyrights TXu002443057, TXu002443868, and TXu002443873.

16    **ANSWER:**  To the extent paragraph 16 contains legal conclusions, no response is required.

17    Defendants are without sufficient information to admit or deny the allegations in paragraph 16, and on

18    that basis, deny them.

19    **3.    Figma's Master Subscription Agreement**

20    17.    To obtain a limited license to access and use Figma's software and services, users must

21    obtain a license that varies based on the scope of the subscription.

22    **ANSWER:**  To the extent paragraph 17 contains legal conclusions, no response is required.

23    Defendants are without sufficient information to admit or deny the allegations in paragraph 17, and on

24    that basis, deny them.

25    18.    Defendant Yuanfudao is a former Figma customer. Defendant Yuanfudao agreed to

26    Figma's Master Subscription Agreement ("MSA"). The MSA binds Defendant Yuanfudao and

27    Defendant Yuanfudao's affiliates, Defendant Motif and Defendant Kanyun. Attached as Exhibit A,

28    and incorporated by reference, is a true and correct copy of Figma's MSA.

1    **ANSWER:**  To the extent paragraph 18 contains legal conclusions, no response is required.

2    Defendants admit that Figma attaches as an Exhibit to the Complaint a document titled, "Figma

3    Organization Master Subscription Agreement" that purports to have an effective date of July 24, 2019.

4    Defendants admit that Yuanfudao is a former Figma customer. Except as so admitted, Defendants

5    deny the allegations of paragraph 18.

6        19.    The MSA's limited license is conditioned on compliance with various terms that

7    protect Figma's intellectual property. By entering into the MSA, users agree not to "reverse engineer,

8    decompile, disassemble or otherwise attempt to discover the source code, object code or underlying

9    structure, ideas, know-how or algorithms relevant to the Figma Platform." Users also agree not to

10   "modify, translate, or create derivative works based on the Figma Platform . . . or Documentation."

11       **ANSWER:**  To the extent paragraph 19 contains legal conclusions, no response is required.

12   Defendants admit that the words quoted in paragraph 19 appear in Exhibit A to the Complaint. Except

13   as so admitted, Defendants deny the allegations of paragraph 19.

14       20.    The MSA provides notice to users that Figma owns the Figma Platform,

15   Documentation, and all associated intellectual property ("Figma IP"). The MSA also provides notice

16   to users that Figma IP is protected by copyright.

17       **ANSWER:**  To the extent paragraph 20 contains legal conclusions, no response is required.

18   Defendants deny the allegations of paragraph 20.

19       21.    Defendant Yuanfudao agreed to the MSA by executing an initial Service Order on May

20   18, 2020. Between May 2020 and August 2021, Defendants were provided four separate

21   "Organization" accounts under the initial Service Order and three subsequent Service Orders.

22       **ANSWER:**  To the extent paragraph 21 contains legal conclusions, no response is required.

23   Responding to paragraph 21, Yuanfudao admits that it has executed a service order with Figma. Except

24   as so admitted, Defendants deny the allegations of paragraph 21.

25       22.    After agreeing to the MSA, Defendant Yuanfudao facilitated access to Figma's

26   software and services for employees of Defendant Kanyun and Defendant Motiff through these

27   Organization accounts. On information and belief, Defendants used this access to develop the Motiff

28   product.

DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT
FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT – 3:24-CV-06507-JD

1    **ANSWER:** To the extent paragraph 22 contains legal conclusions, no response is required.

2    Defendants deny the allegations of paragraph 22.

3    **4.    Motiff Introduces a "New" Cloud-Based Design Software**

4    23.    Defendant Motiff unveiled the Motiff product at a public launch at the SuperAI

5    Singapore Summit on June 5, 2024. Like Figma, Motiff also offers a workspace identically named

6    "Dev Mode" to help a software developer translate a design file into software code.

7    **ANSWER:** Responding to paragraph 23, Motiff admits that on June 5, 2024, it launched its

8    product at the SuperAI Summit in Singapore as a SaaS platform that primarily functions as an artificial

9    intelligence-powered professional user interface and user experience design tool ("Motiff Product").

10   Defendants Yuanfudao and Kanyun are without sufficient knowledge to admit or deny the allegations

11   in paragraph 23, and on this basis deny them. Except as so admitted, Defendants deny the allegations

12   of paragraph 23.

13   24.    Attached as Exhibit B is a true and correct copy of a contemporaneous blog post dated

14   June 5, 2024, entitled, "Welcome to Motiff: UI design tool for AI era."

15   **ANSWER:** Responding to paragraph 24, Defendants admit that Exhibit B appears to be a

16   printout copy of a blog post titled "Welcome to Motiff: UI design tool for AI era." Except as so

17   admitted, Defendants deny the allegations of paragraph 24.

18   25.    In the blog post, Defendant Motiff's purported co-founders—as employees of

19   Defendant Kanyun—claim to have begun work on the Motiff product in October 2021. The blog post

20   further states that "[c]reating a comprehensive editor demanded significant effort from the Motiff

21   team."

22   **ANSWER:** Responding to paragraph 25, Defendants admit that the words quoted in paragraph

23   25 appear in Exhibit B referred to in paragraph 24. Defendants admit that Exhibit B contains the

24   following statement: "Our journey on the Motiff project took off in October 2021" and "Creating a

25   comprehensive editor demanded significant effort from the Motiff team." Except as so admitted,

26   Defendants deny the allegations of paragraph 25.

27   26.    But rather than describing those "significant effort[s]," the post refers to Defendant

28   Motiff "ow[ing] a debt of gratitude to Figma for paving the way." The post further acknowledges

"Figma's creation of a complex yet refined online graphic editor [as] a source of constant learning" for Motiff and refers to Figma's "blog shares" as benefiting Motiff "immensely."

**ANSWER:** Responding to paragraph 26, Defendants admit that the words quoted in paragraph 26 appear in Exhibit B referred to in paragraph 24, but denies Figma's characterizations thereof. Except as so admitted, Defendants deny the allegations of paragraph 26.

27.    Shortly after the June 5 launch of the Motiff product, Defendants' employees attended Config (Figma's annual user conference), in person in San Francisco, beginning June 26, 2024. At this year's Config, Defendants advertised their product's recent launch by having a billboard truck featuring the Motiff product brazenly circle the conference site at Moscone Center in San Francisco.

**ANSWER:** Responding to paragraph 27, Defendants' admit that the Motiff Product was advertised in June 2024 on a moving vehicle on the streets of San Francisco. Except as so admitted, Defendants deny the allegations of paragraph 27.

28.    From "day one," Defendant Motiff has intended to "pursue business opportunities at home and abroad," including in the United States. *See* "Chinese apps eye overseas users amid local competition," South China Morning Post (Aug. 26, 2024) (quoting Defendant Kanyun employee and Defendant Motiff co-founder Haoran (Ryan Zhang) (Exhibit C). Defendant Motiff has, in fact, "quickly secured its first batch of users" for its copied product in the United States" -- by undercutting Figma's prices by 80%. *See id*.

**ANSWER:** Defendants admit that the words "Zhang noted that from day one, Motiff has pursued business opportunities at home and abroad" appear in Exhibit C attached to the Complaint. Except as so admitted, Defendants deny the allegations of paragraph 28.

29.    Defendants have directed their conduct to the United States and to this District, in particular. Defendants distribute the Motiff product using copies made in the Northern District of California. To enhance the responsiveness and performance for their users, Defendants employ servers within this District to distribute their copied product to users.

**ANSWER:** To the extent paragraph 29 contains legal conclusions, no response is required. Defendants admit that the Motiff Product is available from www.motiff.com, which can be accessed in the United States and this District. Defendants are without sufficient information to admit or deny

9

1  the allegations regarding the locations of servers of the vendor for www.motiff.com and on this basis

2  deny the allegations in paragraph 29. Except as so admitted, Defendants deny the allegations of

3  paragraph 29.

4  **5.      The Motiff Product is Built on Copied Figma Code**

5          30.     Defendant Motiff's blog post is in many ways inaccurate. Defendants did not develop

6  the Motiff product's editor—the "foundation" of the product—merely from reading Figma's blog

7  shares and employing their own honest labor. Instead, Defendants impermissibly reversed engineered

8  Figma's products and misappropriated significant portions of Figma's proprietary code.

9          **ANSWER:**  Denied.

10         31.     The Motiff product is not merely inspired by Figma Design, nor does it simply share

11 similar interfaces and commands. In crucial and unmistakable ways, the Motiff product performs

12 identically to prior versions of Figma Design and the Figma Platform. This duplication could not have

13 been accomplished by coincidence or by applying similar programming logic.

14         **ANSWER:**  Denied.

15         32.     Software naturally evolves as new features are added during a product's lifecycle. This

16 evolution results in distinctive signatures in the source code—much like the unique patterns in the

17 genetic code of living organisms. Just as the existence of mutations and other anomalies can

18 demonstrate genetic lineage, the existence of "bugs," programming remnants, and other idiosyncrasies

19 in software code can establish programming lineage.

20         **ANSWER:**  Responding to paragraph 32, Defendants admit that software code can have

21 "bugs" and that software can change as new features are added. Defendants are without sufficient

22 information to admit or deny the allegations in paragraph 32, and on this basis deny them. Except as

23 so admitted, Defendants deny the allegations of paragraph 32.

24         33.     So, too, do design decisions—whether and how to express a function or data structure

25 in code, how to create an interface so that the user interacts with a product logically and intuitively,

26 and how to phrase error messages, user notifications, and online education materials—reveal

27 engineers' and product marketing's unique stamp on a product. Defendants' copying of Figma's

28 design choices—reflected in code, strings of text, and even inefficiencies and bugs—present perhaps

the clearest case for Defendants' extensive copying of Figma and its code. These elements could not have been introduced without the wholesale copying of significant portions of Figma's proprietary code.

**ANSWER:** Denied.

34.    All software code has quirks, but no two independently developed pieces of code should have ***identical*** quirks. It is revealing—troubling, even—that the Motiff product displays many of the same idiosyncrasies and "bugs" found in Figma Design.

**ANSWER:** Defendants admit that software code can have "bugs." Except as so admitted, Defendants deny the allegations of paragraph 34.

35.    The inescapable conclusion is that Defendants improperly and illegally copied substantial portions of Figma's code, appropriating years of Figma's development effort. The Motiff product is replete with not only identical bugs and idiosyncrasies, but also copied code, data structures, interface elements, and text indicating its origins in the Figma Platform. The non-exhaustive examples of Defendants' widespread copying below confirm Defendants' breach of contract and copyright infringement.

**ANSWER:** To the extent paragraph 35 contains legal conclusions, no response is required. Defendants deny the allegations of paragraph 35.

1.    **Copied Code**

    a.    **Copied Shader Code**

36.    The Motiff product copies the Figma Platform's shaders. Shaders are small programs that run locally on a user's graphics processor. They are tightly coupled to the code that invokes them (*i.e.* that asks the graphics processor to run the shader) and indicative of the invoking code's content.

**ANSWER:** Defendants admit shaders are small programs that run locally on a user's graphics processor. Except as so admitted, Defendants deny the allegations in paragraph 36.

37.    When distributed by a web program to a user's machine to compile and run, shader code is provided in a condensed ("minified") form. The automated "minifying" process condenses the shader code into the smallest packets of data possible to increase transmission speed and reduce bandwidth costs. Minifying eliminates white space by substituting expressive variable names for

11

1  single characters, retaining only the minimum set of information needed for the graphics drivers and

2  processor to compile and run the shader. The minified shader only retains: (1) variable types, (2) single

3  character variable names, (3) hardcoded numerical values, (4) operations, and (5) the structure of the

4  shader code. The minified code, rather than the expressive code from which it is built, is visible to a

5  user through developer tools.

6      **ANSWER:**  Defendants admit that minification removes white space and expressive elements,

7  leaving only non-expressive mathematical formulas, which can then be obfuscated.  Defendants admit

8  that non-expressive minified elements can be visible to users through developer tools. Except as so

9  admitted, Defendants deny the allegations of paragraph 37.

10      38.    The image below shows the results of a "diff"—a software developer's version of a

11  "redline"—making a character-by-character comparison of one of the Motiff product's minified

12  shaders with the equivalent minified Figma Platform shader. The green font indicates characters in the

13  Motiff product that differ from those in the Figma Platform's minified shader. The red font indicates

14  characters that do not appear in the Motiff product but appear in the Figma Platform's minified shader.

15  The grey font indicates code common to both shaders. The green and red pairs, which show a

16  substitution or re-arrangement of one variable for another, reveal Defendants' copying of the Figma

17  Platform's shader:

18      **ANSWER:**    Defendants admit that paragraph 38 purports to provide an image showing the

19  results of a "diff." Defendants are without sufficient information to admit or deny the allegations in

20  paragraph 38, and on that basis, deny them. Except as so admitted, Defendants deny the allegations in

21  paragraph 38.

22      **b.    Copied GPU Strings**

23      39.    On information and belief, the Motiff product also copies workarounds for bugs

24  specific to certain graphics processors that Figma has identified through years of product development.

25  Just as all software has bugs, graphics drivers and graphics processors have bugs. Through years of

26  operating at scale, Figma has identified bugs that result from bugs within the user's graphics card.

27      **ANSWER:**  Responding to paragraph 39, Defendants admit graphics drivers and graphics

28  processors may have bugs. Except as so admitted, Defendants deny the allegations in paragraph 39.

40.     Figma therefore has added unique workarounds to the Figma Platform to avoid these bugs when it detects specific graphics cards or drivers. In particular, when the Figma Platform detects hardcoded strings referring to those graphics cards or drivers, the product applies the appropriate workaround. These hardcoded strings are not visible to the typical user.

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 40, and on that basis, deny them.

41.     The newly released Motiff product inexplicably contains the same set of hardcoded strings, such as those for the following graphics cards or drivers:

- Mesa Intel(R) Graphics (ADL GT2)
- Mesa Intel(R) Xe Graphics (TGL GT2)
- Adreno (TM) 725
- Adreno (TM) 730
- Adreno (TM) 740
- Adreno (TM) 750

**ANSWER:**  Responding to paragraph 41, Motiff admits that its product can handle the graphic cards listed in paragraph 41 and other graphic cards. Except as so admitted, Defendants deny the allegations in paragraph 41.

**c.     Copied Data Transfer, Data Representation, and User Permissions Idiosyncrasies**

42.     These are not the only examples indicating that Defendants copied the code for the Figma Platform when developing the Motiff product. Other idiosyncrasies in the newly released Motiff product confirm this.

**ANSWER:**  Denied.

43.     Like the Figma Platform, the Motiff product unnecessarily repeats certain data transfers to the user's graphics processor—an unusual design choice. Like the Figma Platform, the Motiff product represents quadratic curves as cubic curves—another unusual design choice. And further, the Motiff product reproduces an undisclosed bug in Figma's network application programmer interface ("API") calls that enables a free-tier user to bypass the three collaborative design file limit included in that tier.

13

**ANSWER:**  Responding to paragraph 43, Defendants admit that quadratic curves can be represented as cubic curves. Defendants deny that such representations are an unusual design choice as such representations are common in the industry. Repeat data transfers to the user's graphic processor are also common in the industry. Defendants are without sufficient information to admit or deny the allegations in paragraph 43, and on that basis, deny them. Except as so admitted, Defendants deny the allegations in paragraph 43.

**2.    Copied Data Structures**

44.    Figma's design and selection of data structures used in its products likewise reflect years of product development and evolution. Unlikely similarities in the Motiff product's data structures also underscore Defendants' extensive copying of Figma's code.

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 44 relating to Figma's product development, and on that basis, deny them. Defendants deny the allegations of paragraph 44.

45.    **Copied ".fig" document format.** For example, the Motiff product's document format copies the Figma Platform's ".fig" document format. The Motiff product's document format uses similarly (and often identically) named structures and non-intuitive capitalization choices (*e.g.*, isFirstLineOfList; lineType).

**ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in paragraph 45 relating to the Figma Platform's document format or where Figma obtained purportedly Motiff's document format, and on that basis, deny them. Except as so admitted, Defendants deny the allegations of paragraph 45.

46.    **Copied autosave schema.** As another example, the Motiff product's autosave schema mirrors an older version of Figma Design's autosave schema, even using the same version number ("v2") despite the Motiff product's recent June 2024 release. The Motiff product's autosave schema changes the structure names only slightly using simple substitutions. As the image below reveals, multiple tables in the Motiff product's autosave schema and its session-index share identical names with an older version of Figma Design's autosave schema.

1    **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

2    paragraph 46 relating to the Figma Design's autosave schema, format, or where Figma obtained

3    purportedly Motiff's autosave schema, and on that basis, deny them. Except as so admitted,

4    Defendants deny the allegations of paragraph 46.

5        47.    The table format is the same. The data stored in the tables have corresponding fields,

6    in the same order, except for variations in a few names. For example, Figma Design's autosave v2's

7    session-index contains fields for "userID," "fileKey," and "sessionID." The Motiff product includes

8    functionally identical fields ("userId," "docId," and "sid") that appear in the same order.

9        **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

10   paragraph 47 relating to the Figma Design table format, and on that basis, deny them. Defendants deny

11   the allegations of paragraph 47.

12       48.    **Copied render tree and debugging tool.** As another example, Figma employs a

13   specific approach to rendering that uses an intermediate data structure—a render tree—that has

14   specific types of elements as nodes. Figma also has a debugging tool that prints out the render tree in

15   a particular text format.

16       **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

17   paragraph 48 relating to Figma Platform and on that basis, deny them. Defendants deny the allegations

18   of paragraph 48.

19       49.    As depicted below, the Motiff's product's "RenderTree" employs the same nontrivial

20   organization of elements as the Figma Platform's render tree.

21       **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

22   paragraph 49 relating to the Figma Platform's render tree and where Figma obtained the Motiff

23   product's purported "RenderTree," and on that basis, deny them. Except as so admitted, Defendants

24   deny the allegations of paragraph 49.

25       50.    Despite copying the organization and elements of the Figma Platform's render tree and

26   debugging tool, Defendant Motiff falsely claims in a blog post to have "developed a unique data

27   structure dedicated to rendering, named RenderTree" itself. Attached as Exhibit D, and incorporated

28

by reference, is a true and correct copy of Defendant Motiff's blog post, dated June 18, 2024, entitled "Performance magic behind Motiff."

**ANSWER:** To the extent paragraph 50 contains legal conclusions, no response is required. Defendants admit that Exhibit D appears to be a copy of a blog post titled "Performance magic behind Motiff" dated June 18, 2024. Except as so admitted, Defendants deny the allegations of paragraph 50.

**3.    Copied Rendering Bugs**

51.    In addition, from years of experience developing the Figma Platform, Figma's engineers are aware of certain bugs and idiosyncrasies that occur when rendering images. These bugs and idiosyncrasies reflect specific coding decisions and the evolution of the code base. The existence of these bugs and idiosyncrasies in the Motiff product underscores Defendants' extensive copying of Figma's code. A sampling of these idiosyncrasies and bugs appears below.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 51 relating to Figma's Platform and related code, and on that basis, deny them. Defendants deny the allegations in paragraph 51.

52.    **Copied outside stroke error.** When rendering an outside stroke, the Figma Platform will display an unintended error. *E.g.*, when applying an outside stroke with a width of 200 pixels to a 100-pixel diameter red circle, an unexpected "bullseye" (depicted as the gap between the circle and the stroke below) will appear. The Motiff product displays the same error.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 52 relating to the Figma Platform, and on that basis, deny them. Defendants deny the allegations of paragraph 52.

53.    **Copied offset path error.** As yet another example, the Figma Platform depicts another stroke rendering bug when displaying certain offset paths that should be smooth and continuous. The Motiff product displays the same error.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 53 relating to the Figma Platform, and on that basis, deny them. Defendants deny the allegations of paragraph 53.

1   54.    **Copied curved stroke error.** As another example, when rendering a curved stroke

2   with a final segment shorter than the stroke width, the Figma Platform will display another unintended

3   error. *E.g.*, when defining a stroke with three points slightly out of line, the rendered stroke will

4   unexpectedly omit a semicircle where the stroke segments overlap. The Motiff product displays the

5   same error.

6   **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

7   paragraph 54 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

8   allegations of paragraph 54.

9   55.    **Copied red heart emoji error.** As yet another example, when rendering a red heart

10  emoji (  ), the Figma Platform will display another unintended error—a flat black heart (❤). The

11  Motiff product displays the same error.

12  **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

13  paragraph 55 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

14  allegations of paragraph 55.

15  56.    **Copied drop shadow error.** As yet another example, when rendering a drop shadow

16  that has been applied to an object with a gradient within a frame, the Figma Platform will display an

17  unintuitive behavior upon swapping the frame's direction: the gradient flips, but the drop shadow does

18  not. The Motiff product displays the same unintuitive behavior.

19  **ANSWER:** Defendants are without sufficient information to admit or deny the allegations in

20  paragraph 56 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

21  allegations of paragraph 56.

22  57.    **Copied dash line idiosyncrasy.** As yet another example, when rendering certain

23  dashed lines, the Figma Platform will display a unique design idiosyncrasy. *E.g.*, a user-specified

24  dashed line that is 30 pixels in length will instead appear substantially shorter in certain scenarios. The

25  corners also have a specific shape. The Motiff product displays these same idiosyncrasies.

26  **ANSWER:**  Defendants are without sufficient information to admit or deny allegations in

27  paragraph 57 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

28  allegations of paragraph 57.

58. **Copied line node to vector node conversion.** As yet another example, when converting a line node to a vector node, the Figma Platform will shift the node to a half-pixel position. Specifically, instead of snapping to standard grid positions, the converted vector node will unintuitively be shifted half a pixel. The Motiff product displays the same behavior.

**ANSWER:** Defendants are without sufficient information to admit or deny allegations in paragraph 58 relating to the Figma Platform, and on that basis, deny them. Defendants deny the allegations in paragraph 58.

59. **Copied SVG export rendering error.** As yet another example, Figma Design has an error that causes certain SVG exports to render inappropriately. The centered Figma Design image below mistakenly renders with a transparent top layer when exported. The Motiff product produces the same error.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 59 relating to Figma Design, and on that basis, deny them. Defendants deny the allegations of paragraph 59.

**4.    Copied Interface "Look and Feel"**

60.    Defendants' indiscriminate copying extends beyond copied code and data structures. The Motiff product's interface also inexplicably mirrors Figma Design's interface, including when the product is in "Dev Mode." The copying includes copying of the Figma Platform's introductory/onboarding messages, warning messages, error messages, images, icons, layouts, toggles, visual style, and options, among other things.

**ANSWER:** Defendants deny copying Figma's source code. Defendants are without sufficient information to admit or deny the allegations in paragraph 60 to the extent they relate to Figma's Platform and related source code, and on that basis, deny them. Defendants deny the allegations in paragraph 60.

61. **Copied error panes.** Error panes in the Motiff product are identical to those in the Figma Platform. *E.g.*, the tabs ("Comment," "Properties," and "Export") and error notification ("Export disabled" – "Someone with . . .") in the Motiff product and Figma Design's export panes are identical. Other examples include error messages when attempting prototyping connections between

18

1    frames when only one frame exists, notifications when recovering from network interruptions, and

2    missing fonts. An exemplary comparison of the Figma Platform's and the Motiff product's "export

3    disabled" error message is shown below.

4       **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

5    paragraph 61 relating to the Figma Platform and Figma Design, and on that basis, deny them.

6    Defendants deny the allegations of paragraph 61.

7       62.    **Copied setup and onboarding panes.** The same is true of the Motiff product's setup

8    and onboarding instruction panes, which copy those in the Figma Platform. The exemplary library

9    onboarding pane is shown below. Additional examples include moving files to a team to publish assets,

10   multiplayer onboarding, and team library onboarding.

11      **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

12   paragraph 62 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

13   allegations of paragraph 62.

14      63.    **Copied interface elements.** The Motiff product also copies the distinctive visual style

15   of dozens of the Figma Platform's interface elements. An example involving how margins are

16   displayed upon hovering is shown below. In the Motiff product, as in Figma, pixel values are shown

17   in orange boxes with white numbers. Additional examples include icon detection, toggles, and library

18   update notifications.

19      **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

20   paragraph 63 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

21   allegations of paragraph 63.

22      64.    **Copied multi-step user workflows.** The Motiff product also copies the layout, visual

23   style, and options in numerous multi-step guided workflow panes in the Figma Platform. Depicted

24   below is an example involving the color profile settings workflow (with just one representative pane

25   shown).

26      **ANSWER:**  Defendants are without sufficient information to admit or deny the allegations in

27   paragraph 64 relating to the Figma Platform, and on that basis, deny them. Defendants deny the

28   allegations of paragraph 64.

65.    **Copied content editing panes.** The Motiff product also copies the layout, visual style, and property names of numerous content selection panes of the Figma Platform. Examples involving selected text and selected frames appear below. Additional examples include the Fill Rule editor plugin panes, the Skew Dat plugin panes, and scroll behavior editing panes.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 65 relating to the Figma Platform, and on that basis, deny them. Defendants deny the allegations of paragraph 65.

66.    The preceding examples further demonstrate that Defendants did not build their platform "learning" from Figma's blog shares as they falsely claim, but by copying significant portions of Figma's code and the Figma Platform.

**ANSWER:** Defendants deny that they copied Figma's source code. Defendants deny the allegations of paragraph 66.

67.    **Copied Help Center documentation.** The Motiff product's Help Center documentation also blatantly copies Figma's Help Center documentation. One example (from perhaps hundreds) involving managing color profiles appears below. Other examples include documentation on corner radius smoothing, colors generally, smart selections, browser configuration, user management, code snippets, linking Dev resources to layers in Dev Mode, prototypes, library descriptions, swapping components, shows and blurs, and text properties.

**ANSWER:** Defendants are without sufficient information to admit or deny the allegations in paragraph 67 relating to Figma's Help Center, and on that basis, deny them. Defendants deny the allegations of paragraph 67.

68.    The preceding examples involving copied code, data structures, rendering bugs and idiosyncrasies, look-and-feel, and documentation are far from exhaustive of Defendants' disregard for Figma's intellectual property rights. For example, Figma has recently learned that Defendants have used dozens of free user accounts to systematically scrape content from Figma Community resources for use in Defendants' Motiff product.

**ANSWER:** Denied.

69.    Defendants have purposefully, actively, and voluntarily advertised and distributed the Motiff product and related services in the United States. Defendants have thus committed copyright infringement and are in breach of contract. By purposefully and voluntarily appropriating Figma's code and distributing the Motiff product, Defendants have injured Figma and thus are liable for copyright infringement and breach of contract.

**ANSWER:**  Defendants admit that the Motiff Product has been advertised and distributed in the United States. Defendants deny they have committed any acts of infringement or breach of contract nor have they caused any injury or damage to Plaintiff. Except as so admitted, Defendants deny the allegations in paragraph 69.

## COUNT I: COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

70.    Figma hereby restates and re-alleges the allegations set forth in paragraphs 1 through 69 above and incorporates them by reference.

**ANSWER:**  Defendants incorporate by reference, as if set forth in full herein, their responses to paragraphs 1 through 69 above.

71.    The Figma products contain a substantial amount of original material that is copyrightable subject matter under the Copyright Act, 17 U.S.C. § 101 *et seq.*

**ANSWER:**  To the extent paragraph 71 contains legal conclusions, no response is required. Defendants deny the allegations in paragraph 71.

72.    Without consent, authorization, approval, or license, Defendants collectively or acting in concert, knowingly, willingly, and unlawfully copied, prepared, published, and distributed Figma's copyrighted work, portions thereof, or derivative works and continues to do so. Defendants' Motiff products infringe Figma's copyrights in its products, and Defendants are not licensed to do so.

**ANSWER:**  Denied.

73.    Defendants are aware of Figma's copyrights in its products. Defendants' infringement therefore is and has been knowing and willful.

**ANSWER:**  Denied.

74.    By their unlawful copying, use, and distribution, Defendants have violated Figma's exclusive rights under 17 U.S.C. § 106.

**ANSWER:** Denied.

75.    Defendants have realized unjust profits, gains, and advantages as a proximate result of its infringement.

**ANSWER:** Denied.

76.    Defendants will continue to realize unjust profits, gains, and advantages as a proximate result of its infringement as long as such infringement is permitted to continue.

**ANSWER:** Denied.

77.    Figma is entitled to an injunction restraining Defendants from engaging in any further acts in violation of the United States copyright laws. Unless Defendants are enjoined and prohibited from infringing Figma's copyrights and unless all infringing products and advertising materials are seized, Defendants will continue to intentionally infringe Figma's registered copyrights.

**ANSWER:** Denied.

78.    As a direct and proximate result of Defendants' direct willful copyright infringement, Figma has suffered, and will continue to suffer, monetary loss to its business, reputation, and goodwill. Figma is entitled to recover from Defendants, in amounts to be determined at trial, the damages it has sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement and Defendants' use and publication of the copied materials.

**ANSWER:** Denied.

**COUNT II: BREACH OF CONTRACT**

79.    Figma hereby restates and re-alleges the allegations set forth in paragraphs 1 through 69 above and incorporates them by reference.

**ANSWER:** Defendants incorporate by reference, as if set forth in full herein, its responses to paragraphs 1 through 69 above.

80.    Each of the defendants, or agents for each of the defendants, knowingly and willingly agreed to Figma's MSA.

**ANSWER:** Denied.

81.    Defendants' agreement to Figma's MSA creates a valid and enforceable contract.

1    **ANSWER:** To the extent paragraph 81 contains legal conclusions, no response is required.

2    Defendants deny the allegations of paragraph 81.

3        82.    Figma has fully performed or tendered all performance required under the MSA.

4    **ANSWER:** To the extent paragraph 82 contains legal conclusions, no response is required.

5    Defendants deny the allegations of paragraph 82.

6        83.    As alleged above, Defendants have breached their obligations under Figma's MSA,

7    including but not limited to their duties to refrain from some or all of the following conduct:

8        • "[R]everse engineer[ing], decompil[ing], disassembl[ing] or otherwise attempt[ing] to

9            discover the source code, object code or underlying structure, ideas, know-how or

10           algorithms relevant to the Figma Platform";

11       • "[M]odify[ing], translat[ing], or creat[ing] derivative works based on the Figma

12           Platform . . . or Documentation";

13       • "[C]ircumvent[ing] or disabl[ing] any security or other technological features or

14           measures of the Figma Platform"; and

15       • "[R]emov[ing] any proprietary notices or labels from the Figma Platform, Third-Party

16           Applications and Materials, or Documentation."

17   **ANSWER:** Denied.

18       84.    Figma is entitled to recover compensatory and consequential damages resulting from

19   Defendants' breaches of their contractual duties. Figma is also entitled to an injunction restraining

20   Defendants from engaging in any further acts in violation of the MSA.

21   **ANSWER:** Denied.

22                               **PLAINTIFF'S PRAYER FOR RELIEF**

23       Defendants deny that Plaintiff is entitled to any relief. To the extent that Defendants have not

24   specifically admitted any allegation herein, it is denied.

25                                              **DEFENSES**

26       Discovery and investigation may reveal that one or more of the following defenses are

27   available to Defendants. Defendants accordingly assert these defenses. Upon completion of discovery,

28   if the facts warrant, Defendants may withdraw any of these defenses as may be appropriate. By setting

                                                    23

forth these defenses, Defendants do not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Plaintiff. Moreover, nothing stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject necessarily is relevant to Plaintiff's allegations. Defendants further reserve the right to amend their Answer and to assert additional defenses and other claims, as this matter proceeds.

Further answering, by way of additional defenses, Defendants state as follows:

**FIRST DEFENSE**

(Failure to State a Claim)

The Complaint and each and every count contained in it fails to state facts sufficient to constitute a cause of action or claim upon which relief can be granted against any of the Defendants.

**SECOND DEFENSE**

(No Infringement)

Defendants have not infringed any claim included in the registered copyrights of Plaintiff.

**THIRD DEFENSE**

(Unprotectable by Copyright)

Figma's copyright claims are barred, in whole or in part, because Figma claims rights to elements of software code or other works that are functional, not original, and/or otherwise not protectable by copyright.

**FOURTH DEFENSE**

(Subject Matter)

Figma's copyright claims are barred, in whole or in part, because one or more of Figma's alleged copyrighted works are invalid for failure to comply with the requirements for copyrightable subject matter set forth in 17 U.S.C. § 102.

**FIFTH DEFENSE**

(Disclaimer)

Figma's copyright claims are barred, in whole or in part, because one or more portions of Figma's copyrighted works alleged to be copied were disclaimed during the registration of the copyrighted works.

1

## SIXTH DEFENSE

2

(Fair Use)

3          To the extent that Figma claims copying by Defendants of its copyright, Figma's copyright

4    claims are barred, in whole or in part, by fair use under Section 107 of the Copyright Act, 17 U.S.C.

5    § 107, including, but not limited to, under *Google LLC v. Oracle Am., Inc*., 593 U.S. 1 (2021), and 17

6    U.S.C. §1201(f).

7

## SEVENTH DEFENSE

8

(Merger Doctrine)

9    Figma's copyright claims are barred, in whole or in part, by the merger doctrine.

10

## EIGHTH DEFENSE

11

(Scenes-a-faire Doctrine)

12    Figma's copyright claims are barred, in whole or in part, by the doctrine of *scenes-a-faire*.

13

## NINTH DEFENSE

14

(Independent Creation)

15          Figma's copyright claims are barred, in whole or in part, because Defendants independently

16    created the Motiff Product without copying from Figma.

17

## TENTH DEFENSE

18

(No Extraterritorial Jurisdiction)

19          The Copyright Act does not apply to Defendants' alleged acts of infringement that occur

20    outside of the United States.

21

## ELEVENTH DEFENSE

22

(Adequate Remedy at Law)

23          The alleged injury or damage suffered by Figma, if any, would adequately be compensated by

24    damages. Accordingly, Figma has a complete and adequate remedy at law and is not entitled to

25    equitable relief.

26

27

28

**TWELFTH DEFENSE**

(No Statutory Damages)

Figma's copyright claims are not entitled to statutory damages for not having registered its alleged copyrighted works within the time period required by 17 U.S.C. §412.

**THIRTEENTH DEFENSE**

(Estoppel/Waiver/Implied License)

Figma's claims are barred, in whole or in part, based on the equitable doctrines of equitable estoppel, waiver, and/or implied license.

**FOURTEENTH DEFENSE**

(Preemption)

Figma's breach of contract claim is barred, in whole or in part, by being preempted by Federal laws, including Federal Copyright, Trade Secret, and Patent laws.

**FIFTEENTH DEFENSE**

(No Attorney Fees)

Figma's claims are barred, in whole or in part, because the Defendants at all times acted in good faith and with good cause. Figma's copyright claims for attorney fees are also barred in whole or in part for not having registered its alleged copyrighted works within the time period required by 17 U.S.C. §412.

**SIXTEENTH DEFENSE**

(No Agreement of Minds)

Figma's breach of contract claim is barred, in whole or in part, because there was no meeting of the minds between the parties regarding relevant and material terms of the alleged agreement.

**SEVENTEENTH DEFENSE**

(Unenforceable Shrink Wrap License)

Figma's breach of contract claim is barred, in whole or in part, because the alleged agreement was an unenforceable shrink-wrap license, click-wrap license, browse-wrap license, or other contract of adhesion.

1

## EIGHTEENTH DEFENSE

2

(No Agreement Between Motiff, Kanyun, and Figma)

3    Figma's breach of contract claims against Motiff and Kanyun fails as they are not bound by

4  the alleged agreement between Figma and Yuanfudao.

5

## NINETEENTH DEFENSE

6

(No Breach of Contract)

7    Figma's breach of contract claim fails because there was no breach of any alleged contract,

8  and Defendants' activities were permitted by law.

9

## TWENTIETH DEFENSE

10

(No Damages Caused by Alleged Breach)

11    Figma's breach of contract claim fails because there were no damages caused by Defendants'

12  alleged breach and consequential damages and punitive damages are not available to Figma.

13

## PRAYER FOR RELIEF

14    WHEREFORE, Defendants respectfully request that the Court grant judgment in their favor

15  and against Plaintiff on all claims asserted in the Complaint and dismiss the Complaint in its entirety

16  with prejudice, award Defendants their attorneys' fees and costs of this action, and grant Defendants

17  such other and further relief as the Court may deem just and proper.

18

## DEMAND FOR JURY TRIAL

19    Defendants request a trial by jury on all issues so triable.

20

21  Date:  February 13, 2025                Respectfully submitted,

22                                          SIDLEY AUSTIN LLP

23

24                                          By: /s/ Samuel N. Tiu
                                                Michael J. Bettinger
25                                              Samuel N. Tiu
                                                Brooke S. Böll
26                                              Marissa X. Hernandez

27                                              *Attorneys for Defendants*
                                                MOTIFF PTE. LTD., YUANFUDAO HK LTD.,
28                                              AND KANYUN HOLDING GROUP CO. LTD.

27