1  Michael J. Bettinger (CA SBN 122196)
   mbettinger@sidley.com
2  SIDLEY AUSTIN LLP
   555 California Street, Suite 2000
3  San Francisco, CA 94104
   Telephone: (415) 772-1200
4  Facsimile: (415) 772-7400

5  Samuel N. Tiu (CA SBN 216291)
   stiu@sidley.com
6  Eric B. Schwartz (CA SBN 266554)
   eschwartz@sidley.com
7  Brooke S. Böll (CA SBN 318372)
   brooke.boll@sidley.com
8  Marissa X. Hernandez (CA SBN 341449)
   marissa.hernandez@sidley.com
9  SIDLEY AUSTIN LLP
   350 South Grand Avenue
10 Los Angeles, CA 90071
   Telephone: (213) 896-6000
11 Facsimile: (213) 896-6600

12 Attorneys for Defendants
   MOTIFF PTE. LTD., YUANFUDAO HK LTD.,
13 and KANYUN HOLDING GROUP CO. LTD.

14                    **UNITED STATES DISTRICT COURT**

15                  **NORTHERN DISTRICT OF CALIFORNIA**

16                      **SAN FRANCISCO DIVISION**

17 FIGMA, INC.,                          | Case No. 3:24-cv-06507-JD

18              Plaintiff,               | Judge: Hon. James Donato

19       vs.                            | **DEFENDANTS' OPPOSITION TO
                                         | PLAINTIFF'S MOTION FOR
20 MOTIFF PTE. LTD., YUANFUDAO HK LTD.,  | PRELIMINARY INJUNCTION**
   and KANYUN HOLDING GROUP CO. LTD.,    |
21                                       | Date:  May 1, 2025
              Defendants.               | Time:  10:00 a.m.
22                                       | Dept:  San Francisco Courthouse
                                         |        Courtroom 11, 19th Floor
23                                       |        450 Golden Gate Avenue
                                         |        San Francisco, CA 94102
24

25

26

27

28

## **TABLE OF ABBREVIATIONS**

| | |
|---|---|
| E. Zhang Decl. | Declaration of Yuchen (Ethan) Zhang, attached as Exhibit A (Chinese) and Exhibit B (English Translation) to the Declaration of Lingling Martin Regarding Translations of the (1) Declaration of Yuchen (Ethan) Zhang and (2) Declaration of Mingzhe (Max) Zhang |
| M. Zhang Decl. | Declaration of Mingzhe (Max) Zhang, attached as Exhibit C (Chinese) and Exhibit D (English Translation) to the Declaration of Lingling Martin Regarding Translations of the (1) Declaration of Yuchen (Ethan) Zhang and (2) Declaration of Mingzhe (Max) Zhang |
| R. Zhang Decl. | Declaration of Haoran (Ryan) Zhang in Support of Defendants' Opposition to Plaintiff's Preliminary Injunction Motion |
| Plock Decl. | Declaration of Cory Plock, Ph.D. in Support of Defendants' Opposition to Plaintiff's Preliminary Injunction Motion |
| Tiu Decl. | Declaration of Samuel Tiu in Support of Defendants' Opposition to Plaintiff's Preliminary Injunction Motion |
| Singh Tr. | Excerpts of Deposition Transcript of Karan Singh, Ph.D. attached as Exhibit 48 to the Tiu Decl. |
| Meneguzzi Tr. | Excerpts of Deposition Transcript of Meghan Meneguzzi attached as Exhibit 49 to the Tiu Decl. |
| Hung Decl. | Declaration of Richard Hung in Support of Figma's Preliminary Injunction Motion (Dkt. 28-50) |
| Schoettelkotte Decl. | Declaration of W. Todd Schoettelkotte in Support of Figma's Preliminary Injunction Motion (Dkt. 28-49) |
| Singh Decl. | Declaration of Karan Singh, Ph.D. in Support of Plaintiff's Preliminary Injunction Motion (Dkt. 28-11) |
| Meneguzzi Decl. | Declaration of Megg Meneguzzi in Support of Figma's Preliminary Injunction Motion (Dkt. 28-1) |
| Defendants or Motiff | Collectively, Motiff Pte. Ltd., Yuanfudao HK Ltd., and Kanyun Holding Group Co. Ltd. |
| Yuanfudao | Yuanfudao HK Ltd. |
| Kanyun | Kanyun Holding Group Co. Ltd. |
| Figma | Figma, Inc. |
| Motion | Figma's Preliminary Injunction Motion, Dkt. 28 |

## **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ON FIGMA AND MOTIFF .................................. 3

III.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION.............................. 4

IV.     LEGAL STANDARD FOR COPYRIGHT INFRINGEMENT ............................. 4

V.      FIGMA IS NOT LIKELY TO SUCCEED ON THE MERITS.............................. 5

        A.      Figma Fails to Show Infringement of Its Alleged Software Copyright....................... 5

                1.      Figma's Copyright Registrations Do Not Cover the Accused Features. ........... 5

                2.      The Accused Similarities Are Not Copyrightable and Were Not Copied ....... 6

                        a.      Graphics Processing Units (GPUs) and "Functional Design Choices" ................................................................................. 6

                        b.      Rendering and Paid Access Limitation Bugs........................................ 7

                        c.      Shaders ................................................................................. 7

                        d.      Data Structures ..................................................................... 8

                        e.      GUI Interface Elements ........................................................ 9

                3.      Motiff Had No Access to Figma's Proprietary Source Code ........................ 10

        B.      Figma's Infringement Claim on the Help Center Articles Fails ............................... 10

        C.      Figma's Breach of Contract Claim Is Preempted And Fails....................................... 11

VI.     FIGMA IS NOT LIKELY TO SUFFER IMMINENT IRREPARABLE HARM.................. 12

VII.    THE BALANCE OF EQUITIES TIPS IN FAVOR OF MOTIFF ......................... 14

VIII.   AN INJUNCTION IS NOT IN THE PUBLIC INTEREST .................................. 15

IX.     IMPOSITION OF SECURITY REQUIREMENT ................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ...............................................................................4

*Apple Comput., Inc. v. Microsoft Corp.*,
   35 F.3d 1435 (9th Cir. 1994) ................................................... *passim*

*Brown Bag Software v. Symantec Corp.*,
   960 F.2d 1465 (9th Cir. 1992), *cert denied*, 506 U.S. 869 (1992)..............................1

*Caribbean Marine Servs. Co. v. Baldrige*,
   844 F.2d 668 .......................................................................................................13

*Cordis Corp. v. Bos. Sci. Corp.*,
   99 F. App'x 928 (Fed. Cir. 2004) .......................................................................15

*eScholar LLC v. Neb. Dep't of Educ.*,
   497 F. Supp. 3d 414 ..........................................................................................13

*Frybarger v. Int'l Bus. Machs. Corp.*,
   812 F.2d 525 (9th Cir. 1987) ................................................................................2

*Getaped.Com, Inc. v. Cangemi*,
   188 F. Supp. 2d 398 (S.D.N.Y. 2002)................................................................11

*Google LLC v. Oracle Am., Inc.*,
   593 U.S. 1 (2021)..................................................................................................8

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ....................................................................13, 14

*IBM Corp. v. Micro Focus (US), Inc.*,
   676 F. Supp. 3d 263 (S.D.N.Y. 2023)...............................................................12

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
   4 F.3d 819 (9th Cir. 1993) ................................................................................14

*Jacobsen v. Katzer*,
   609 F. Supp. 2d 925 (N.D. Cal. 2009) ........................................................11, 12

*MD Helicopters, Inc. v. Aerometals, Inc.*,
   C.A. No. 16-CV-02249, 2018 WL 489102 (E.D. Cal. Jan. 19, 2018)...................13

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   C.A. No. 17-CV-02013-JD, 2018 WL 306689 (N.D. Cal. Jan. 5, 2018)....................13, 14, 15

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:24-CV-06507-JD

*Montz v. Pilgrim Films & Television, Inc.*,
    649 F.3d 975 (9th Cir. 2011) ....................................................................12

*New Milani Grp., Inc. v. J.T. Bella, LLC*,
    C.A. No. 12-10612, 2013 WL 12116579 (C.D. Cal. July 22, 2013) ........................14

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011)..................................................................14

*Sega Enters. Ltd. v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir. 1993) (amended) ...................................................... *passim*

*Splunk Inc. v. Cribl, Inc.*,
    C.A. No. 22-07611, 2024 WL 2701627 (N.D. Cal. May 24, 2024) ..........................2

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ...................................................................15

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
    C.A. No. 24-239, 2025 WL 341828 (9th Cir. Jan. 30, 2025) ......................2, 7, 9, 12

*Trackman, Inc. v. GSP Golf AB*,
    C.A. No. 23 Civ. 598, 2024 WL 4276497 (S.D.N.Y. Sept. 24, 2024) .......................12

*Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*,
    924 F.3d 32 (2d Cir. 2019).......................................................................12

*Wahoo Int'l, Inc. v. Phix Dr., Inc.*,
    C.A. No. 13-CV-1395, 2014 WL 2106482 (S.D. Cal. May 20, 2014) ......................14

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...................................................................................4

*Wright v. Buzzfeed, Inc.*,
    C.A. No. 18-CV-02187, 2018 WL 2670642 (C.D. Cal. June 4, 2018)......................11

*X Corp. v. Bright Data Ltd.*,
    733 F. Supp. 3d 832 (N.D. Cal 2024) ...........................................................11

*Your Town Online, Inc. v. All Tribal Networks, LLC*,
    C.A. No. 21-CV-04442-JD, 2021 WL 2894138 (N.D. Cal. July 9, 2021) ..................13

**Statutes**

17 U.S.C. §102(a) ........................................................................................10

17 U.S.C. § 102(b) ........................................................................................7

17 U.S.C. § 103(a)-(b) ....................................................................................5

17 U.S.C. § 107 ..................................................................................................7, 12

17 U.S.C. §§ 107, 1201(f) ............................................................................................2

17 U.S.C. § 301(a) ......................................................................................................11

17 U.S.C. § 411 ...........................................................................................................11

17 U.S.C. § 411(a) ........................................................................................................5

17 U.S.C. § 411(b) ......................................................................................................11

17 U.S.C. § 412 ...........................................................................................................11

17 U.S.C. §1201(f) ......................................................................................................12

Singapore's Copyright Act of 2021, § 301(1)(a) .......................................................13

**Other Authorities**

37 C.F.R. §202.4(c) ......................................................................................................4

37 C.F.R. § 202.4(c)(1) ...............................................................................................11

Federal Rule of Civil Procedure 65(c) .......................................................................15

LR 65-1(a)(5) ..............................................................................................................13

*Nimmer on Copyright,* § 13.03 [A] [1] [c] (2013) .....................................................1

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:24-CV-06507-JD

1  **I.      INTRODUCTION**

2          Figma's claim for copyright infringement of its computer program fails as a matter of law.

3  Figma's expert, Dr. Singh, does not point to any Figma copyright-protected source code that has

4  been copied by Motiff.  In fact, when asked at his deposition ██████████████████████████

   ████████████████████████████████████████████  Tiu Decl. Ex. 48 (Singh Tr. at 32:1-13).

6  Instead, Dr. Singh testified ███████████████████████

7          ████████████████████████████████████

8  ████████████████████████████████████████████

9  ████████████████████████

10 ███  In stark contrast, Motiff's expert, Dr. Cory Plock, after spending days thoroughly reviewing and

11 comparing both the Figma and Motiff source code, confirms that there is no Figma copyright-

12 protected source code in Motiff's product and there has been no copying.  Plock Decl. ¶ 70.

13         Similar to Apple's argument in *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442

14 (9th Cir. 1994), Dr. Singh focuses on a "total concept and feel" approach to establish "substantial

15 similarity."  But the Ninth Circuit has rejected that approach, requiring instead application of a two-

16 part test that includes an "extrinsic" and an "intrinsic" prong.  *Id.*[1]  The extrinsic prong is based on

17 external criteria such as analytic dissection and expert testimony.  *Id.*  It involves first, an

18 identification of the sources of the alleged similarity, and second, use of analytic dissection to

19 determine whether any of the allegedly similar features are protected by copyright. *Id.* at 1443.  The

20 extrinsic analysis is "an objective test which rests upon specific criteria that can be listed and

21 analyzed." *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1475 (9th Cir. 1992), *cert*

22 *denied*, 506 U.S. 869 (1992).  It is used "to determine the scope of copyright protection ***before*** the

23 works are considered 'as a whole.'" *Apple*, 35 F.3d at 1443 (emphasis added) (citing *Brown*, 960

24 F.2d at 1475-76: "analytic dissection is used not for the purposes of comparing similarities and

25 identifying infringement, but for the purpose of ***defining the scope of plaintiff's copyright***"

26 (emphasis added)).  The same analysis applies to GUIs as well.  *Apple*, 35 F.3d at 1439.

27 ─────────────────

[1] Invoking a work's "feel" is not a viable substitute for an objective analysis of the work's fixed and
28 creative elements.  *Nimmer on Copyright*, § 13.03 [A] [1] [c] (2013).

Figma's expert, Dr. Singh, identified 22 items of purported "substantial similarity." When subjected to analytic dissection, none satisfies the threshold of being copyright protected. For example, "copyright law does not protect the functional aspects of a computer program, such as the program's algorithms, formatting, functions, logic, or system design." Tiu Decl. Ex. 111, at 1 (Copyright Office Circular 61, *Copyright Registration of Computer Programs*). Copyright law does not protect facts, ideas, or concepts in a computer program, only expressions. *Frybarger v. Int'l Bus. Machs. Corp.*, 812 F.2d 525, 529 (9th Cir. 1987). Copyright law does not protect publicly available open-source code or common ideas and industry standards. *Apple*, 35 F.3d at 1445. Copyright law does not protect a computer program from being copied or used for purposes of interoperability. *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520 (9th Cir. 1993) (amended); *Teradyne, Inc. v. Astronics Test Sys., Inc.*, C.A. No. 24-239, 2025 WL 341828, at *1 (9th Cir. Jan. 30, 2025); *Splunk Inc. v. Cribl, Inc.*, C.A. No. 22-07611, 2024 WL 2701627, at *5 (N.D. Cal. May 24, 2024). Ninth Circuit law is clear: "works cannot be substantially similar where analytic dissection demonstrates that similarities in expression are either authorized, or arise from the use of common ideas or their logical extensions." *Apple*, 35 F.3d at 1439.

As summarized below, and explained more fully in the Declarations of Motiff's expert Dr. Cory Plock, Motiff's lead source code engineer Yuchen (Ethan) Zhang, and Motiff's lead user interface (UI) and product manager Mingzhe (Max) Zhang, none of the 22 items Figma has identified are copyright protectable. Beyond this substantive hurdle, which Figma cannot clear, there are procedural issues that preclude a preliminary injunction, including copyright registrations that do not cover the accused features and potentially invalid copyright registrations for its Help Center documents that no longer apply to Motiff's new Help Center documents.

Figma's breach of contract claim fares no better as it is preempted by copyright law. Further, the contract allows for reverse engineering as "expressly permitted by applicable law." Meneguzzi Decl. Ex. 8, § 3.A. Motiff's alleged reverse engineering (which is for interoperability with Figma's software) is permitted by law. *See Sega*, 977 F.2d at 1520; *Teradyne*, 2025 WL 341828, at *1; *Splunk*, 2024 WL 2701627, at *5; 17 U.S.C. §§ 107, 1201(f).

On irreparable harm, there is no immediacy here. Figma waited seven long months before

filing its Motion and did not file a TRO here or a preliminary injunction in the parallel Singapore action filed on the same day as this case.  Aside from conclusory speculations, there is not a shred of concrete evidence of irreparable harm, and money damages are adequate to compensate.  The balance of hardships tips in favor of Motiff because an injunction will jeopardize the over ███ ████ invested in developing (not copying) and marketing Motiff's product.  It will also harm users who rely on Motiff's superior AI-enabled product.  Figma's Motion should thus be denied.

## II.    FACTUAL BACKGROUND ON FIGMA AND MOTIFF

**Figma** launched its web design tool called Figma Design in 2016.  Dkt. 1, ¶ 12.  The Figma Design program is distributed to users via a web-browser, and can also be downloaded onto a user's computer for use as a desktop application.  Plock Decl. ¶¶ 46-47.  It followed prior design software products starting with Adobe Illustrator in 1987, Adobe Photoshop in 1990, Sketch in 2010, and others.  M. Zhang Decl. ¶ 9.  Figma registered three specific versions of its source code for copyright protection: Figma Design August 2020 (TXu 2-441-751), Figma Design January 2023 (TXu 2-441-752), and Figma Design March 2024 (TXu 2-441-753).  Hung Decl. Exs. 1-3.  Each registration claims a "computer program" that contains "[n]ew and revised computer program code" and *excludes* "[p]revious versions of this computer program, open source, and licensed-in components."  *Id.*  Thus, Figma's copyright protection is limited only to the "new and revised" code in these three registered versions and that which were not open sourced or licensed-in.

**Motiff** began developing the next generation of web design software in 2021, one that is AI enabled to complete repetitive tasks rather than the time-consuming cut-and-paste of earlier systems, and which automatically generates initial drafts of web designs.  M. Zhang Decl. ¶ 11.  This AI feature is the most recent evolution in a long line of UI design software advances dating back to Adobe Illustrator in 1987.  *Id.* ¶ 13.  A version of the innovative Motiff product was first released in China in August 2023, and was released outside of China in June 2024.  *Id.* ¶ 2.  The Declaration of Yuchen (Ethan) Zhang, Motiff's lead source code engineer, explains how and why Motiff designed and wrote the source code to implement its own web design software.  *See generally* E. Zhang Decl.

Relating to the graphical user interface (GUI) of the Motiff program, Mingzhe (Max) Zhang led a team of designers in analyzing a wide range of commercially available web design software

3

products, including Adobe, Sketch, Figma, Framer, Gees, Creatie, Pixso, among others, to develop the GUI design for the Motiff product.  M. Zhang Decl. ¶ 8.  The Declaration of Mingzhe (Max) Zhang explains the how and why of Motiff's GUI designs, which are commonly used within the industry, and they are not original to Figma.  *Id.* ¶¶ 14-43.

Haoran (Ryan) Zhang, who oversees marketing Motiff's product, was responsible for about 166 Help Center articles available on Motiff's website to explain how various functions operate.  His declaration explains that the Help Center articles were originally written in Chinese and translated into English using AI that had been trained on, among other things, Figma's Help Center articles.  R. Zhang Decl. ¶¶ 5, 7.  While Motiff disagrees with Figma's assertion that 17 of the more than 160 Motiff Help Center articles were copied from Figma, and substantial questions exist as to the invalidity of Figma's registrations,[2] Motiff re-wrote and replaced 14 of these articles at issue and has removed the other 3 until they can be re-written to avoid further dispute.  R. Zhang Decl. ¶¶ 7-11.

## III.    LEGAL STANDARD FOR PRELIMINARY INJUNCTION

The Supreme Court views preliminary injunctive relief as "an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To prevail, Figma must establish a likelihood of success on the merits, irreparable harm, a balance of equities that tips in their favor, and that an injunction is in the public interest.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 20).  In the Ninth Circuit, the standard for the merit prong may be lowered to "serious questions," but, in turn, the balance of hardships must "tip[] ***sharply*** in plaintiff's favor."  *Id.* at 1135 (emphasis added).  The sliding scale approach does not negate the requirement that Figma must still establish all four of the *Winter* factors, including likelihood of irreparable harm and public interest.  *Id.* at 1135.

## IV.    LEGAL STANDARD FOR COPYRIGHT INFRINGEMENT

To succeed, Figma must show that it owns the copyright and that Motiff copied ***protected*** elements of the work.  *Apple*, 35 F.3d at 1442.  The threshold issue is to determine which, if any, of

---

[2] Figma filed its copyright applications for its Help Center articles as "Group[s] of Unpublished Works."  Hung Decl. Exs. 4-6.  But the evidence shows that they were published on Figma's website well before the copyright registrations (Tiu Decl. Exs. 51-68), which should have precluded "group registrations," had such fact been disclosed to the Copyright Office.  *See* 37 C.F.R. § 202.4(c).

the enumerated elements of similarities are copyright protected.  As explained in the Introduction, the Ninth Circuit uses a two-part test – an extrinsic test and an intrinsic test.  *Id.*  When applying the extrinsic test, a court must filter out "unprotectable elements." *Id*. at 1446.

Figma's cited cases are readily distinguishable.  Figma relies on non-computer program cases (*Skidmore* and *Unicolors*) for the proposition that "striking similarity alone suffices."  Motion at 8. But that is not true for computer programs which, as the Ninth Circuit explained, "are, in essence, utilitarian articles—articles that accomplish tasks. As such they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands." *Sega*, 977 F.2d at 1524.  Here, Figma must identify the sources of the alleged similarity between its work and Motiff's work. *Apple*, 35 F.3d at 1443.  Then, using "analytic dissection," the court must determine "whether any of the allegedly similar features are protected by copyright." *Id.*  At the "analytic dissection" step, the Court must apply the limiting doctrines, such as originality, functionality, standardization, and *scenes a faire*. *Id.*  Finally, the Court "must define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to 'broad' or 'thin' protection." *Id.*  These rules apply to software, which is fundamentally functional and thus has "thin" protection and requires a high standard for similarity.  *Id.* at 1446; *Sega*, 977 F.2d at 1524.

## V.    FIGMA IS NOT LIKELY TO SUCCEED ON THE MERITS

### A.    Figma Fails to Show Infringement of Its Alleged Software Copyright.

#### 1.    Figma's Copyright Registrations Do Not Cover the Accused Features.

Preliminarily, Figma's motion fails to show that any of the accused similar features fall within the scope of its registered copyrights.  To file suit, Figma must first register its copyrighted work.  17 U.S.C. § 411(a).  Here, Figma's registrations submitted with its Complaint and Motion only registered derivative works directed to "[n]ew and revised computer program code" in three specific Figma Design versions.  Hung Decl. Exs. 1-3.  Copyright protection for a derivative work does not extend to "the preexisting material."  17 U.S.C. § 103(a)-(b).

Neither Figma nor its expert, Dr. Singh, presented any evidence showing that the accused similarities were generated by the "new and revised" code. ███████████████████████

Singh Tr. at 29:25-30:24, 32:15-33:7.

*E.g.*, Singh Tr. at 96:4-97:12, 148:4-25, 180:21-182:8. Figma's interrogatory

5    response admits that many of these features (i.e., "GPU data transfer, shaders, Render Tree, and

6    vector graphics rendering bugs and idiosyncrasies") were part of Figma's "[c]ore technologies

7    developed for the launch of Figma Design" in 2016. Tiu Decl. Ex 1, at 11. For example, relating to

8    the shaders, Motiff's expert, Dr. Plock, reviewed the source code files identified by Figma as

9    relevant to the accused feature and did not find any "new and revised" source code in Figma's three

10    registered versions compared to corresponding previous versions. Plock Decl. ¶ 50. The same is

11    true for Figma's GUI source code. *Id.* ¶ 49. Dr. Plock also did not find the accused version of the

12    autosave feature in the three registered versions of Figma's source code. *Id.* ¶ 125. Thus, Figma

13    cannot meet the threshold showing of likely success on the merits.

14               2.    **The Accused Similarities Are Not Copyrightable and Were Not Copied.**

15          Figma's expert, Dr. Singh, also did not perform the analytic dissection required under

16    controlling Ninth Circuit law that requires distinguishing between copyright-protected and

17    unprotected elements. Motiff's expert Dr. Plock did. Declarations from Motiff's lead engineer and

18    lead product managers also support Dr. Plock's analysis and conclusions. When the alleged

19    similarities between Figma and Motiff's products are subjected to the "analytic dissection" test

20    outlined in *Apple*, none of these features (including (1) GPU; (2) "Functional Design Choices";

21    (3) Rendering Bugs; (4) Paid Access Limitation Bug; (5) Shaders; (6) Data Structures; and (7) GUI

22    Elements) are protected by Figma's registered copyrights. Moreover, Dr. Plock's review and

23    analysis of Figma and Motiff's source code demonstrates no copying, as well.

24               a.    **Graphics Processing Units (GPUs) and "Functional Design Choices"**

25          Delving into the specifics, the Court will find that several alleged similarities are functional

26    in nature. For example, Figma claims monopoly over the use of six GPUs manufactured by third

27    parties and other admittedly "functional design choices." Singh Decl. ¶¶ 51-63. Copyright

28    protection does not extend to functional aspects of the work. *Sega*, 977 F.2d at 1524 (citing 17

U.S.C. § 102(b)). These functional design choices are standard in the industry and are dictated by third party software and hardware constraints. E. Zhang Decl. ¶¶ 37-43. *Although Motiff's product can achieve the same functions and uses the same GPUs, Dr. Plock confirmed that Motiff's source code was different and did not copy Figma's source code.* Plock Decl. ¶¶ 70, 93, 97.

### b.    Rendering and Paid Access Limitation Bugs

Figma claims similarities in several "rendering bugs" (i.e., "bullseye", "offset path", "curved stroke-end"). Singh Decl. ¶¶ 92-97. ████████████████████████████████████
████████████ E. Zhang Decl. ¶¶ 25-28; Plock Decl. ¶¶ 149-63. ████████████████████
████████████████████████████████████████████ Figma has no claim to "open source" components as this is expressly excluded by the copyright registrations. Hung Decl. Exs. 1-3. Other bugs are also functional design choices and ideas (i.e., dash line, drop shadow, line to vector node conversion) common in the industry and not original to Figma or Motiff. E. Zhang Decl. ¶¶ 32, 34-36; Plock Decl. ¶¶ 164-70, 180-95. And still others (i.e., "red heart emoji" and SVG export) were well-known issues due to third party formats or fonts unrelated to Motiff's or Figma's source code. E. Zhang Decl. ¶¶ 29, 33; Plock Decl. ¶¶ 171-79, 196-200. Even the paid access limitations bypass bug is also common in the industry and known as "race condition," and does not indicate copying. E. Zhang Decl. ¶¶ 30-31 Plock Decl. ¶¶ 203-04. *None of these accused features/bugs have similar source code implementations between Figma and Motiff.* Plock Decl. ¶¶145-48, 205.

### c.    Shaders

Regarding alleged similarities in the shaders (Singh Decl. ¶¶ 40-50), Dr. Plock found many of the shader functions in the open source as well, which are not protectable. Plock Decl. ¶¶ 77-87; Hung Decl. Exs. 1-3. Moreover, these "shaders" are also not copyright protectable because they are mathematical formulas (or series thereof) and thus are merely methods of operation and functional. 17 U.S.C. § 102(b); Plock Decl. ¶ 75. To the extent a very limited number of these formulas (which are visible from the product itself in a non-expressive, minified form and constitute only 0.00011% of the total code) were incorporated into Motiff's shaders, this was done to support interoperability by ensuring elements look similar when Figma files are imported into the Motiff product. E. Zhang Decl. ¶¶ 22-24; Plock Decl. ¶¶ 75, 87. This is fair use. 17 U.S.C. § 107; *Teradyne*, 2025 WL

341828, at *1 (using a limited amount of code from a competitor's platform for interoperability ruled fair use; the use "was transformative in that it enabled customers to continue using" their program sets from a first competitor's platform on the second competitor's platform); *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 40 (2021) (copying a limited amount of code to allow programmers to work in a different computing environment ruled fair use).

### d.    Data Structures

On the allegedly similar "render tree" data structures (Singh Decl. ¶¶ 85-87), the allegations only refer to specific properties and industry-standard representations depicted in a browser's developer tool.  Plock Decl. ¶¶ 136-44; E. Zhang Decl. ¶¶ 44-47.  This structure is not original to Figma as it is a generic data structure that is common in rendering software.  E. Zhang Decl. ¶¶ 44, 46 (Linux operating system produces a near identical output as Figma's render tree).  All browsers also use render trees to display webpages.  Plock Decl. ¶ 137.  And Figma cannot claim monopoly over basic rendering operations (i.e., "blur" and "fill") that are functional and common ideas effectuating the platform's rendering behavior.  *Id.* ¶¶ 137, 144; E. Zhang Decl. ¶ 45.  Regardless, Motiff's and Figma's render trees *and underlying source code are different*.  E. Zhang Decl. ¶ 47; Plock Decl. ¶¶ 143-44.

As for each product's document format (Singh Decl. ¶¶ 64-77), Dr. Singh merely cherry-picked portions of data structures with similar names which are *purportedly* publicly viewable in each product through a browser's developer tools.  Dr. Singh's depictions, however, are merely high-level abstractions comparing names of data structures that say nothing about either product's source code.  Plock Decl. ¶¶ 103, 118-19. ███████████████████████ ████████████████████████████████████████ ████████████████████████  Even the specific weird looking "camelCase" naming style Dr. Singh referenced is the standard representation for variable names in the industry.  Plock Decl. ¶ 114.  Regardless of the names and attributes, *Dr. Plock confirmed that the source code for declaring and invoking the relevant data structures and their associated fields is different.  E.g., id.*

¶ 103.[3]  Motiff and Figma's file formats are also very different when viewed in their entirety.  E. Zhang Decl. ¶¶ 11-21; Plock Decl. ¶¶ 114-18.

Regarding the autosave feature (Singh Decl. ¶¶ 78-84), Dr. Plock explains that both platforms use IndexedDB databases, which *inherently lack* structure and organization and are therefore not copyrightable.  Plock Decl. ¶¶ 127, 135.  Unlike Dr. Plock, who has served on the Advisory Committee for the standard setting organization that works on IndexedDB (*Id.* ¶10), ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊  Singh Tr. at 226:8-227:23.

Moreover, any alleged similarity only extends to the names of object stores and their associated properties, which are limited by the functionality, merger, and *scenes a faire* doctrines because they merely describe what data the object stores hold, and because these names are common in the industry.  E. Zhang Decl. ¶¶ 50-53; Plock Decl. ¶¶ 130-34.  More critically, while Figma alleges Motiff copied the "figma-autosave-v2" schema, ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊  Plock Decl. ¶ 125.  Regardless, Motiff's autosave schema was independently developed, and *the implementing source code is different*.  E. Zhang Decl. ¶ 48; Plock Decl. ¶ 135.

e.    **GUI Elements**

Even the alleged similarities in GUI elements are industry standard, functional, or not fixed in Figma's source code and therefore are not protectable.  Many elements Figma accuses Motiff of copying, including the overall GUI design, content editing panes, and the iconography used to represent design tools, are common and standard in platforms that have existed for many years.  *E.g.,* M. Zhang Decl. ¶¶ 15-21, 25-27, 33-39.  Other elements, such as the feature wherein margins are displayed upon a mouse hover, are functional, and the specific representations of these elements are likewise common to other platforms.  *E.g., id.* ¶ 33.

Regardless, *Dr. Plock confirmed that the implementing source code is different*.  Plock Del., ¶ 206. Further, many accused GUI elements are not actually fixed in the registered versions of

---

[3] It is unclear how Dr. Singh generated the comparisons of the two file formats.  Motiff does not save documents in the .fig format and only holds .fig files in its system temporarily when imported by users for interoperability.  E. Zhang Decl. ¶¶ 5-10.  This is fair use.  *Sega*, 977 F.2d at 1520; *Teradyne*, 2025 WL 341828, at *1.

Figma's source code.[4]  For example, when Dr. Plock attempted to find some of the error pane messages from Figma's GUI in the registered source code versions, he could not find these messages within them.  Plock Decl. ¶ 208.  This indicates that what Figma alleges as being copied were not in fact protected by the registered copyrighted work.

### 3.    Motiff Had No Access to Figma's Proprietary Source Code.

This is not a case involving a former employee taking the source code to a competitor. Although Motiff's engineers studied and analyzed the Figma product that is distributed publicly, and learned a its functional features from public web articles, forums, and from what is visible from viewing publicly available minified functions using browser developer tools, Motiff had no access to Figma's underlying proprietary source code.  E. Zhang Decl. ¶¶ 4-7, 14, 22.  Dr. Plock's objective comparison of the source code demonstrates that there was in fact no copying.  Plock Decl. ¶¶ 54-70.

### B.    Figma's Infringement Claim on the Help Center Articles Fails.

Figma also alleges that Motiff copied 17 articles from Figma's Help Center articles, which are separate from the alleged infringement of the Motiff's product itself.  As explained in the Declaration of Haoran (Ryan) Zhang, Motiff's original Help Center articles were written in Chinese, and were then translated into English using an AI software that had been trained on, among other things, Figma's Help Center articles.  R. Zhang Decl. ¶ 5.  While Motiff disagrees that it copied, to avoid further dispute, Motiff has re-written 14 of the accused Help Center articles without the aid of Figma's Help Center articles and removed 3 of them.  *Id.* ¶¶ 7-11.  These newly revised Help Center articles are attached to the Declaration of Haoran (Ryan) Zhang and have replaced the accused Motiff Help Center articles.  *Id.*  Thus, injunction against these accused Motiff articles is mooted.

In addition to the absence of any evidence that Motiff's current Help Center articles infringe Figma's copyrights, a substantial question of invalidity exists as to the copyright registrations of Figma's Help Center articles.  The facts are straightforward.  Figma obtained three copyright registrations claiming three "Group[s] of Unpublished Works."  Hung Decl. Exs. 4-6.  But each of these works was already published on Figma's website long before their registrations in August

---

[4] Copyright requires a work to be "fixed in a[] tangible medium of expression." 17 U.S.C. § 102(a).

2024. *See* Tiu Decl. Exs. 51-68 (Internet Archive's capture of Figma's Help Center articles before August 2024);[5] *Wright v. Buzzfeed, Inc*., C.A. No. 18-CV-02187, 2018 WL 2670642, at *1, *3 (C.D. Cal. June 4, 2018) (plaintiff's posting of photographs on its Instagram account constitutes publication); *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402 (S.D.N.Y. 2002) (webpages published once online).  According to Copyright Office registration procedures, previous publications of any work prevents registration as a group.  37 C.F.R. § 202.4(c)(1) ("All the works in the group must be unpublished").

Figma's group copyright registrations fail to satisfy the requirements of 17 U.S.C. § 411 (i.e., registration as a pre-requisite for filing suit) because Figma knew of the inaccurate publication information, which would have caused the Copyright Register to refuse the registration had this information been disclosed to it.  17 U.S.C. § 411(b).  Here, being the author who posted these articles of its website, Figma knew that each of these articles has been published long before the submission of the registrations.  Substantial questions exist as to whether Figma or its counsel willfully blinded themselves to this fact when its counsel, Morrison Foerster, filed these registrations in August 2024, and whether Figma and its counsel committed fraud on the Copyright Office regarding the publication status of these articles in order to avail itself of statutory damages and attorney fees. 17 U.S.C. § 412 (registration within 3 months of publication is required to recover statutory damages or attorney fees); Dkt. 1 at 24 (Figma's Prayer for Relief, items H and I).  Thus, the Court should not grant a preliminary injunction.

**C.    Figma's Breach of Contract Claim Is Preempted and Fails.**

The Copyright Act preempts state-law claims when a plaintiff's work "come[s] within the subject matter of copyright" and state law grants "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright."  17 U.S.C. § 301(a).  This preemption is "explicit and broad."  *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 933 (N.D. Cal. 2009) (quoting *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992)).  Breach of contract claims are not exempt from copyright preemption.  *X Corp. v. Bright Data Ltd.,* 733 F. Supp. 3d 832, 850-51 (N.D. Cal. 2024) (copyright's fair use preempts breach of contract claim).

---

[5] Internet Archive is a tool that captures web pages over time and archives them. Plock Del. ¶ 46.

Figma's claim, which is based on alleged reverse engineering and copying of its software, plainly falls within the subject matter of copyright. *Jacobsen*, 609 F. Supp. 2d at 933 (misappropriating "decoder definition files" that were protected by copyright satisfied the first element of preemption); *Trackman, Inc. v. GSP Golf AB*, C.A. No. 23 Civ. 598, 2024 WL 4276497, at *14 (S.D.N.Y. Sept. 24, 2024) (copyright preempts contract claim based on reverse engineering of software). The rights Figma seeks to vindicate (i.e., to redress Motiff's alleged reverse engineering and copying of its software) are also indistinguishable and equivalent to rights granted under Sections 106 and 107 of the Copyright Act. *Trackman*, 2024 WL 4276497, at *13-14. Figma's contract claim has no "'extra element' that can change the nature of the action" because "the gravamen of each contract provision [Figma] alleges [Motiff] breached [-- to not reverse engineer --] is to prohibit [Motiff] from infringing [Figma's] exclusive rights to copy and distribute its software." *IBM Corp. v. Micro Focus (US), Inc.*, 676 F. Supp. 3d 263, 278 (S.D.N.Y. 2023); Dkt. 1, ¶¶ 35, 69.[6]

There is also no breach of contract. The Use Restrictions provision on which Figma relies exempts actions "as may be expressly permitted by applicable law." Meneguzzi Decl. Ex. 8, § 3.A. The actions complained of here are expressly permitted by law because reverse engineering to learn the ideas and functional elements embodied in a copyrighted computer program constitute fair use under Section 107 of the Copyright Act. *Sega*, 977 F.2d at 1520; *Teradyne*, 2025 WL 341828, at *1; E. Zhang Decl. ¶¶ 5-10, 22-24. *See also* 17 U.S.C. § 1201(f) (reverse engineering for interoperability allowed). To the extent Figma contests that Motiff's alleged reverse engineering went beyond fair use and Section 1201(f), that dispute collapses into what copyright law allows and disallows and is indistinguishable from Figma's copyright claim.

## VI.    FIGMA IS NOT LIKELY TO SUFFER IMMINENT IRREPARABLE HARM

Figma's own conduct delaying seven months before seeking a preliminary injunction shows that there is no ***imminent*** irreparable harm. It is not enough that the claimed harm be irreparable; it

---

[6] An "implied agreement of payment" could qualify as "an extra element" in a breach of contract claim seeking recovery of non-payment under the contract and thus survive preemption. *Montz v. Pilgrim Films & Television, Inc.*, 649 F.3d 975, 980 (9th Cir. 2011). But such is not the nature of Figma's breach of contract claim which relies on exceeding license scope. *Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48-49 (2d Cir. 2019) (breach claim preempted because exceeding scope of license is not an "extra element" that is different from the copyright claim").

1    must be imminent as well.  *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir.

2    1988).[7]  This alone is sufficient to deny the relief Figma seeks.

3         But even considering the alleged harm, there is not a shred of evidence supporting Figma's

4    claims that there may be price erosion, loss of market share, or loss of goodwill in the future.  To the

5    contrary, ███████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████

7    Schoettlekotte Decl. ¶¶ 10, 11, 24; Meneguzzi Tr. at 56:3-57:15, 59:20-22, 61:20-62:4, 62:14-63:3.

8    Instead of providing evidence, Figma offers only conclusory and speculative assertions about

9    possible future harm (including loss of reputation and goodwill).  Motion at 12-14.  Figma's expert

10   is just as equivocal and conclusory.  *See, e.g.*, Schoettelkotte Decl. ¶¶ 30, 31, 33, 34, 37.

11   "[U]nsupported and conclusory statements regarding harm [Figma] *might* suffer" are not enough.

12   *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

13        Figma's alleged harms are not irreparable as they can be compensated by money damages if

14   they occur at some point.  With respect to lost customers and market share, "such a commercial or

15   business loss is a quintessential monetary injury that 'is not normally considered irreparable.'"  *Your*

16   *Town Online, Inc. v. All Tribal Networks, LLC*, C.A. No. 21-CV-04442-JD, 2021 WL 2894138, at

17   *2 (N.D. Cal. July 9, 2021) (quoting *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634

18   F.2d 1197, 1202 (9th Cir. 1980)).  Price erosion is equally compensable.  *MD Helicopters, Inc. v.*

19   *Aerometals, Inc.*, C.A. No. 16-CV-02249, 2018 WL 489102, at *2 (E.D. Cal.  Jan. 19, 2018); *see*

20   *also eScholar LLC v. Neb. Dep't of Educ.*, 497 F. Supp. 3d 414, 432 (D. Neb. 2020).  Motiff's

21   expert, Doug Ellis, explains why such damages are calculable. Ellis Decl. ¶¶ 14-19, 29-30.

22        Further, Figma's own evidence demonstrates that that there is no causal nexus between its

23   harm and any of Motiff's alleged infringement.  *Minerva Surgical, Inc. v. Hologic, Inc.*, C.A. No.

24

25   ───────────────────

[7] Figma may point to the fact that it took several months to effect service through the Hague
26   Convention, but that does not explain why, if harm is imminent and irreparable, it did not seek a
     TRO back in June 2024, which can be pursued with informal notice or no notice at all.  *See* N.D.
27   Cal. LR 65-1(a)(5).  Nor does it explain why it did not seek injunctive relief in the parallel Singapore
     action it filed which, if successful, would have enjoined Motiff from offering is software.  *See*
28   Singapore's Copyright Act of 2021, § 305(1)(a) (listing injunction as one of the remedies).  Nor does
     it explain why Figma did not ask Motiff to waive service.

1  17-CV-02013-JD, 2018 WL 306689, at *4-6 (N.D. Cal. Jan. 5, 2018).  Specifically, Figma's expert's

2  circumstantial evidence of potential lost customers shows that customers are interested in Motiff

3  because of its AI capability, which was not available from Figma at that time.  *See* Schoettlekotte

4  Decl. ¶ 28 (customer asked if there was a way to "accelerate the process" of making AI available on

5  Figma and disclosing his company was "testing other tools like… Motiff."); *id.* at ¶ 27 (pointing to

6  comments from Motiff users, who wrote: "[h]aving used Motiff for a while, I can say that its AI UI

7  Design features are quite impressive.")  There is no accusation that Motiff copied Figma on its AI

8  capability, and no evidence a single sale was lost due to the copying of copyrightable features.

9        Finally, Figma speculates that one of the three Defendants, Motiff Pte Ltd., *might* not be able

10  to pay a judgment against it.  Motion at 14.  But Figma makes no factual showing about Motiff Pte

11  Ltd.'s financial wherewithal, and avoids making arguments as to the two other named Defendants

12  Kanyun and Yuanfudao, despite attaching their financial information showing substantial funding

13  and resources. Hung Decl. Exs. 8-9.  Figma has not even articulated the damages it seeks or could

14  seek, and refuses to answer an interrogatory regarding it during discovery.  Tiu Decl. Ex. 1, at 7.

15  "[M]erely alleging an opponent's inability to pay damages does not constitute irreparable harm."

16  *New Milani Grp., Inc. v. J.T. Bella, LLC*, C.A. No. 12-10612, 2013 WL 12116579, at *19 (C.D. Cal.

17  July 22, 2013).[8]

18  **VII.    THE BALANCE OF EQUITIES TIPS IN FAVOR OF MOTIFF**

19        If issuance of an injunction will harm a defendant's business, that harm outweighs alleged

20  harm to plaintiff's goodwill, particularly if there is a delay in enforcement.  *See Int'l Jensen, Inc. v.*

21  *Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993); *Wahoo Int'l, Inc. v. Phix Dr., Inc.*, C.A.

22  No. 13-CV-1395, 2014 WL 2106482, at *6 (S.D. Cal. May 20, 2014).  Moreover, where, as here,

23  Plaintiffs' evidence of lost sales and business opportunities is sparse and unsupported; other

24  allegations of injury are largely unsubstantiated; price erosion evidence is slender; and causal nexus

25  is unclear: "the answer to whether the balance of equities tips in [a Plaintiff's] favor is

26  straightforward. It does not."  *Minerva Surgical*, 2018 WL 306689, at *6; *Herb Reed Enters.*, 736

27

28  ---
   [8] This case is distinguishable from *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1154 (Fed. Cir. 2011).  Actual evidence supported defendant's inability to pay there, but none here.  *Id.*

1   F.3d at 1251 (where "record fails to support a finding of likely irreparable harm, we need not address

2   the balance of equities and public interest factors.")

3         In contrast to the thin showing of harm by Figma, and in contrast to evidence that Figma is

4   *increasing* prices and projecting growth, the harm to Motiff if an injunction is issued will be

5   substantial. Motiff would be required to revoke licenses to its users, causing severe damage to its

6   reputation, halting its sales momentum, and jeopardizing its over ▮▮▮▮ investment. M. Zhang

7   Decl. ¶¶ 3-5. The balance of hardships thus tips sharply in favor of Motiff, not Figma.

8   **VIII.   AN INJUNCTION IS NOT IN THE PUBLIC INTEREST**

9         Figma "bear[s] the initial burden of showing that [an] injunction is in the public interest."

10  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009). Figma does nothing more than rely

11  on the interest of enforcing intellectual property and contracts. But this "cannot control in every

12  case without obliterating the public interest component of the preliminary injunction inquiry."

13  *Cordis Corp. v. Bos. Sci. Corp.*, 99 F. App'x 928, 935 (Fed. Cir. 2004). Here, the public interest

14  weighs against an injunction because it will harm Motiff's current and potential users who will lose

15  access to a new design software, with powerful, time saving AI features. The declarations from

16  Figma's expert and Motiff's witness both show that the public prefers Motiff because of its AI

17  capability. Schoettlekotte Decl. ¶¶ 27-28; M. Zhang Decl. ¶ 6-7. The Court's public interest

18  should account for these third-party users. *Stormans*, 586 F.3d at 1139. And public interest weighs

19  against injunction where it would deprive consumers of a more effective product, such as Motiff's

20  product in this case. *Minerva Surgical*, 2018 WL 306689, at *6-7.

21  **IX.    IMPOSITION OF SECURITY REQUIREMENT**

22        Federal Rule of Civil Procedure 65(c) generally requires a movant to deposit a security

23  before a preliminary injunction issues. Here, Motiff has spent over ▮▮▮▮ developing and

24  marketing the Motiff product. M. Zhang Decl. ¶ 3. If it is enjoined, the value of its investment will

25  be seriously impaired; its sales momentum will be stopped; its business reputation will be harmed as

26  no one will trust its continued availability, and customers will no longer return. M. Zhang Decl.

27  ¶¶ 4-5. Accordingly, Motiff asks the Court set a bond no lower than ▮▮▮▮ to safeguard the

28  investments Motiff had made.

1

Date: March 20, 2025                            Respectfully submitted,

2

SIDLEY AUSTIN LLP

3

By: */s/ Samuel N. Tiu*

4                                                       Michael J. Bettinger

Samuel N. Tiu

5                                                       Eric B. Schwartz

Brooke S. Böll

6                                                       Marissa X. Hernandez

7                                                       *Attorneys for Defendants*

MOTIFF PTE. LTD., YUANFUDAO HK LTD.,

8                                                       AND KANYUN HOLDING GROUP CO. LTD.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 3:24-CV-06507-JD

1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of March, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

*/s/ Samuel N. Tiu*
Samuel N. Tiu

17