RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JONATHAN M. MORRIS (CA SBN 356152)
jonathanmorris@mofo.com
HOLLY M. PETERSEN (CA SBN 351588)
hollypetersen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:   (415) 268-7000
Facsimile:   (415) 268-7522

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
RYAN J. MALLOY (CA SBN 253512)
rmalloy@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone:   (213) 892-5200
Facsimile:   (213) 892-5454

*Attorneys for Plaintiff*
FIGMA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FIGMA, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDINGS GROUP CO. LTD.,<br><br>                    Defendants. | Case No. 3:24-cv-06507-JD<br><br>**FIGMA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE OR DISREGARD THE EXPERT DECLARATION OF DR. KARAN SINGH, PH.D.**<br><br>Date: May 1, 2025<br>Time: 10:00 a.m.<br>Courtroom:   11, 19th Floor<br>Judge:  Hon. James Donato |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1
II.  BACKGROUND ................................................................................................................. 1
     A.   Dr. Singh's Analysis .................................................................................................. 1
     B.   Production of Source Code ....................................................................................... 3
III. DISCUSSION ...................................................................................................................... 3
     A.   Dr. Singh's Declaration Should Not Be Stricken Under Rule 702. ......................... 3
          1.   Dr. Singh's declaration was based on reliable facts and methods. ............... 3
          2.   Dr. Singh's declaration reflects a reliable application of his
               principles and methods to the facts of the case. ........................................... 5
     B.   Dr. Singh's Declaration Should Not Be Stricken under Rule 37. ............................ 6
IV.  CONCLUSION .................................................................................................................... 7

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Asetek Danmark A/S v. CoolIT Sys. Inc.*,
  No. 19-cv-410, 2022 WL 21306657 (N.D. Cal. Oct. 4, 2022) ............................................. 4, 5

*Ask Chems., LP v. Computer Packages, Inc.*,
  593 F. App'x 506 (6th Cir. 2014) ............................................................................................ 4

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
  No. 5:15-cv-01370, 2018 WL 1611835 (N.D. Cal. Apr. 3, 2018) .................................... 3, 4, 5

*In re Xyrem Sodium Oxybate Antitrust Litig.*,
  No. 20-md-2966, 2024 U.S. Dist. LEXIS 167408 (N.D. Cal. Aug. 16, 2024) ........................ 3

*Modtech Inc. v. Designed Facilities Constr. Inc.*,
  No. 98-cv-2871, 1998 WL 718299 (C.D. Cal. Aug. 5, 1998) .................................................. 5

*Numatics, Inc. v. Balluff, Inc.*,
  66 F. Supp. 3d 934 (E.D. Mich. 2014) .................................................................................... 4

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020) ................................................................................................. 5

*Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,
  No. 21-cv-3496, 2024 U.S. Dist. LEXIS 81690 (N.D. Cal. Mar. 31, 2024) ........................... 3

*Tseng v. Home Depot USA, Inc.*,
  No. C 5-cv-908, 2006 WL 521723 (W.D. Wash. Mar. 2, 2006) ............................................. 4

*Woodall v. Walt Disney Co.*,
  No. 20-cv-3772, 2024 WL 5337320 (C.D. Cal. Nov. 4, 2024) ................................................ 5

**Other Authorities**

Federal Rule of Civil Procedure 37 ................................................................................... 1, 6, 7

Federal Rule of Evidence 702 ........................................................................................... 1, 3, 7

Federal Rule of Evidence 703 .................................................................................................. 3

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| "Malloy Decl." | Declaration of Ryan Malloy in Support of Figma's Opposition to Defendants' Motion to Strike the Expert Declaration of Dr. Karan Singh, Ph.D., dated April 2, 2025 |
| "Morris Decl." | Declaration of Jonathan M. Morris in Support of Figma's Opposition to Defendants' Motion to Strike the Expert Declaration of Dr. Karan Singh, Ph.D., dated April 3, 2025 |
| "Mot." | Defendants' Objection and Motion to Strike or Disregard the Expert Declaration of Karan Singh, Ph.D. (Dkt. No. 54) |
| "Singh Decl." | Declaration of Karan Singh, Ph.D., in Support of Figma's Preliminary Injunction Motion, dated January 17, 2025 (Dkt. No. 28-11) |
| "Singh II Decl." | Declaration of Karan Singh, Ph.D., in Support of Figma's Opposition to Defendants' Motion to Strike the Expert Declaration of Dr. Karan Singh, Ph.D., dated April 3, 2025 |
| "Singh Dep. Tr." | Transcript of Deposition of Karan Singh, Ph.D., taken February 28, 2025 |

## I.   INTRODUCTION

Defendants' motion lacks sound bases in law or fact and should be denied.

Regarding Rule 702, Defendants do not dispute Dr. Singh's credentials or methodology. Instead, they contend that his analysis should be excluded because Figma's employees and counsel identified similarities between Figma's and Defendants' products for him to analyze. But Dr. Singh conducted his own independent analysis—including code review and behavior testing—to determine that those similarities evidence lack of independent development by Defendants. That Dr. Singh did not identify those similarities in the first instance does not, as Defendants contend, mean that he is merely parroting Figma's counsel.

Regarding Rule 37, Defendants criticize Dr. Singh's reliance on an image of Figma's autosave database schema and Figma's alleged withholding of the "staging environment" reflected in that image. But Dr. Singh relied on precisely the same information that Figma has provided to Defendants. Thus, Rule 37—which applies only where information was withheld—is inapplicable. Even if otherwise, only the portions of Dr. Singh's declaration addressing the autosave database schema would be subject to Rule 37.

## II.   BACKGROUND

Dr. Singh is a professor of computer science and director of the graphics and human computer interaction library at the University of Toronto. (Singh Decl. ¶ 1.) He has been a computer scientist, specializing in computer graphics, for over 30 years. (*Id*. ¶¶ 6-15.) And he has authored or co-authored over 150 peer-reviewed publications on computer science topics, including creative interfaces and interactive techniques for graphic design and animation. (*Id*. ¶ 15.)

Dr. Singh analyzed similarities between the Motiff product and Figma's Platform to "determin[e] whether the Motiff product (1) infringes Figma's copyrights and (2) reflects reverse engineering." (*Id*. ¶ 3.)

### A.   Dr. Singh's Analysis

To arrive at his conclusions, Dr. Singh analyzed the parties' products, including aspects of their architectures, data structures, code, behaviors, and graphical user interfaces ("GUI"). (Singh

1  Decl. ¶¶ 17-18.)

2  As part of his analysis, Dr. Singh reviewed "user accessible code"—*i.e.*, code that
3  licensed users can access through their browser—for both products. (*See* Malloy Decl. Ex. 1
4  ("Singh Dep. Tr.") 28:1-30:6, 32:25-33:7.) He reviewed this code using "developer tools" that
5  come standard in web browsers. (Singh Decl. ¶¶ 42, 53; *see also* Singh Dep. Tr. 244:19-25.) He
6  then performed a character-by-character comparison to analyze similarities and differences in the
7  user-accessible code. (Singh Decl. ¶¶ 43-50.) He was unable to perform a comparison of user-
8  inaccessible source code at that time, as Defendants had not yet made it available for inspection.
9  (Singh II Decl. ¶ 2; Morris Decl. ¶ 4.)

10  Additionally, Dr. Singh tested whether the Figma Platform and the Motiff product exhibit
11  similar behaviors when performing the same tasks. (Singh Decl. ¶¶ 59-62.) For example, he
12  monitored data transfers of repeated characters (*e.g.*, "AAA") and observed that "the size of the
13  data transfer grows in equally sized steps for each repeated character" in both products. (*Id.*
14  ¶ 60.)

15  Dr. Singh also spoke with two Figma engineers: Dr. John Lai, Ph.D., and Luke Anderson.
16  (*Id.* ¶ 21; Singh Dep. Tr. 241:23-242:13.) Together, they examined the Figma Platform and the
17  Motiff product via screenshare. (Singh Dep. Tr. 242:4-13.) Dr. Singh corroborated facts and
18  screenshots provided to him. (*Id.* at 245:7-23.)

19  One of the features of the products that Dr. Singh reviewed with Dr. Lai was the products'
20  "autosave schema."[1] Dr. Lai provided Dr. Singh with the format of Figma's autosave-v2 schema.
21  He did so using an image of the schema—the same image that appears in Figma's complaint
22  (Compl. ¶ 46, Dkt. No. 1) and Dr. Singh's declaration (Singh Decl. ¶ 79). Dr. Singh then
23  analyzed the format of the Motiff product's autosave schema. (Singh Decl. ¶ 79.) He compared
24  the schemas and determined that they had the same "structure and organization." (*Id.* ¶¶ 78-84;
25  Singh Dep. Tr. 129:24-130:4.)

26  Dr. Singh compared more than 24 features of the Motiff product with the Figma Platform.

---

[1] A schema is "the defined format of a database: its tables, the format of data in each table, and the relationships between data." (Singh Decl. ¶ 78.)

1  He concluded that the features were indicative of copying and that the Motiff product copied the
2  Figma Platform.  (Singh Decl. ¶¶ 34-35.)

### B. Production of Source Code

On February 11, 2025, Figma produced six versions of its source code in response to Defendants' expedited Requests for Production.  (Morris Decl. ¶ 2.)  These versions correspond to the versions used to generate the deposits for Figma's copyright registrations and an immediately prior version of source code.  (Figma's Resps. and Objs. to Defendants' First Set of Requests for Production, Dkt. No. 55-3.)

On March 5, 2025, the parties met and conferred about discovery issues, including the production of source code.  The next day, March 6, 2025, Figma produced a git repository with the version control histories for its source code.  (Morris Decl. ¶ 3.)  In other words, Figma made available for Defendants' inspection all versions of Figma's source code, along with version control histories reflecting engineers' comments about each version.  (*See* Böll Decl. Ex. 3 (Parties' email correspondence), at 3, Dkt. No. 54-4.)  Dr. Singh has now reviewed the relevant version control history and confirmed that it contains the autosave-v2 schema.  (Singh II Decl. ¶ 3.)

## III. DISCUSSION

### A. Dr. Singh's Declaration Should Not Be Struck Under Rule 702.

#### 1. Dr. Singh's declaration was based on reliable facts and methods.

Defendants ask the Court to exclude Dr. Singh's declaration based on the false premise that he is "simply parroting the work and analysis of counsel." (Dkt. No. 54, at 7.)  Contrary to Defendants' assertion, Dr. Singh properly conducted an independent analysis of the examples identified by counsel and Figma employees.

Federal Rule of Evidence 703 explicitly permits an expert to rely on facts or data provided by others.  *BladeRoom Grp. Ltd. v. Facebook, Inc.*, No. 5:15-cv-01370, 2018 WL 1611835, at *4 (N.D. Cal. Apr. 3, 2018); *see also* Fed. R. Evid. 703 (expert may rely on facts that the expert "has been made aware of or personally observed.").  This includes facts supplied by a party's employees or counsel.  *See, e.g., Surgical Instrument Serv. Co. v. Intuitive Surgical, Inc.*,

1   No. 21-cv-3496, 2024 U.S. Dist. LEXIS 81690, *43 (N.D. Cal. Mar. 31, 2024) (*citing Southland*
2   *Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997)) (employees); *In re Xyrem*
3   *Sodium Oxybate Antitrust Litig.*, No. 20-md-2966, 2024 U.S. Dist. LEXIS 167408, *12-13 (N.D.
4   Cal. Aug. 16, 2024) (counsel).

5       Dr. Singh properly relied on facts of which he was "made aware" by Figma employees
6   and by counsel and which he "personally observed."  For example, Dr. Singh discussed the
7   products in question with Figma engineers Dr. Lai and Mr. Anderson and observed the products
8   using screen sharing to "examine certain aspects of [the Figma and Motiff] products together."
9   (Singh Dep. Tr. 241:24-242:25; *see also* Singh Decl. ¶ 21.)  Dr. Singh "corroborat[ed]" the
10  "behaviors and the similarities opined on from those screenshots" through his own observation,
11  either through direct operation himself or through screenshare observation.  (Singh Dep. Tr.
12  245:7-23.)  In other words, Dr. Singh personally observed and analyzed each of the features at
13  issue and formulated his own opinions about whether those features were indicative of copying.
14  Those opinions are reflected in his declaration.  This is more than the "substantial participation"
15  that is required to render the opinions in his declaration admissible under the Federal Rules.
16  *BladeRoom*, 2018 WL 1611835, at *4.

17      None of Defendants' cases suggests otherwise.  For example, *Tseng v. Home Depot USA,*
18  *Inc.*, No. C 5-cv-908, 2006 WL 521723 (W.D. Wash. Mar. 2, 2006), involved an attorney
19  declaration improperly substituting for expert analysis. *Id.* at *3.  Defendants' reliance on *Ask*
20  *Chems., LP v. Computer Packages, Inc.*, 593 F. App'x 506 (6th Cir. 2014), is also misplaced, as
21  the expert there provided estimates "without revealing or apparently even evaluating the bases for
22  those estimates." *Id*. at 510.  Here, Dr. Singh reviewed the products himself to draw his own
23  conclusions.

24      Defendants also wrongly suggest that "counsel's participation [may have] so exceed[ed]
25  the bounds of legitimate assistance as to negate the possibility that the expert actually prepared
26  his own report." *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942-43 (E.D. Mich. 2014).
27  *Numatics* itself explains that experts "are permitted to comment on the evidence that others
28  supply." *Id*. at 941 (citing Fed. R. Evid. 703).  And courts have held that "counsel's drafting of

the report with the expert's substantive assistance" is permissible and does "not warrant striking of the report." *Asetek Danmark A/S v. CoolIT Sys. Inc.*, No. 19-cv-410, 2022 WL 21306657, at *11 (N.D. Cal. Oct. 4, 2022) (citation omitted). Dr. Singh's reliance on facts of which he was made aware by Figma employees and by counsel and which he personally observed in forming his own opinions thus in no way renders his opinion inadmissible.

Critically, to the extent that Defendants had any concerns about the information on which Dr. Singh relied, they could have deposed the primary source for that information—Dr. Lai. *See BladeRoom*, 2018 WL 1611835, at *4 ("Instead of seeking exclusion of the reports as 'ghost written' by others, [the party seeking exclusion] could have solicited discovery from the . . . employees who assisted [the other party's] experts."). But Defendants canceled that deposition after noticing it and brought this motion instead. (Malloy Decl. Ex. 2.)

### 2. Dr. Singh's declaration reflects a reliable application of his principles and methods to the facts of the case.

Dr. Singh independently determined that Figma's Platform and the Motiff product are "strikingly similar" and that those similarities were "highly unlikely" to have been "coincidental" or "independently developed." (Singh Dep. Tr. 246:5-247:4; *see also* Singh Decl. ¶¶ 33-34.) These determinations go beyond mere "memorialization of examples of alleged copying." (Mot. at 2.)

Copying-in-fact may be established circumstantially by showing (1) access to the plaintiff's work, and (2) similarities that are "probative of copying"—*i.e.*, due to "copying rather than . . . coincidence, independent creation, or prior common source." *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020). Experts routinely opine on whether similarities are likely to have resulted from copying rather than coincidence. *See, e.g., Modtech Inc. v. Designed Facilities Constr. Inc.*, No. 98-cv-2871, 1998 WL 718299, at *2, 5 (C.D. Cal. Aug. 5, 1998) (finding that layout and repeated drafting errors offered by expert were "particularly striking" and supported inference of copying); *Woodall v. Walt Disney Co.*, No. 20-cv-3772, 2024 WL 5337320, at *3 (C.D. Cal. Nov. 4, 2024) (rejecting *Daubert* challenge and admitting opinion that striking similarities between plaintiff's and defendant's works were

probative of copying).

Dr. Singh reliably analyzed the facts of this case to determine that similarities between the Figma Platform and the Motiff product are due to copying rather than independent development. For example, he used "developer tools" to review user-accessible code for both products and performed character-by-character analysis to identify similarities and differences in the code. (Singh Decl. ¶¶ 42-50; *see also* Singh Dep. Tr. 244:19-25.)  As another example, he tested the products and determined that they exhibited similar behaviors when performing the same tasks. (Singh Decl. ¶¶ 59-62.)  And as another example, he identified that both products contained the same deviations from otherwise consistent style conventions.  (Singh Decl. ¶¶ 74, 76, 77.) Defendants do not point to any deficiencies in these or any of Dr. Singh's other testing or evaluation methodologies that would suggest that they are unreliable.[2]

### B.     Dr. Singh's Declaration Should Not Be Struck Under Rule 37.

Defendants' Rule 37 argument rests on the false premise that Figma "refused to provide the same access to Motiff" that they provided to Dr. Singh.  (Mot. at 8.)  Specifically, Defendants contend that Figma did not provide them access to a "special staging website" and thereby prevented them from being able to "fully assess and examine" whether a screenshot analyzed by Dr. Singh "really existed."  (*Id.*)  The screenshot that Defendants identify is the screenshot that Dr. Singh examined in his analysis of the "-v2" version of the products' autosave schema.  (*Id.* at 4 (citing Singh Decl. ¶ 78).)

But contrary to Defendants' contention, Figma provided Defendants with the same information on which Dr. Singh relied for his analysis.  Specifically, Figma provided Defendants with the same image of the "-v2" autosave schema upon which Dr. Singh relied.  (*See* Singh Decl. ¶ 78).  Moreover, Figma provided Defendants with *every version* of Figma's source code,

---

[2] Motiff suggests that Dr. Singh's testimony is unreliable because he did not "look[] at any source code."  (Mot. at 7.)  This argument ignores all of the analysis described above.  Furthermore, Dr. Singh could not have reviewed Defendants' source code because they had not made it available at the time of his initial declaration.  The parties negotiated a briefing schedule that allowed Defendants the benefit of expedited discovery, including source code, in opposing the PI motion, with the understanding that Figma would file supplemental declarations with its reply.  (Joint Statement regarding Briefing and Expedited Discovery for PI Motion, Dkt. No. 36; Malloy Decl. Ex. 3 (Mar. 27, 2025, Hearing Transcript) at 2:17-19; 3:10-15.)

including the source code for the "-v2" version of the autosave schema.[3] Analysis of that source code confirms that those screenshots "really existed" in the Figma Platform. (*See* Singh II Decl. ¶ 3.) Defendants identify no discovery rule that would require Figma to set up a website running that code so that Defendants can see it in operation.

Because Figma produced complete version histories of its source code, Defendants' expert, Dr. Plock, should have been able to verify the autosave-v2 schema. (*See* Singh Decl. ¶ 3 (confirming that the version control history for Figma's source code includes the source code for the autosave-v2 schema).) His failure to do so does not mean that he was not provided with the relevant code or was provided with different information than Dr. Singh. Moreover, to the extent that Defendants wanted to question a Figma employee about the image of the autosave schema upon which Dr. Singh relied, they had the opportunity to depose Dr. Lai. Defendants noticed that deposition but opted to cancel it three days before it was set to occur. (Malloy Decl. Ex. 2.)

Finally, Dr. Singh's analysis of the Motiff product's autosave schema is only a small part of his declaration. (Singh Decl. ¶¶ 78-84.) Defendants' arguments, if accepted, would at most warrant striking just that section of the declaration.

## IV.   CONCLUSION

Dr. Singh's declaration, which was based on undisputably reliable methods applied to facts that Dr. Singh himself observed, does not violate Rule 702. Likewise, because Defendants had access to the same information as Dr. Singh, there was no violation of Rule 37. Figma therefore respectfully requests that the Court deny Defendants' motion.

---

[3] Defendants repeatedly assert that Dr. Singh reviewed a prior version of the Figma Platform. (Mot. at 4.) Defendants appear to conflate the version of the "autosave schema," which is provided in the image that Dr. Singh analyzed and that was provided to them, with the version of the "Figma Platform" itself. (*Id.*) More important, Defendants' apparent misunderstanding is irrelevant, as Figma provided Defendants with every version of Figma's source code.

Dated: April 3, 2025                MORRISON & FOERSTER LLP

By: */s/ Richard S.J. Hung*
    Richard S.J. Hung

*Attorneys for Plaintiff*
FIGMA, INC.