Michael J. Bettinger (CA SBN 122196)
mbettinger@sidley.com
SIDLEY AUSTIN LLP
555 California Street, Suite 2000
San Francisco, CA 94104
Telephone: (415) 772-1200
Facsimile: (415) 772-7400

Samuel N. Tiu (CA SBN 216291)
stiu@sidley.com
Eric B. Schwartz (CA SBN 266554)
eschwartz@sidley.com
Brooke S. Böll (CA SBN 318372)
brooke.boll@sidley.com
Marissa X. Hernandez (CA SBN 341449)
marissa.hernandez@sidley.com
SIDLEY AUSTIN LLP
350 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

*Attorneys for Defendants*
MOTIFF PTE. LTD., YUANFUDAO HK LTD.,
AND KANYUN HOLDING GROUP CO. LTD.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| FIGMA, INC., <br><br> Plaintiff, <br><br> vs. <br><br> MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDING GROUP CO. LTD., <br><br> Defendants. | Case No. 3:24-cv-06507-JD <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION AND MOTION TO STRIKE OR DISREGARD THE EXPERT DECLARATION OF KARAN SINGH, PH.D.** <br><br> Assigned to: Hon. James Donato <br><br> Date: May 1, 2025 <br> Time: 10:00 a.m. <br> Place: San Francisco Courthouse <br> Courtroom 11, 19th Floor <br> 450 Golden Gate Avenue <br> San Francisco, CA 94102 |

## I. INTRODUCTION

Figma concedes in its opposition that (1) each of the purported examples of similarity identified by Dr. Karan Singh were fed to him by counsel and/or Figma, and (2) that Figma has not produced the operating version of the computer program that it used to "create" the similarities for Dr. Singh. *See generally* Dkt. 73 (Opp'n to Motion to Strike). Those admissions justify excluding or disregarding Dr. Singh's opinions.

Figma contends that Dr. Singh's parroting of purported similarities is nevertheless reliable and admissible because he looked at the parties' respective software products and concluded that there were "substantial similarities" that indicated copying likely occurred. Dkt. 28-11 (Singh Decl.) at 5-6. Figma is wrong. In a software case such as this, an expert cannot simply point to purported similarities in the public-facing computer program and opine that copying likely occurred. The expert must conduct a rigorous "analytic dissection" of each purported similarity to determine what are protectable and not protectable similarities in expression under the copyright laws. Dr. Singh did not attempt to do so. *Id*. Instead, the examples were all selected and fed to Dr. Singh by counsel, and then parroted back in his report.

Figma also contends that the information that it spoon-fed to Dr. Singh is "precisely the same information that Figma has provided to [Motiff]." Dkt. 73 at 1. Not true. The information that Figma provided to Dr. Singh was based on an older operating version of Figma's computer program, and Figma has refused to provide a working copy of that older version. Despite Motiff's repeated requests, Figma has refused to provide a copy of the older source code that can be compiled into an executable form to run and operate the program; though the source code itself is available, the program as it existed cannot be run given the limitations of the standalone source code review computer. Without this functionality, Motiff is unable to see what Figma's counsel actually showed to Dr. Singh, or how counsel may have manipulated the screens produced using an older version of the program. Figma has the ability to run different versions of its software, which is what it did for Dr. Singh, but it refuses to do so for Motiff.

1

DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION AND MOTION TO STRIKE OR DISREGARD
THE EXPERT DECLARATION OF KARAN SINGH, PH.D.
CASE NO. 3:24-CV-06507

## II. DISCUSSION

### A. Dr. Singh's Copying Opinions are Parroted, and His "Substantial Similarity" Analysis is Otherwise Improper.

Figma admits that its expert, Dr. Singh, "did not identify th[e] similarities" between Motiff's and Figma's software products, Dkt. 73 at 5, but argues that his testimony is reliable and not mere parroting because he independently verified that the similarities exist, and he opined that "Figma's Platform and the Motiff product are 'strikingly similar' and that those similarities were 'highly unlikely' to have been 'coincidental' or 'independently developed.'" Dkt. 73 at 9. Such opinions are improper and should be excluded because (1) Dr. Singh conducted the wrong analysis, (2) Dr. Singh cannot offer an ultimate opinion on "substantial similarity," and (3) the opinions he does offer on factual similarities are just examples selected by counsel and parroted by Dr. Singh without any apparent methodology.

First, Dr. Singh did not perform the correct analysis. Figma relies on non-computer program cases (*Skidmore*, *Modtech* and *Woodall*) for the proposition that "striking similarity" is enough and that experts are routinely permitted to opine that such similarity suggests that copying was not a coincidence. Dkt. 73 at 9. But none of those cases involve computer programs, which require a more rigorous analysis. As the Ninth Circuit explained, computer programs "are, in essence, utilitarian articles—articles that accomplish tasks. As such, they contain many logical, structural, and visual display elements that are dictated by the function to be performed, by considerations of efficiency, or by external factors such as compatibility requirements and industry demands." *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1524 (9th Cir. 1993) (amended). As such, Figma must identify the sources of the alleged similarity between its work and Motiff's work. *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994). Then, using "analytic dissection," the Court must determine "whether any of the allegedly similar features are protected by copyright." *Id.* Dr. Singh's declaration does nothing to aid the Court in this analysis. At the "analytic dissection" step, the limiting doctrines, such as originality, functionality, standardization, and scenes a faire, are applied. *Id.* at 1338, 1344. Finally, the Court "must define the scope of the plaintiff's copyright—that is, decide whether the work is entitled to 'broad' or 'thin' protection." *Id.* at 1443. These rules apply to software, which is

2

DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION AND MOTION TO STRIKE OR DISREGARD
THE EXPERT DECLARATION OF KARAN SINGH, PH.D.
CASE NO. 3:24-CV-06507

functional and thus has "thin" protection and requires a high standard for similarity. *Id.* at 1446; *Sega*, 977 F.2d at 1524.

This analysis cannot be done by an assessment of the functional behavior of the parties' software programs, as Dr. Singh purports to have done here, because "[t]o the extent functional similarities between . . . source codes result from similar ideas, rather than the expression of those ideas, copyright law provides no protection." *Keywords, LLC v. Internet Shopping Enters., Inc.*, No. 2:05-cv-02488, 2005 WL 8156440, at *11 (C.D. Cal. June 29, 2005) (criticizing expert testimony that failed to analyze source code, and denying preliminary judgment).

Second, Dr. Singh cannot offer an opinion on "substantial similarity." "The Court must . . . exclude any opinion evaluating copyright infringement under the 'intrinsic test,' including opinions on substantial similarity." *Moement, Inc. v. Groomore, Inc.*, No. 2:22-cv-2871, 2024 WL 4830589, at *4 (C.D. Cal. Oct. 29, 2024) (excluding expert opinion of substantial similarity); *see also Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022) ("The intrinsic test focuses on similarity of expression from the standpoint of the ordinary reasonable observer, with no expert assistance."). Likewise, expert testimony on substantial similarity "is an ultimate legal issue under the 'extrinsic test'" and must be excluded. *Moement, Inc.*, 2024 WL 4830589, at *4. In "copyright cases with 'complex subject matter' courts have allowed expert testimony regarding 'factual similarities and difference' between the products at issue." *Id.*

Third, even if Dr. Singh's declaration on the factual similarities between the products at issue made the correct comparisons (it does not), it consists entirely of cherry-picked examples of putative similarities between computer programs that were created by counsel on an older version of the Figma program, then fed to and parroted by Dr. Singh. Figma contends that this is proper because there is case law indicating that experts may rely on information provided by third parties, including, as here, counsel. Dkt. 73 at 7-8. But, such reliance does not relieve an expert of his or her duty to employ a reliable methodology in support of the opinions offered. Specifically, experts in a software case must engage in the rigorous analysis described above to not just identify factual similarities, but to analyze the entire software program to determine whether there are any *protectible* aspects of a program. The

3

expert may not simply look at a list of counsel-provided examples of alleged copying based on a functional review, opine that they are substantially similar, and then speculate that they were likely the result of copying, as Dr. Singh has done in this case.

Dr. Singh's declaration is nothing more than the argument of counsel offered under the guise of expert testimony, and it should be excluded or disregarded under Rule 702. *Holley v. Gilead Scis. Inc.*, No. 18-cv-06972, 2023 WL 2440237, at *3 (N.D. Cal. Mar. 9, 2023) (excluding expert reports where counsel provided report content that the Court found went to the heart of the case). *ASK Chemicals, LP v. Comput. Packages, Inc.*, 593 F. App'x. 506, 510 (6th Cir. 2014) (unpublished) (citations omitted) ("[w]here an expert merely offers his client's opinion as his own, that opinion may be excluded") *Numatics, Inc. v. Balluff, Inc.*, 66 F. Supp. 3d 934, 942-43 (E.D. Mich. 2014) (excluding expert); *James T. Scatuorchio Racing Stable v. Walmac Stud Mgt., LLC*, No. 5:11–374, 2014 WL 1744848, at *7 (E.D. Ky. Apr. 30, 2014) ("Courts have found exclusion of an expert under Rule 37 appropriate when a report is improperly adopting the opinion of another").

### B. Dr. Singh's Testimony Should Be Excluded Under Rule 37 Because Figma Refuses to Provide the Operating Computer Program Manipulated to Create the Screens Shown to Dr. Singh.

There is no dispute that: (1) Dr. Singh did not review Figma's proprietary source code; (2) counsel showed Dr. Singh a prior version of the Figma platform; and (3) Figma refuses to produce a working (i.e. operating) copy of the version that counsel showed to Dr. Singh. *See generally* Dkt. 73. Instead, Figma attempts to obfuscate, arguing that "Figma provided [Motiff] with the same information on which Dr. Singh relied for his analysis," specifically, "the same image of the '-v2' autosave schema upon which Dr. Singh relied" and "every version of Figma's source code." Dkt. 73 at 10-11. That is plain wrong.

The information that counsel showed Dr. Singh is not available to Motiff. Dr. Singh testified that ████████████████████████████████████████████████████████████████████ ████████████████. Dkt. 54-2 (Singh Tr.) 127:1-5.[1] In view of this testimony, Motiff's counsel

---

[1] The Court's April 4, 2025 Order granted Motiff's Motion to Seal, which included sealing relevant excerpts of Dr. Singh's deposition transcript taken on February 28, 2025 ("Singh Transcript"). *See* Dkt. 75. The Singh Transcript was included as Exhibit 1 to Motiff's Motion to Strike. *See* Dkt 54-2.

4

DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION AND MOTION TO STRIKE OR DISREGARD
THE EXPERT DECLARATION OF KARAN SINGH, PH.D.
CASE NO. 3:24-CV-06507

repeatedly requested production of the older version of the Figma Platform that counsel used to create the screens, both orally and in writing. Dkt. 54-1 (Böll Decl.) ¶¶ 4-6, Ex. 3 (Parties' email correspondence) at 2-3. Figma, however, refuses to produce a workable version of the code shown to Dr. Singh.

The production of one image and "every version of Figma's source code" does not cure the deficiency. Dkt. 73 at 10-11. A single image is self-evidently not a working computer program. And the production of source code does not help Motiff, because Motiff cannot run the source code as a computer program to observe how it operates. Even if Motiff could run the source code as a computer program, Figma has not identified which version Dr. Singh purportedly analyzed, nor was Motiff's expert, Dr. Cory Plock, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ See Dkt. 60-8 (Plock Decl.), ¶208.[2] Furthermore, Figma's registered copyrights are not directed to every version of the computer program and are limited to three very specific versions of the Figma Design program. Singh Decl., ¶39 (listing specifically "August 2020, January 2023, and March 2024" versions); Hung Decl., Ex. 1-3 (excluding previous versions of the computer program and including only the new and revised code).

Figma asserts that it is unreasonable for Motiff to ask Figma to host and serve a website that runs a prior version of Figma's source code, but that was exactly what Figma did for Dr. Singh. Plock Decl. ¶¶ 123-24. The fact that Figma will not provide the running version or versions of the computer program that Dr. Singh actually reviewed is another reason to exclude or disregard his improper opinions under Rule 37. *See ASUS Comput. Int'l v. Round Rock Rsch., LLC*, No. 12-cv-02099, 2014 WL 1463609, at *5-6, *10 (N.D. Cal. Apr. 11, 2014).

Figma contends that Dr. Singh's opinions should not be stricken for the further reason that Motiff did not take the deposition of John Lai, which was one of the two employees with whom Dr. Singh spoke. Dkt. 73 at 9, 11. In support of its assertion, Figma cites to *BladeRoom Grp. Ltd. v. Facebook,*

---

Therefore, pursuant to Local Rule 79-5(b), Motiff is permitted to file this Reply brief under seal as it includes references to the sealed Singh Transcript.

[2] The Court's April 4, 2025 Order granting Motiff's Motion to Seal, *see* Dkt. 75, similarly included portions of Dr. Plock's expert report, *see* Dkt. 60-8. Pursuant to Local Rule 79-5(b), Motiff is permitted to file this Reply brief under seal as it includes references to sealed portion of Dr. Plock's expert report.

*Inc.*, No. 5:15-cv-01370, 2018 WL 1611835, at *4 (N.D. Cal. Apr. 3, 2018), in which a court allowed a putatively "ghost written" report, because the alleged ghost writers could have been deposed by written questions. However, it is entirely unclear why a deposition of Dr. Lai would cure any of the issues with Dr. Singh's opinions, and Figma offers no explanation. Nothing that Dr. Lai could say would allow Motiff and its expert to examine the older version that Figma's counsel showed Dr. Singh such that Motiff could try to recreate and test the "analysis" that Dr. Singh performed. Nothing about a deposition of Dr. Lai could cure the fact that Dr. Singh's analysis was incorrect, or that his opinions about factual similarities were examples provided by counsel. *BladeRoom* likewise provides no guidance on why a deposition would cure anything in this case, because the opinion is redacted, and it is unclear from *BladeRoom* how exactly the ghost writing occurred, and why a deposition by questions might have cured the issue.

Dr. Singh's report should therefore be excluded or disregarded under Rule 37.

### C. Figma Cannot Cure the Deficiencies with a New Declaration in Reply.

Figma should not be permitted to submit a new declaration on reply to cure the problems with Dr. Singh's report, as doing so is improper and prejudicial sandbagging.

Motiff never agreed that Dr. Singh could submit a supplemental analysis. Indeed, Figma never stated any intent to do so. Instead, Figma argued that a reply extension was needed due to "Figma's intent to use *deposition testimony* in its reply." Dkt. 36 (Joint Statement) at 1 (emphasis added). There is no suggestion of Figma providing supplemental declarations on reply anywhere in the Joint Statement, the March 27, 2025 hearing transcript, the briefing on Motiff's *ex parte* motion to extend the preliminary injunction briefing schedule, or anywhere else in the parties' correspondence or record. It would be highly prejudicial to allow Figma to submit a supplemental declaration from Dr. Singh purporting to cure his fatally flawed analysis. *Holley*, 2023 WL 2440237, at *2 ("Gilead cannot now supplement by declaration information that it instructed its witnesses not to provide during their depositions"); *In re Capacitors Antitrust Litigation*, No. 14-cv-03264, 2017 WL 897340, at *1 (N.D. Cal. March 7, 2017) ("Raising new arguments in a reply brief is a classic form of sandbagging that is barred under Paragraph 15 of the Court's Standing Order for Civil Cases.").

## III. CONCLUSION

In view of the foregoing, Motiff respectfully request that Dr. Singh's declaration be stricken or, in the alternative, be given no meaningful weight.

Date: April 10, 2025

Respectfully submitted,

SIDLEY AUSTIN LLP

By: */s/ Samuel N. Tiu*
    Michael J. Bettinger
    Samuel N. Tiu
    Eric B. Schwartz
    Brooke S. Böll
    Marissa X. Hernandez

*Attorneys for Defendants*
MOTIFF PTE. LTD., YUANFUDAO HK LTD., AND KANYUN HOLDING GROUP CO. LTD.

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2025, I electronically filed the foregoing with the Court using the CM/ECF system, and thereby delivered the foregoing by electronic means to all counsel of record.

                                               */s/ Samuel N. Tiu*
                                               Samuel N. Tiu

8

DEFENDANTS' REPLY IN SUPPORT OF THEIR OBJECTION AND MOTION TO STRIKE OR DISREGARD
THE EXPERT DECLARATION OF KARAN SINGH, PH.D.
CASE NO. 3:24-CV-06507