RICHARD S.J. HUNG (CA SBN 197425)
rhung@mofo.com
JONATHAN M. MORRIS (CA SBN 356152)
jonathanmorris@mofo.com
HOLLY M. PETERSEN (CA SBN 351588)
hollypetersen@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522

BITA RAHEBI (CA SBN 209351)
brahebi@mofo.com
RYAN J. MALLOY (CA SBN 253512)
rmalloy@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017
Telephone:    (213) 892-5200
Facsimile:    (213) 892-5454

*Attorneys for Plaintiff*
FIGMA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FIGMA, INC., <br><br> Plaintiff, <br><br> v. <br><br> MOTIFF PTE. LTD., YUANFUDAO HK LTD., and KANYUN HOLDINGS GROUP CO. LTD., <br><br> Defendants. | Case No. 3:24-cv-06507-JD <br><br> **FIGMA'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION MOTION** <br><br> Date:  May 1, 2025 <br> Time:  10:00 a.m. <br> Courtroom:  11, 19th Floor <br> Judge:  Hon. James Donato |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii
TABLE OF ABBREVIATIONS ........................................................................................................ iii
I.   INTRODUCTION ................................................................................................................. 1
II.  SUMMARY OF FACTS LEARNED IN EXPEDITED DISCOVERY ............................... 1
III. ARGUMENT ......................................................................................................................... 2
     A.   Defendants Have Not Rebutted Figma's Showing on Its Copyright Claim. .......... 2
          1.   Figma's registrations cover all versions of Figma Design. ......................... 2
          2.   Defendants have failed to rebut Figma's showing of infringement. ........... 2
          3.   Serious questions of infringement of Figma's Help Center remain. ........... 6
     B.   Defendants Have Not Rebutted Figma's Showing on Its Contract Claim. ............. 6
     C.   Defendants Have Not Rebutted Figma's Showing of Irreparable Harm. ................ 7
          1.   Figma faces real harm. ................................................................................. 7
          2.   Figma's harm is imminent. ........................................................................... 8
          3.   Money damages cannot adequately redress Figma's harm. ........................ 9
          4.   Defendants' infringement and breach harm Figma. .................................... 9
     D.   The Balance of Equities Favors Figma. ................................................................. 10
     E.   Defendants' Infringement and Breach Do Not Serve the Public Interest. ............. 10
     F.   A Six-Figure Security Requirement Is Appropriate. .............................................. 10
IV.  CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Altera Corp. v. Clear Logic, Inc.*,
 424 F.3d 1079 (9th Cir. 2005) ................................................................................................. 6

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
 598 U.S. 508 (2023) ................................................................................................................ 6

*Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) ............................................................ 8

*Artifex Software, Inc. v. Hancom, Inc.*,
 No. 16-cv-6982, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) .............................................. 7

*Cisco Sys. Inc v. Arista Networks, Inc.*,
 No. 14-cv-5344, 2016 WL 4440239 (N.D. Cal. Aug. 23, 2016) ............................................. 5

*CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*,
 No. 22-cv-2488, 2023 WL 3409463 (N.D. Cal. May 12, 2023) ........................................ 8, 10

*Concord Music Group, Inc. v. STAX. PTY Ltd.*,
 22-cv-3331, 2023 WL 2977495 (C.D. Cal. 2023) ................................................................... 8

*CyberMedia, Inc. v. Symantec Corp.*,
 19 F. Supp. 2d 1070 (N.D. Cal. 1998) ..................................................................................... 3

*Disney Enters., Inc. v. VidAngel, Inc.*,
 869 F.3d 848 (9th Cir. 2017) ............................................................................................... 5, 8

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
 717 F.3d 1336 (Fed. Cir. 2013) ................................................................................................ 8

*F.T.C. v. Affordable Media*,
 179 F.3d 1228 (9th Cir. 1999) ................................................................................................. 6

*Moonbug Ent. Ltd. v. BabyBus (Fujian) Network Tech. Co.*,
 No. 21-cv-6536, 2024 WL 2193323 (N.D. Cal. May 15, 2024) .............................................. 3

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
 886 F.3d 803 (9th Cir. 2018) ................................................................................................... 9

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
 659 F.3d 1142 (Fed. Cir. 2011) ................................................................................................ 9

*Sega Enters. Ltd. v. Accolade, Inc.*,
 977 F.2d 1510 (9th Cir. 1992) ................................................................................................. 5

*Softketeers, Inc. v. Regal W. Corp.*,
 No. 19-cv-519, 2019 WL 4418819 (C.D. Cal. May 6, 2019) ................................................... 2

*Stormans, Inc. v. Selecky*,
 586 F.3d 1109, 1139 (9th Cir. 2009).................................................................................... 10

*teamLab Inc. v. Museum of Dream Space, LLC*,
 650 F. Supp. 3d 934 (C.D. Cal. 2023) ................................................................................... 6

*Teleflora, LLC v. Florists' Transworld Delivery, Inc.*,
 No. 03-cv-5858, 2004 WL 1844847 (N.D. Cal. Aug. 18, 2004) ............................................. 5

*Teradyne, Inc. v. Astronics Test Sys., Inc.*,
 No. 24-239, 2025 WL 341828 (9th Cir. Jan. 30, 2025) ......................................................... 5

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*,
 824 F. Supp. 2d 1003 (C.D. Cal. 2011) ................................................................................. 9

*Yield Dynamics, Inc v. TEA Sys. Corp.*,
 No. 06-cv-331, 2007 WL 9812914 (N.D. Cal. Feb. 21, 2007) ........................................... 4, 5

**Statutes**

17 U.S.C. § 101 ................................................................................................................................ 6

17 U.S.C. § 107 ................................................................................................................................ 5

17 U.S.C. § 301(a) ........................................................................................................................... 6

# TABLE OF ABBREVIATIONS

| Phrase | Abbreviation |
|---|---|
| Figma's Preliminary Injunction Motion (Dkt. No. 28) | "Mot." |
| Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. No. 55) | "Opp." |
| Exhibits to the Reply Declaration of Richard S.J. Hung, dated April 17, 2025 | "Ex. __" |
| Reply Declaration of Karan Singh, Ph.D. | "Singh III Decl." |
| Reply Declaration of Todd Schoettelkotte | "Schoettelkotte Reply Decl." |
| Declaration of Karan Singh, Ph.D., in Support of Figma's Preliminary Injunction Motion (Dkt. No. 28-11) | "Singh Decl." |
| Deposition Transcript of Douglas Ellis, dated April 10, 2025 (attached as Ex. 1 to the Reply Declaration of Richard S. J. Hung) | "Ellis Dep." |
| Deposition Transcript of Cory Plock, dated April 11, 2025 (attached as Ex. 2 to the Reply Declaration of Richard S. J. Hung) | "Plock Dep." |
| Deposition Transcript of Ming (Tim) Yang, dated April 4, 2025 (attached as Ex. 15 to the Reply Declaration of Richard S. J. Hung) | "Yang Dep." |
| Deposition Transcript of Yuchen (Ethan) Zhang, dated March 31, April 1, & April 4, 2025 (attached as Exs. 4-6 to the Reply Declaration of Richard S. J. Hung) | "E. Zhang Dep." |
| Deposition Transcript of Mingzhe (Max) Zhang, dated April 1, 2025 (attached as Ex. 7 to the Reply Declaration of Richard S. J. Hung) | "M. Zhang Dep." |
| Deposition Transcript of Haoran (Ryan) Zhang, dated April 3, 2025 (attached as Ex. 8 to the Reply Declaration of Richard S. J. Hung) | "R. Zhang Dep." |

## I.   INTRODUCTION

Defendants do not dispute that numerous elements of the Motiff and Figma products are virtually identical.  Nor do Defendants dispute that they relied upon and used Figma's product to develop their own, despite their obligations under the MSA. ███████████████████████
████████████████████████████████████████████████████████████████████████████████
███████████████████████████████.  The Motiff and Figma products are so similar that even Defendants' damages expert ████████████████.  (Ellis Dep. 56:14-57:4; Ex. 14.)  Through their improper conduct, Defendants have already gained ████████████████ users, including current and potential Figma customers that Figma now risks losing.

These facts alone confirm that Figma is likely to succeed on its copyright and contract claims and to suffer irreparable harm if Defendants continue distributing Motiff.  Defendants' rebuttal arguments misunderstand copyright law and disregard the facts showing harm to Figma. The Court should preliminarily enjoin Defendants' infringement and breach worldwide.

## II.   SUMMARY OF FACTS LEARNED IN EXPEDITED DISCOVERY

Defendants ████████████████████████████████████████████████, and ████████████████████████████████████████████.  (E. Zhang Dep. 58:12-59:9; R. Zhang Dep. 121:19-25, 122:15-124:19; Singh III Decl. ¶ 20; Schoettelkotte Reply Decl. ¶ 15.) ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 13.) ████████████████████████████████████████████████████████████████.  (*Id.*; *see also* E. Zhang Dep. 256:20-258:18; Yang Dep. 62:19-63:23.)  Defendants have yet to provide a complete accounting of their access.  Motiff co-founder Max Zhang, who ████████████████████████████████████████████████████████████████████████ (M. Zhang Dep. 15:22-24, 81:5-85:2, 106:21-107:9.)  Even after Figma terminated Defendants' access, ████████████████████████████████████.  (E. Zhang Dep. 100:16-104:14, 282:3-283:9; Ex. 13.) ████████████████████████████████████████████████████████████████ (*Id.* 265:23-280:25; Ex. 10; Ex. 13 ("debugging" entries); Singh III Decl. ¶¶ 68-70.)  Motiff now has ████████ accounts.  (M. Zhang Decl. ¶ 4; M. Zhang Dep. 98:13-16; R. Zhang Dep. 102:18-103:16; Ex. 11.)

## III.   ARGUMENT

### A.   Defendants Have Not Rebutted Figma's Showing on Its Copyright Claim.

#### 1.   Figma's registrations cover all versions of Figma Design.

Defendants wrongly contend that Figma has not shown that Motiff's "similar features fall within the scope of [Figma's] registered copyrights." (Opp. 5-6.) This is based on their incorrect assumption that Figma's registrations do not cover source code versions for Figma Design predating the versions submitted to the Copyright Office. They do.

Defendants seek to limit the scope of Figma's copyrights because the registrations refer to "new and revised computer program code." But Copyright Office documentation is clear that registrations cover "**both new and preexisting source code** if (1) the preexisting source code has never been published or registered, and (2) the claimant owns the copyright in both the new and the preexisting source code." Dkt. No. 59-21, at 2 (Copyright Office Circular 61 (emphasis added)); *accord Softketeers, Inc. v. Regal W. Corp.*, No. 19-cv-519, 2019 WL 4418819, at *3 (C.D. Cal. May 6, 2019) (registrations cover all prior versions not registered or publicly distributed). As Defendants offer no evidence that prior versions were "published or registered," Figma's three registrations cover all versions of Figma Design source code through March 2024.

To moot this issue, Figma filed a supplementary copyright registration for the 2020 code that deleted "previous versions" from the scope of code excluded, which the Copyright Office granted. (Ex. 31 ("[T]he registration will cover all of the content that appears in the version of the work that you deposited on August 14, 2024, . . . including any unpublished or unregistered source code from earlier versions that have been incorporated into the deposited copy.").) Because the 2020 registration was the first registration, it covers all prior versions of the code.[1]

#### 2.   Defendants have failed to rebut Figma's showing of infringement.

Figma has shown, and Defendants do not dispute, that the Motiff product contains code, structures, interface elements, texts, and bugs that are strikingly similar to the Figma Platform's.

---

[1] Figma also filed supplementary registrations for the 2023 and 2024 code that replaced "previous versions" with "previous *registered* versions" in the scope of code excluded, but the Copyright Office noted—consistent with Circular 61—that there is "no legal difference" between those two phrases. (Exs. 16, 17.)

FIGMA'S REPLY SUPP. PRELIM. INJ.
CASE NO. 3:24-CV-06507-JD

2

1  (Mot. 4-7, 9-11.) But Defendants ask the Court to ignore these similarities, contending: (1) the
2  features are unprotectable; (2) the source code underlying these features is different; and (3) their
3  copying was fair use. (Opp. 6-10.) The Court should reject these defenses.

4          **a.**      **Motiff copied (and continues to copy) protectable features.**

5  Under the "extrinsic test," the trier of fact uses "analytic dissection" to "determine
6  whether any of the allegedly similar features are protected by copyright." *Moonbug Ent. Ltd. v.*
7  *BabyBus (Fujian) Network Tech. Co.*, No. 21-cv-6536, 2024 WL 2193323, at *8 (N.D. Cal.
8  May 15, 2024) (quoting *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir.
9  1994)). This is an "objective test based on specific expressive elements." *Id.* (citation omitted).

10  Figma's expert, Karan Singh, correctly applied the extrinsic test and identified which
11  copied features were expressive and thus protectable. (*E.g.*, Singh Decl. ¶¶ 43-50, 64-77,
12  127-31.) Under the applicable legal standard in this Circuit, at least Figma's (1) GUI,
13  (2) document format, and (3) shader code contain copyrightable expression. (*Id.*)

14  Figma's GUI components are copyrightable. They contain numerous expressive
15  elements, including: (i) a toolbar with specific iconography, menu groupings, order, and key
16  bindings; (ii) specific error messages; and (iii) onboarding, editing, and workflow panes with
17  specific icons, text, arrangement, links, options, placement, labels, colors, and indicators. (Singh
18  Decl. ¶¶ 110-26.) These elements reflect expressive design choices that could have been
19  implemented differently. *See CyberMedia, Inc. v. Symantec Corp.*, 19 F. Supp. 2d 1070, 1077
20  (N.D. Cal. 1998) (code protected where it "could have been written differently, even as
21  constrained by functional necessity"). As Dr. Singh explains, Motiff's GUI components are like
22  Figma's but different from other products. (Singh Decl. ¶¶ 127-31.)

23  These differences confirm that Figma's creative selections are not "industry standard" or
24  "functional."[2] (Singh III Decl. ¶¶ 87-93.) Although Defendants disagree, their declarations make

---

[2] Despite describing Figma as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓, Defendants' expert Cory Plock ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Plock Dep. 17:7-11, 24:20-25:5, 166:14-167:4.) Confirming this, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Singh III Decl. ¶¶ 64-74.) He also did not know ▓▓▓▓▓▓ or what ▓▓▓▓▓▓—despite opining on the "outside stroke" bug. (Plock Dep. 146:17-148:7; Singh III Decl. ¶¶ 52-63.)

FIGMA'S REPLY SUPP. PRELIM. INJ.
CASE NO. 3:24-CV-06507-JD

3

1  Figma's case. Max Zhang, for example, provided a fact declaration with toolbar images for
2  Figma, Motiff, and other products. (M. Zhang Decl. ¶ 25.) The images confirm that Motiff's
3  toolbar clones the horizontal orientation and iconography of Figma's toolbar. (*Id.*) The other
4  toolbars are arranged quite differently—vertically, with different iconography, or both. (*Id.*)

     Figma's document format is also copyrightable. It includes "expressive elements like
6  names, values, and organization and structure" that "satisfy the extrinsic test." (Singh Decl.
7  ¶¶ 64-77.) Defendants copied expressive elements, including field names, and even Figma's
8  deviations from its own conventions. (Singh Decl. ¶¶ 67-77.) Again, their own evidence
9  undermines their position that these elements are "inherently functional." (Opp. 8.) Internal
10 Motiff documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮ (Exs. 7-9 (emphasis added).) That the Motiff product copies these names
12 confirms that Defendants copied Figma's creative expression. *See Yield Dynamics, Inc v. TEA*
13 *Sys. Corp.*, No. 06-cv-331, 2007 WL 9812914, at *4 (N.D. Cal. Feb. 21, 2007) (code, including
14 "variable names," protected when not the "sole expression" of the "mathematical formulae and
15 functional ideas").

     Figma's shader code is copyrightable because it includes expressive elements, including
17 its order, variable names, and structure. *See Yield*, 2007 WL 9812914, at *4. ▮▮▮▮▮▮▮▮▮
18 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Singh III Decl.
19 ¶ 43.) Ignoring these elements, Defendants assert that the code is just "mathematical formulas."
20 (Opp. 7.) But even code with mathematical formulae is protectable expression if there are many
21 ways to express the underlying ideas, as here. *See Yield*, 2007 WL 9812914, at *4. Reviewing
22 the recently produced Motiff source code, Dr. Singh found that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Singh III Decl. ¶¶ 18, 40-48.) ▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Plock Dep. 115:1-116:15; Singh III Decl. ¶ 22.)

     In sum, at least Figma's GUI components, document formats, and shader code contain
26 copyrightable expression. Defendants' copying of that expression to create virtually identical
27 elements confirms that Defendants have infringed Figma's copyrights. Rather than ▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Defendants' witnesses testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ██████████████████████████████████████████████████████████████████████████.

2  (E. Zhang Dep. 100:16-104:14, 282:3-283:9.)

### b. Defendants infringe both literal and non-literal elements.

Faced with incontrovertible evidence that they copied Figma's protectable expression at the heart of Figma's Platform, Defendants repeatedly claim that their copying is permitted because the implementing source code is different and they did not access Figma's source code. (Opp. 6-11.) But protections for software under the Copyright Act extend to both "literal" and "non-literal" components. *Teleflora, LLC v. Florists' Transworld Delivery, Inc.*, No. 03-cv-5858, 2004 WL 1844847, at *5 (N.D. Cal. Aug. 18, 2004). Literal components include source code; non-literal components include the software's structure, organization, and user interface. *See id.*

Defendants do not dispute that they misappropriated non-literal components—*e.g.*, GUI elements and Figma's software structure and organization. Dr. Plock's methodology, which failed to detect Defendants' literal copying of Figma's source code, certainly could not detect their copying of the code's expression of the non-literal elements. (Singh III Decl. ¶¶ 22-39.) That copying is infringement, even if the implementing code differs. *Cf. Cisco Sys. Inc v. Arista Networks, Inc.*, No. 14-cv-5344, 2016 WL 4440239, at *8 (N.D. Cal. Aug. 23, 2016) (copying website's "conceptual model, navigation, imaging, and look and feel" supported injunction).

In any event, Motiff *did* copy literal components. Defendants concede that they copied shader code. (Opp. 7.) ██████████████████████████████████████ (Singh III Decl. ¶¶ 40-48.) As rendering the user's design is a core Figma feature, that copying constitutes infringement. (*Id.* ¶ 48.) *See Yield*, 2007 WL 9812914, at *6 ("qualitatively important" code, even if small in proportion, supports "substantial similarity").

### c. Fair use does not excuse Defendants' infringement.

Defendants' fair use argument—that they had to copy Figma for "interoperability"—is baseless. (Opp. 2, 6-11.) Defendants have not met their burden of establishing a fair use defense. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). They make no effort to apply the fair use factors under 17 U.S.C. § 107, and their own authority recognizes that there are no bright line rules. *See Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1519 (9th

1  Cir. 1992) (under "settled law," copying cannot be "lawful *per se*").

2  Regardless, Defendants' invocation of "interoperability" is a strawman. ▓▓▓▓▓▓

3  ▓▓▓▓▓ they did not reverse engineer Figma's software merely to make a compatible product.

4  *Compare with, e.g.*, *Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 24-239, 2025 WL 341828

5  (9th Cir. Jan. 30, 2025). (E. Zhang Dep. 126:18-24 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

6  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.) Rather, they accessed the Figma

7  Platform to create a product that looks and behaves the same way. That is not fair use. *Cf. Andy*

8  *Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 531-32 (2023) ("A use that

9  shares the purpose of a copyrighted work . . . is more likely to provide the public with a

10 substantial substitute for matter protected by the copyright owner's interests in the original work

11 or derivatives of it, which undermines the goal of copyright." (cleaned up)).

**3.  Serious questions of infringement of Figma's Help Center remain.**

13 Defendants do not dispute that their Help Center pages infringe Figma's copyrights.

14 Instead, they wrongly argue they "mooted" Figma's motion by taking down the pages. (Opp.

15 10-11.) It is "well-settled that an action for an injunction does not become moot merely because

16 the conduct complained of was terminated, if there is a possibility of recurrence." *F.T.C. v.*

17 *Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999) (cleaned up). Recurrence is likely here

18 given that Defendants still exploit Figma today, even after Figma banned their accounts.

19 Defendants' argument that Figma's registrations are invalid misunderstands the meaning

20 of "publication" under U.S. copyright law. (Opp. 10-11.) Under the Copyright Act,

21 "publication" requires more than "display." 17 U.S.C. § 101 ("[D]isplay of a work does not of

22 itself constitute publication."). Accordingly, Figma's display of its Help Center articles on its

23 website does not constitute "publication" under the Act. *See teamLab Inc. v. Museum of Dream*

24 *Space, LLC*, 650 F. Supp. 3d 934, 946 (C.D. Cal. 2023) (website display not publication).

**B.  Defendants Have Not Rebutted Figma's Showing on Its Contract Claim.**

26 Defendants do not dispute reverse engineering Figma's Platform. (Opp. 11-12.) Nor do

27 they dispute being bound by Figma's MSA, which expressly prohibits this. (*Id.*) Instead, they

28 argue that their reverse engineering was excusable because federal copyright law preempts

1   Figma's claim or provides a safe harbor. (*Id.*) Neither is correct.

2   First, the Copyright Act's preemption provision (17 U.S.C. § 301(a)) does not apply when a state law claim "includes an 'extra element' that makes the right asserted qualitatively different from those protected under the Copyright Act." *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1089 (9th Cir. 2005). Figma's MSA provides an extra element by prohibiting "circumvent[ing] or disabl[ing] any security or other technological features or measures of the Figma Platform." (Dkt. No. 1-1 § 3.A.) ████████████████████████████████████████████ ████████████████████████████████████████████ (E. Zhang Dep. 175:21-178:1; Exs. 10, 13; Plock Dep. 34:24-35:16; Singh III Decl. ¶¶ 68-70.)

Second, "the Ninth Circuit Court has held that the Copyright Act does not preempt causes of action premised upon possible extraterritorial infringement." *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-6982, 2017 WL 1477373, at *4 (N.D. Cal. Apr. 25, 2017) (quoting *Allarcom Pay Television, Ltd. v. Gen. Instr. Corp.*, 69 F.3d 381, 387 (9th Cir. 1995)). Here, at least some of the reverse engineering occurred overseas, as most of Defendants' employees are in Beijing. (M. Zhang Dep. 95:6.) This implicates the sort of "extraterritorial infringement to which the Copyright Act would not apply." *Artifex*, 2017 WL 147737, at *4.

Defendants' fallback position—that the MSA's provision allows conduct "expressly permitted by applicable law"—similarly fails. (Opp. 12.) Defendants assume that all they did was "reverse engineer[] to learn the ideas and functional elements embodied in [Figma's code]." *Id.* But as noted above, they did far more. They studiously and brazenly copied expressive elements of Figma's Platform unrelated to interoperability to create a cloned product. As explained above, this is not fair use, and Defendants' invocation of 17 U.S.C. § 1201(f) does not change that fact. *See Neon Enter. Software, LLC v. Int'l Bus. Machines Corp.*, No. 09-ca-896, 2011 WL 2036674 (W.D. Tex. May 24, 2011) (§ 1201(f) "has no bearing on" contract claim for "reverse assembly" notwithstanding "expressly permitted by federal law" provision).

### C. Defendants Have Not Rebutted Figma's Showing of Irreparable Harm.

#### 1. Figma faces real harm.

Figma has adduced ample evidence of its harm. First, ████████████████████

1  ███████████████████████████████████████ (M. Zhang Decl. ¶ 4;
2  Schoettelkotte Reply Decl. ¶¶ 13-14, 25-27.) As Motiff's co-founder acknowledged, ██████
3  ████████████████████████████████, and ████████████████████████████████████
4  ██████ (R. Zhang Dep. 102:17-103:16, 166:1-13, 168:5-18, 253:13-18, 254:8-22; Exs. 12, 13;
5  Schoettelkotte Reply Decl. ¶ 21.³)

      Second, after telling the Court that they had located no marketing or pricing documents, Defendants produced research targeting Figma's product, website, and pricing. (R. Zhang Dep. 107:25-114:25; Exs. 18-19, 21-25; Schoettelkotte Reply Decl. ¶¶ 5-12.) ████████████ ████████████████████████████████████████████████████████████ (Schoettelkotte Reply Decl. ¶¶ 10, 11, 14.) Defendants' actions and their cut-rate pricing demonstrate that they are dead set on stealing Figma's customers and diminishing its brand. (Dkt. No. 28-71; Exs. 23-24.)

      Third, Defendants' provision of their competing cloned product at a fraction of Figma's prices exerts downward pricing pressure on Figma. (Dkt. No. 28-72; Schoettelkotte Reply Decl. ¶¶ 16-17, 24-26, 28.) That Figma has raised prices and still projects growth is not to the contrary. *Cf. Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013) (irreparable injury despite increase in market share). As Figma's expert testified, in his experience, companies continue in their ordinary course of business assuming an infringement-free market. (Schoettelkotte Dep. 79:12-80:14, 93:9-94:15; Schoettelkotte Reply Decl. ¶ 24.) This is why Figma seeks an injunction.

      **2.    Figma's harm is imminent.**

      Defendants' delay argument is meritless. (Opp. 13.) Figma timely moved on the day that Defendants acknowledged Hague service and appeared.[4] The time to effect Hague service "does not count" toward delay. *See Concord Music Group, Inc. v. STAX. PTY Ltd.*, 22-cv-3331, 2023 WL 2977495, at *6 (C.D. Cal. 2023). And in the Ninth Circuit, "courts are loath to withhold

---

[3] Inexplicably, Defendants' damages expert ████████████████████████████████████████ ███████████████████████████████████████████. (Ellis Dep. 17:6-19, 26:10-22, 34:9-23, 35:3-21, 50:16-51:3, 52:7-19, 113:12-114:8; Hung Exs. 27-30.)

[4] Defendants point to no authority suggesting that Figma needed to seek a TRO or injunction in Singapore to seek an injunction here. Defendants also point to no authority suggesting that Figma needed to ask them to waive service after they ignored Figma's other pre-service correspondence.

1    relief" based solely on delay. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014); *see also*
2    *Disney*, 224 F. Supp. 3d at 977 (delay of a year not "particularly probative" in view of "ongoing,
3    worsening injuries").

### 3. Money damages cannot adequately redress Figma's harm.

The ongoing harm to Figma undermines Defendants' contention that Figma has an adequate remedy at law. (Opp. 13.) Defendants' infringement risks irreversible brand erosion and customer loss. (Mot. 12-14; Schoettelkotte Reply Decl. ¶¶ 22-25.) These harms are not compensable by money damages. *See CNC Software, LLC v. Glob. Eng'g Ltd. Liab. Co.*, No. 22-cv-2488, 2023 WL 3409463, at *7 (N.D. Cal. May 12, 2023) ("threat of the loss of prospective customers, goodwill, or reputation . . . cannot be fully remedied with a financial award"). The harm is real. Defendants' own damages expert ███████████████████████████████ ███████████████████████. (Ellis Dep. 56:14-57:4; Ex. 14; Schoettelkotte Reply Decl. ¶¶ 29-30.) He also did not address ████████████████ or ████████ █████ (Ellis Dep. 17:6-19, 35:3-21, 52:8-19; Schoettelkotte Reply Decl. ¶ 20.) Nor did he ██████████████████████████████████████████████████████████. (Ellis Dep. 102:8-103:1.)

Moreover, Defendants cannot assure they can satisfy a future judgment. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1150-51 (Fed. Cir. 2011) (defendants' "questionable financial condition . . . reinforces the inadequacy of a remedy at law"). Motiff, which sells the product in the United States, is a mere shell company. Ryan Zhang, the co-founder of Motiff, █ ████████████████████████████████████████ and ███████████ ██████████████████. (R. Zhang Dep. 11:10-17:25, 124:20-125:23.)

### 4. Defendants' infringement and breach harm Figma.

Defendants have trumpeted the Motiff product's similarities to Figma's Platform to compete for customers (Dkt. Nos. 28-67, 28-69, 28-70), even advertising it as the "Best Figma Alternative" (Dkt. No. 28-70). Now faced with those same statements, Defendants try to disclaim them and attribute customer interest solely to the Motiff product's "AI capability." (Opp. 13-14.)

Defendants ignore that their AI functionalities depend on their cloned editor. That editor

1    "lies at the heart" of their product, and Motiff's AI features will not work without it. (Dkt.

2    No. 28-63.) Motiff's copying thus harms Figma. *See Nat'l Wildlife Fed'n v. Nat'l Marine*

3    *Fisheries Serv.*, 886 F.3d 803, 823 (9th Cir. 2018) (plaintiff need only show that infringement has

4    "sufficient causal connection" to harm, not that it is the "exclusive cause").

5    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Figma *also* offers AI functionalities. (R. Zhang Dep.

6    57:24-58:1.) Rather than rebut the harm to Figma, Defendants' emphasis on their AI

7    functionalities reinforces it.

8        **D.**    **The Balance of Equities Favors Figma.**

9        Defendants "cannot complain of the harm that will befall [them] when properly forced to

10   desist from [their] infringing activities." *Warner Bros. Ent. Inc. v. WTV Sys., Inc.*, 824 F. Supp.

11   2d 1003, 1014-15 (C.D. Cal. 2011) (citation omitted). Motiff's unsupported appeal to its

12   reputation or purported investments is of no consequence. *See id.* (rejecting defendants' "claim,

13   without any evidence, that an injunction would significantly harm, if not destroy, their business").

14       **E.**    **Defendants' Infringement and Breach Do Not Serve the Public Interest.**

15       Motiff's AI functionality does not show that an injunction would be against the public

16   interest. The public interest lies in fostering innovation through lawful competition, not

17   misappropriation. *See CNC*, 2023 WL 3409463, at 8 ("public interest is . . . in upholding

18   copyright protections"). *Stormans, Inc. v. Selecky* is inapposite. The requested injunction there

19   would have deprived the public of access to emergency contraception and imposed obligations on

20   non-party pharmacies and state regulators. *See* 586 F.3d 1109, 1139 (9th Cir. 2009). Enjoining

21   Motiff's unlawful conduct would have no similar effect here, as Figma also offers AI features.

22       **F.**    **A Six-Figure Security Requirement Is Appropriate.**

23       Defendants claim to have generated ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ from its

24   ▮▮▮▮▮ users outside of China. (M. Zhang Decl. ¶ 4.) Motiff's co-founder estimated that it has

25   ▮▮▮▮▮▮▮▮ users in China. (M. Zhang Dep. 98:8-16.) Figma proposes that a bond in the

26   six-figure range (*e.g.*, $300,000) would be more than adequate here.

27   **IV.**    **CONCLUSION**

28       For these reasons, Figma requests that the Court grant a preliminary injunction.

| | | |
|---|---|---|
| 1 | Dated: April 17, 2025 | MORRISON & FOERSTER LLP |

By: */s/ Richard S.J. Hung*
    Richard S.J. Hung

*Attorneys for Plaintiff*
FIGMA, INC.