1   RICHARD S.J. HUNG (CA SBN 197425)
    rhung@mofo.com
2   JONATHAN M. MORRIS (CA SBN 356152)
    jonathanmorris@mofo.com
3   HOLLY M. PETERSEN (CA SBN 351588)
    hollypetersen@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:    (415) 268-7000
6   Facsimile:    (415) 268-7522
7

8   BITA RAHEBI (CA SBN 209351)
    brahebi@mofo.com
9   MORRISON & FOERSTER LLP
    707 Wilshire Boulevard
10  Los Angeles, California 90017
    Telephone:    (213) 892-5200
11  Facsimile:    (213) 892-5454

12
    *Attorneys for Plaintiff*
13  FIGMA, INC.

14                      UNITED STATES DISTRICT COURT

15                   NORTHERN DISTRICT OF CALIFORNIA

16                         SAN FRANCISCO DIVISION

17

18
    FIGMA, INC.,                          Case No. 3:24-cv-06507-JD
19
                  Plaintiff,              **REPLY DECLARATION OF W. TODD
20                                        SCHOETTELKOTTE
                                          IN SUPPORT OF FIGMA'S
21        v.                              PRELIMINARY INJUNCTION
                                          MOTION**
22  MOTIFF PTE. LTD., YUANFUDAO HK
    LTD., and KANYUN HOLDINGS GROUP
23  CO. LTD.,                             **[FILED UNDER SEAL]
                                          CONTAINS HIGHLY CONFIDENTIAL
24                Defendants.             INFORMATION**

25                                        Courtroom:  11, 19th Floor
                                          Judge:  Hon. James Donato
26

27        **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

28
    REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
    CASE NO. 3:24-CV-06507-JD

I, W. Todd Schoettelkotte declare as follows:

## I.   BACKGROUND AND PURPOSE OF DECLARATION

1.    I have been retained by Morrison & Foerster LLP as an expert in this matter on behalf of Plaintiff Figma, Inc. ("Figma" or "Plaintiff").[1]

2.    I understand that Figma has sued Motiff Pte. Ltd. ("Motiff"), Yuanfudao HK Ltd. ("Yuanfudao"), and Kanyun Holdings Group Co. ("Kanyun") (collectively, "Defendants") for copyright infringement and breach of contract.[2]

3.    I have been asked to prepare this declaration in response to the Declaration of Douglas N. Ellis ("Ellis Declaration") as well as to address documents and testimony provided by Defendants.  For purposes of this declaration, I have been asked to assume Defendants' liability. In connection with the preparation of this declaration, I have considered the deposition transcripts and declarations identified in the footnotes herein, which I understand will be attached as Exhibits to the Reply Declaration of Richard S. J. Hung, dated April 17, 2025 ("Ex. _").

## II.   ADDITIONAL MOTIFF DOCUMENTS AND TESTIMONY

4.    The Motiff documents and testimony provided by Defendants further support my assessment of irreparable harm described in my Initial Declaration, as discussed below.

5.    Motiff's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[3]  As discussed in my Initial Declaration, Motiff adopted a tiered pricing structure that is similar to Figma's pricing structure.  As the document ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  Such is not surprising given Motiff's numerous public statements related to similarities of the accused product and Figma's products (as discussed in my Initial Declaration).  Mr. R. Zhang testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] My credentials and compensation were summarized in my Initial Declaration.
[2] Complaint for Copyright Infringement and Breach of Contract, September 16, 2024 ("Complaint")
[3] Ex. 11 (R. Zhang Supp. Decl.) at p. 1; Ex. 18 (certified translation of Ex. A to R. Zhang Supp. Decl.).

1  ████████████████████████████████████████████████

2  ████████████████████████████████████████████████

3  ████████████████████████████████████████████████

4      6.    The ████████████████████████████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████ Mr. R. Zhang testified that "████████████

7  ████████████████████████████████████████████ He also

8  testified that ██████████████████████████████████

9  ██████████████████████████████████

10      7.    Motiff █████████████████████████

11  █████████████████████████[8] For example, ████████████

12  ████████████████ In addition, ███████████████████

13  ██████████

14      8.    Motiff ████████████████████████

15  ████████████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ██████████[11] The document ███████████████████

18  ████████████████████████████████████████████████

19  ████████████████████████████ Motiff also █████████

20

21  —————————————

[4] Ex. 8 (R. Zhang Dep.) at 236:18-237:5
[5] Ex. 11 (R. Zhang Supp. Decl.) at p. 1; Ex. 19 (certified translation of Ex. B to R. Zhang Supp. Decl.) at p. 2
[6] Ex. 8 (R. Zhang Dep.) at 257:14-20
[7] *Id.* at 258:2-259:1
[8] Ex. 11 (R. Zhang Supp. Decl.) at p. 1; Ex. 20 (certified translation of Ex. D to R. Zhang Supp. Decl.) at p. 1
[9] Ex. 20 (certified translation of Ex. D to R. Zhang Supp. Decl.) at pp. 10, 11
[10] *Id.* at pp. 8-10
[11] Ex. 11 (R. Zhang Supp. Decl.) at p. 3; Ex. 21 (certified translation of Ex. W to R. Zhang Supp. Decl.) at p. 2
[12] Ex. 21 (certified translation of Ex. W to R. Zhang Supp. Decl.) at p. 2

1   ███████████████████████████████ ■ Further, ██████████

2   ███████████████████████████████████████████████ ■

3   Motiff indicated that ██████████████████████████████████

4   ████████████████████████████ ■ Within the document, Motiff ████

5   ████████████████████████████████████████████████████

6   ███████████ ■

7       9.    Motiff indicated in another document, ████████████

8   ████████████████████████████████████████████████████

9   ████████████████████████████████████████████████████

10   ████████████████████ ■

11       10.    Motiff's ████████████████████████████████

12   ██████████████████████████ ■ For example, ████████████████

13   ████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

15   ████████████████████████████ ■

16       11.    In its ██████████████████████████████████

17   ████████████████████████████████████████████████████

18   ████ ■ The document also ████████████████████████████████

19   ████████████████████████████████████████████████████

20   █████████████████████████████████████████████ ■

21

---

13 *Id.* at p. 3
14 *Id.*
15 *Id.*
16 *Id.* at p. 5
17 Ex. 11 (R. Zhang Supp. Decl.) at p. 3; Ex. 22 (certified translation of Ex. X to R. Zhang Supp. Decl.) at p. 2
18 Ex. 11 (R. Zhang Supp. Decl.) at p. 3; Ex. 23 (certified translation of Ex. Y to R. Zhang Supp. Decl.)
19 Ex. 23 (certified translation of Ex. Y to R. Zhang Supp. Decl.) at p. 3
20 Ex. 11 (R. Zhang Supp. Decl.) at p. 3; Ex. 24 (certified translation of Ex. Z to R. Zhang Supp. Decl.) at p. 2
21 Ex. 24 (certified translation of Ex. Z to R. Zhang Supp. Decl.) at p. 3

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD

12.    Motiff produced a document ████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

Motiff stated that ████████████████████████████████████████████████████████████

████████████████████████████ Mr. R. Zhang confirmed ██████████████████████████

██████████████████████ Motiff indicated ███████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████ Motiff further ██████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████ The document noted that ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████[8]  The document ████████████████████

████████████████████████

13.    In addition to the recently produced Motiff documents discussed above, Motiff

personnel ████████████████████████████████████████████████████████████████████

██████████████████ For example, ██████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

---

[22] Ex. 25 (certified translation of Ex. AA to R. Zhang Supp. Decl.)
[23] Ex. 8 (R. Zhang Dep.) at 321:2-9
[24] Ex. 25 (certified translation of Ex. AA to R. Zhang Supp. Decl.) at p. 2
[25] Ex. 8 (R. Zhang Dep.) at 202:16-21
[26] Ex. 25 (certified translation of Ex. AA to R. Zhang Supp. Decl.) at p. 4
[27] *Id.*
[28] *Id.*
[29] Ex. 7 (M. Zhang Dep.) at 99:7-17

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD

4

1    ███████████████████████████ [30] Mr. M. Zhang's statements ████████████

2    ████████████████████████████████████████████████████████████ With

3    respect to Figma, ████████████████████████████████████████████████

4    ███████████████████████████ ▪ With respect to market share, ██████████████

5    ████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████ ▪ He

8    further testified ██████████████████████████████████████████████

9    ███████████████████████████████████████████ ▪ ██████████████████

10   ████████████████████████████████████████████████████████████████

11   ████████████████████████████████████

12       14.    Ryan Zhang ████████████████████████████████████████

13   ██████ ▪ Mr. R. Zhang further claimed ████████████████████████████

14   ████████████████████████████████████████████████████████████████

15   ████████████████ ▪ He also ███████████████████████████████████████

16   ███████████████████████████ ▪ Mr. R. Zhang ██████████████████████

17   █████████████ ▪ ████████████████████████████████████████████████

18   ██████████ ▪ Mr. R. Zhang further testified ████████████████████████

19   ███████████████████████████ ▪ Similarly, he stated that ██████████████

20   ███████████████████ ▪ Regarding the size of the UI/UX design tool market, ██████████

21

---

[30] Dkt. No. 60-4 (English Translation of Chinese Declaration of Mingzhe (Max) Zhang) at p. 2
[31] Ex. 7 (M. Zhang Dep.) at 148:18-149:1
[32] *Id.* at 144:7-16
[33] *Id.* at 146:11-19
[34] Ex. 8 (R. Zhang Dep.) at 45:8-13
[35] *Id.* at 45:14-46:12
[36] *Id.* at 215:16-21
[37] *Id.* at 127:19-128:10
[38] *Id.* at 55:20-56:2
[39] *Id.* at 79:2-10
[40] *Id.* at 82:17-83:16; *see also id.* 87:6-16; 102:18-103:2

1  ████████████████████████████████████████████████████████ █ █

2  ████████████████████████████████████████████████████████████

3  ████████ █ Mr. R. Zhang confirmed █████████████████████████████

4  ████████████ █ He testified that ████████████████████████████

5  ████████ [4] In designing the Motiff product, █████████████████████

6  ████████████████████████████████████████████████ "[45]

7      15.    Ethan Zhang, ████████████████████████████████████████████

8  ██████████████████████████████████████████████████████████ █ As part

9  of his deposition, ██████████████████████████████████████████████

10 ████████████████████████████████████████████ █ █ ████████████████

11 ████████████████████████████████████ Indeed, Tim Yang, Product Manager,

12 ████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████

14     16.    As illustrated in the numerous Motiff documents and testimony, ████████████

15 ████████████████████████████████████ These documents reinforce the same message

16 discussed in the documents summarized in my Initial Declaration.[50]

17     17.    Motiff's ████████████████████████████████████████████████████

18 Defendants' ████████████████████████████████████████████████

19 ████████████████ █ ████████████████████████████████████

---

41 *Id.* at 160:16-161:4
42 *Id.* at 63:16-64:5; 255:12-18
43 *Id.* at 65:21-66:6, 68:3-5
44 *Id.* at 354:21-355:3
45 *Id.* at 107:25-108:6
46 Ex. 6 (E. Zhang Dep.) at 256:20-258:4; 265:23-280:25; 285:14-287:2
47 Ex. 13 (Ex. 541 to E. Zhang Dep.)
48 *Id.*
49 Ex. 15 (Yang Dep.) at 38:19-20; 49:20-22
50 ████████████████████████████████████████████████████████
████████████████████████████████████
51 Ex. 27 (MOTIFF_PROD_0001513); Ex. 30 (MOTIFF_PROD_0001437)



[52,53,54] Defendants'

[55]

Further, Mr. M. Zhang stated [58]

18.    Based on these documents, my opinions stated in my Initial Declaration remain unchanged and are made even more evident based on the Motiff documents and testimony discussed above.

**III.    ASSESSMENT OF THE ELLIS DECLARATION**

19.    At a high level, the Ellis Declaration contains numerous misrepresentations of my Initial Declaration and ignores the evidence produced by Defendants that underscore the harm that Figma will suffer in the absence of a preliminary injunction.  Despite Mr. Ellis' claim that "these forms of alleged harms can be quantified under lost profits damages and are commonly quantified by damages experts," he fails to provide actual quantifications of damages.[59]

---

[52] Ex. 28 (MOTIFF_PROD_0000187); Ex. 29 (MOTIFF_PROD_0000188); Ex. 30 (MOTIFF_PROD_0001437)
[53]

*See* Ex. 27
(MOTIFF_PROD_0001513); Ex. 28 (MOTIFF_PROD_0000187); Ex. 29 (MOTIFF_PROD_0000188)
[54] Ex. 28 (MOTIFF_PROD_0000187)

[55] Ex. 27 (MOTIFF_PROD_0001513); Ex. 30 (MOTIFF_PROD_0001437)
[56] Ex. 7 (M. Zhang Dep.) at 99:7-17
[57] Ex. 24 (certified translation of Ex. Z to R. Zhang Supp. Decl.); *see also* Ex. 8 (R. Zhang Dep.) at 201:22-202:21
[58] Dkt. No. 60-4 (English Translation of Chinese Declaration of Mingzhe (Max) Zhang) at p. 2
[59] Ellis Declaration, p. 4

20.     Mr. Ellis asserts that "the Schoettelkotte Declaration fails to identify any Figma customers or revenues lost to Motiff."[60] Mr. Ellis claims that "basic information" such as "relevant financial data, customer lists, churn data, and conversion data of the parties" should be considered.[61] As an initial matter, at the time of my Initial Declaration, Motiff had not produced any data related to its customers. As such, the types of documents Mr. Ellis claims I "could have asked for" from Figma would have been of no benefit without Motiff's user data.[62] However, subsequent to my Initial Declaration, Motiff ██████████████████████████████████████████████████████████ ███████████████████████████████████████[63]███████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████ However, Mr. R. Zhang confirmed ████████████████████████████████████████████████████████████[65] In addition,████████████████████████████████████████████████████████ ████████████████████████████████████ Mr. Ellis did not address Motiff's user data in his declaration and████████████████████████.[66] Importantly, he also failed to consider██████████████████████████████████████████████ ████████████████████

21.     Mr. Ellis references an X social media post by Mr. R. Zhang that was cited in my Initial Declaration. Specifically, Mr. R. Zhang stated that Motiff has "had quite a few Figma users switch over to us."[67] Mr. Ellis asserts that I "did not analyze Figma's transaction-level financial data (identifying Figma customers that it claims were lost to Motiff) to determine whether this statement is true."[68] Mr. Ellis' statement is peculiar for several reasons. First, Mr. Ellis' statement

---

[60] *Id.* at p. 7; *see also id.* at p. 8 ("[t]he Schoettelkotte Declaration does not identify a single lost customer and neither can Figma's own employee.")
[61] *Id.* at p. 8
[62] *Id.* at pp. 7, 8
[63] Ex. 27 (MOTIFF_PROD_0001513); Ex. 30 (MOTIFF_PROD_0001437)
[64] Ex. 7 (M. Zhang Dep.) at 99:7-17
[65] Ex. 8 (R. Zhang Dep.) at 215:16-21
[66] Ex. 1 (Ellis Dep.) at 34:13-36:21
[67] Dkt. No. 28-68 (https://x.com/Ryan_Motiff/status/1866733271670984760/)
[68] Ellis Declaration, p. 9

1    suggests that Mr. R. Zhang's social media post is false.  Mr. Ellis could have interviewed Motiff

2    employees to determine the identity of customers referenced in Mr. R. Zhang's social media post.

3    Mr. R. Zhang testified ████████████████████████████████████████████████████████████

4    ███████████████████████████████ ▪    Second, by the time that Mr. Ellis submitted his

5    declaration, ████████████████████████████████    As stated above, Mr. Ellis did not

6    address these users in his declaration and testified ████████████████████████ [70]

7        22.    Mr. Ellis goes on to claim that he "understand[s] that customers may try out or use

8    multiple competing software products at once, and that it is commonplace for users to have primary

9    and secondary UI design tools.  In such circumstances, a customer, for example, could try out

10   Motiff's product without resulting in any actual lost customers or sales to Figma."[71]  In these

11   statements, Mr. Ellis does not account for the alleged copyright infringement and breach of contract

12   that Figma has asserted in this case.  While users may desire to use "primary and secondary UI

13   design tools," that does not account for the assumption that Motiff is infringing Figma's copyrights

14   and breached its contract.  Nevertheless, Mr. Ellis' claim underscores the presence of harm that

15   cannot be fully compensated since dual users may later decide to switch to solely using Motiff (or

16   switch to the "free" tier of Figma) after Motiff has built up its user base and become an acceptable

17   tool within the industry.  I note that the survey cited by Mr. Ellis indicates that the majority of

18   Figma users are not dual users, which further underscores the harm to Figma as Motiff holds itself

19   out to be a replacement for Figma (*i.e.*, customers switching to Motiff would be less inclined to use

20   Figma as a secondary tool).[72]

21       23.    Regarding price erosion, Mr. Ellis claims that "[t]he Schoettelkotte Declaration

22   could have included an analysis of Figma's own historical pricing trends to see if there was any

23   decline and could have calculated the difference (if any) to account for the profits that Figma would

24   have lost due to price erosion.  This would be a typical method for quantifying harm due to price

25

26   [69] Ex. 8 (R. Zhang Dep.) at 102:18-103:22; 253:13-254:21
     [70] Ex. 1 (Ellis Dep.) at 35:22-36:21
27   [71] Ellis Declaration, p. 9
     [72] https://uxtools.co/survey/2023/ui-design
28

1    erosion."[73]  However, such an analysis would not be necessary as Figma has maintained constant

2    pricing levels for many years (until recently as discussed in my Initial Declaration).[74]

3        24.    Mr. Ellis also claims that "the evidence in this case actually contradicts the

4    Schoettelkotte Declaration's claims.  More specifically, [] after Motiff entered the marketplace in

5    June 2024, Figma did not lower its price.  In fact, approximately nine months later, on March 11,

6    2025, Figma increased its pricing, as previously planned."[75]  However, Mr. Ellis fails to consider

7    that, ████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████

9    ████.[76]  As such, ████████████████████████████████████████

10   ████████    It is unsurprising that Figma has not yet been forced to adjust its pricing due to Motiff.

11   As I explained in my deposition, in my experience, companies operate in their normal course of

12   business assuming an infringement-free market.  However, this does not obviate the potential for

13   future harm as Motiff ████████████████████████████████████████████

14   ██████████████████

15       25.    Regarding market share, Mr. Ellis claims that lost market share "is simply another

16   way of claiming lost profits, which is a damages measure that is commonly quantified by damages

17   experts."[77]  I understand that "[c]ourts regularly recognize that being 'forced to compete against

18   products that incorporate and infringe [one's] own patented inventions' creates irreparable

19   harm."[78,79]  Such is the case with Figma relative to Motiff's alleged actions.  In his deposition, Mr.

20

21   [73] Ellis Declaration, p. 8
     [74] *E.g.*, https://web.archive.org/web/20180707231831/https://www.figma.com/pricing/

22   [75] Ellis Declaration, p. 10
     [76] Ex. 27 (MOTIFF_PROD_0001513); Ex. 30 (MOTIFF_PROD_0001437); Ex. 11 (R. Zhang

23   Supp. Decl.) at p. 3; Ex. 25 (certified translation of Ex. AA to R. Zhang Supp. Decl.) at p. 4
     [77] Ellis Declaration, p. 13

24   [78] *In re: Aflibercept Patent Litigation*, MDL No. 1:24-MD-3103 (No. 1:22-cv-61), June 11, 2024

25   (Order Granting Motion for Permanent Injunction), at p. 25
     [79] In *Smartrend Manufacturing Group v. Opti-Luxx*, the court found that the lost profits

26   determined by the jury in that case was for "*past* lost profits," and that "this says nothing about
     the *continued* or *future* harm stemming from [defendant's] infringement." *Smartrend*

27   *Manufacturing Group (SMG), Inc. v. Opti-Luxx, Inc.*, Nos. 1:21-cv-1009; 1:22-cv-915, Western
     District of Michigan, February 23, 2024 (Opinion), at pp. 13, 14

28

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD                                                         10

1    Ellis ████████████████████████████████████████████████████████████████

2    ██████████████████████████████████████████████████████████████████████

3    ████████████████████████████████████████████████[80]    As discussed previously,

4    ████████████████████████████████████████████

5          26.    Next, Mr. Ellis appears to claim, without evidence, that Figma lacks a technology

6    advantage—despite Figma's significant market share.[82]  Mr. Ellis states that my Initial Declaration

7    "fails to mention that Figma's product 'was initially free, only adding a paid tier two years after its

8    launch.'"[83]    Mr. Ellis' statement highlights the potential harm to Figma's market share due to

9    Motiff's alleged actions.  ████████████████████████████████████████████

10   ██████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████    all the while using Figma's

12   copyrights and breaching its agreement with Figma to achieve this goal.

13         27.    Mr. Ellis questions how Figma has grown and solidified its market position since

14   2016, suggesting that factors other than Figma's technology are responsible for such growth.[84]  Mr.

15   Ellis' commentary and theorizing do nothing to address ████████████████████████

16   ████████████████████████████████████████████    Nevertheless, I am

17   aware of no requirement, and Mr. Ellis has cited none, that suggests a plaintiff's market share must

18   be tied solely to technical innovations to assess loss of market share and the resulting irreparable

19   harm.

20         28.    Regarding harm to brand recognition and goodwill, Mr. Ellis claims that he

21   "understand[s] that Figma's alleged industry-recognized innovation from 2016 was a cloud-based

22   approach in the UI/UX design space."[85]    Mr. Ellis opines that it "is unreasonable for the

23   Schoettelkotte Declaration to assume that Figma's alleged 2016 technology advantage would

24   _____

25   [80] Ex. 1 (Ellis Dep.) at 137:19-138:20; 144:10-145:7; 166:2-9
     [81] *E.g.*, Ex. 7 (M. Zhang Dep.) at 148:18-149:1
26   [82] Ellis Declaration, p. 16
     [83] *Id.* at p. 16
27   [84] *Id.* at pp. 17, 18
     [85] *Id.* at p. 18
28

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD                                                11

persist or that others would or could not use the same approach."[86]  Mr. Ellis ignores ███ ██████████████████████████████████████████ that Figma has brought significant innovation as a leader in the UI/UX space.  ██████████████████████████████████████ ████████████████ belies Mr. Ellis' assertion that Figma's technology advantage has not persisted since 2016.  Additionally, Mr. Ellis does nothing to address the numerous awards (since 2016) bestowed to Figma for its innovation that were identified in my Initial Declaration.  Mr. Ellis also ignores the fact that more than ████████████████████████████████████████ ██████

29.    Further, Mr. Ellis claims that "social posts do not demonstrate that the users were confused by the two products" (referring to Motiff and Figma products).[88]  Mr. Ellis states that "[h]ere, the information cited in the Schoettelkotte Declaration indicates that consumers actually do know the difference between the two companies."[89]  However, as reflected in his deposition testimony, ████████████████████████████████████████████

30.    Regardless, I understand that confusion is not a prerequisite for harm to a company's reputation and its perception in the marketplace (particularly in non-trademark matters).  As noted in my Initial Declaration, Figma's status as an innovator has been recognized not only by the industry at large, but by Motiff itself.  Additionally, ██████████████████████████████████ ████████████████████████████████████████████ Mr. Ellis declined to substantively address this in his declaration, and instead opted to focus on a purported lack of confusion, which I understand is not a requirement for harm to brand recognition and goodwill.

31.    I understand that discovery in this case is ongoing.  I may supplement this declaration and my opinions if additional information becomes available to me.

---

[86] *Id.* at p. 18
[87] Dkt. No. 28-2 (Ex. 1 to Declaration of Megg Meneguzzi)
[88] Ellis Declaration, p. 19
[89] *Id.*
[90] Ex. 1 (Ellis Dep.) at 56:14-57:4; Ex. 548

1    I declare under the penalty of perjury under the laws of the Unites States of America that

2    the foregoing is true and correct.

3        Executed April 17, 2025, at Houston, Texas.

4

5

6    _____

7                W. Todd Schoettelkotte

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD

13

1

**ATTESTATION OF E-FILED SIGNATURE**

2

I, Richard S.J. Hung, am the ECF User whose ID and password are being used to file this

3

Reply Declaration of W. Todd Schoettelkotte in Support of Figma's Preliminary Injunction

4

Motion.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that W. Todd Schoettelkotte has

5

concurred in this filing.

6

7

Dated:  April 17, 2025                                    */s/ Richard S.J. Hung*
                                                                  Richard S.J. Hung

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY DECL. OF W. TODD SCHOETTELKOTTE ISO FIGMA'S PI MTN.
CASE NO. 3:24-CV-06507-JD

14