1  RICHARD S.J. HUNG (CA SBN 197425)
   JOHN S. DOUGLASS (CA SBN 322801)
2  JONATHAN M. MORRIS (CA SBN 356152)
   HOLLY M. PETERSEN (CA SBN 351588)
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone:    (415) 268-7000
5  Facsimile:    (415) 268-7522
   rhung@mofo.com; jdouglass@mofo.com
6  jonathanmorris@mofo.com; hollypetersen@mofo.com

7  BITA RAHEBI (CA SBN 209351)
   BENJAMIN J. FOX (CA SBN 193374)
8  RYAN J. MALLOY (CA SBN 253512)
   ROSE S. LEE (CA SBN 294658)
9  MORRISON & FOERSTER LLP
   707 Wilshire Boulevard
10 Los Angeles, California 90017
   Telephone:    (213) 892-5200
11 Facsimile:    (213) 892-5454
   brahebi@mofo.com; rmalloy@mofo.com
12 bfox@mofo.com; roselee@mofo.com

13 *Attorneys for Plaintiff*
   FIGMA, INC.
14

15                UNITED STATES DISTRICT COURT

16              NORTHERN DISTRICT OF CALIFORNIA

17                  SAN FRANCISCO DIVISION

18 FIGMA, INC.,                          Case No. 3:24-cv-06507-JD

19            Plaintiff,                 **PLAINTIFF FIGMA, INC.'S REPLY IN
                                         SUPPORT OF MOTION FOR LEAVE
20      v.                               TO AMEND COMPLAINT**

21 MOTIFF PTE. LTD., YUANFUDAO HK        Date: TBD
   LTD., and KANYUN HOLDINGS GROUP       Courtroom: 11, 19th Floor
22 CO. LTD.,                             Judge: Hon. James Donato

23            Defendants.                Action Filed: September 16, 2024
                                         Trial Date: August 18, 2025
24

25

26

27

28

1   **I.   INTRODUCTION**

2        Under the liberal pleading standard of Rule 15(a)(2), leave to amend should be "freely

3   given," *i.e.*, the presumption in favor of amendment is strong, and Defendants have not made—

4   and cannot make—the "strong showing" required to overcome it.  *Eminence Capital, LLC v.*

5   *Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

6        The opposition argues that Defendants would be prejudiced by being held to account for

7   their ongoing, unauthorized access to Figma's computers and code—ignoring entirely the

8   *prejudice to Figma* caused by Defendants' violations of law and flouting of a Court order.  As

9   Defendants tell it, Figma should have known immediately upon receiving on April 7, 2025, Ethan

10   Zhang's 40-page list of Motiff employees who had unauthorized access to Figma's hidden

11   features, exactly *how* Defendants breached Figma's systems and the legal significance of it, and

12   filed an under-researched amendment immediately.  In so arguing, Defendants ignore that the

13   parties were immersed in PI hearing preparation and expedited discovery and that Defendants

14   fought vigorously to prevent the extent of their misconduct from being revealed.  Defendants then

15   argue that Figma did not "even raise[] the *prospect*" that Defendants should be held to account,

16   ignoring that Figma alerted the Court on May 15 of Defendants' unauthorized access, and the

17   Court ordered Defendants to stop it.  (*Compare* ECF No. 127 ("Opp.") at 1 *with* ECF No. 105 at

18   10:6-25.)  Then, Defendants flouted the Court's order, accessing Figma's systems again and

19   again.  They now claim it is too late to do anything about their actions.[1]  Truly?

20        Figma acted diligently, and without the ulterior motives that Defendants cynically ascribe

21   to it, in investigating and pursuing remedies for Defendants' ongoing misconduct, which includes

22   unauthorized access as recently *as May 28*.  Nor will Defendants be prejudiced by the

23   amendment: the new claims are closely related to the existing claims and brought against closely

24   integrated companies employing the key Motiff actors (information again hidden in discovery).

25        Defendants know these facts well, and Figma's new information is also addressed in its

26   expert reports (served on June 18) as part of ongoing discovery.  The amendment is important for

---

[1] Defendants argue gratuitously about their expert's opinion of Figma's copyright claims (Opp. 1), with which Figma and its expert vigorously disagree.  Defendants' copying is plain to see from the source code *and* an ordinary observer's review of the parties' competing products.

1    a full picture of this dispute because it explains, based on information revealed in discovery, how

2    Defendants were able to mimic Figma's copyrighted product so closely.  In short, Defendants

3    know as much *or more than* Figma about their unauthorized access and violations of the DMCA,

4    CFAA, and UCL—yet Figma is not asking to extend the discovery schedule or pre-trial dates.

5            Leave to amend is warranted while maintaining the existing case schedule.  If, however,

6    the Court were to conclude a scheduling adjustment is appropriate, doing so is preferable to

7    requiring Figma to proceed piecemeal or giving Defendants the undeserved opportunity to argue

8    Figma's meritorious claims should be foreclosed altogether.

9    **II.     ARGUMENT**

10           **A.      Defendants Have Not and Cannot Show Undue Prejudice.**

11           Although Figma's new claims for relief include additional legal elements, they are closely

12   related to the existing copyright and contract claims and part of Figma's core theory of the case:

13   Defendants have unlawfully created a clone of Figma's flagship product and are giving it away

14   for free or licensing it at below-market rates to erode Figma's user base.  (Proposed FAC ¶¶ 26-

15   38.)  Defendants say they need more discovery as to the details of their own unauthorized access

16   to Figma's software, the technological safeguards they evaded, and damages.  (Opp. 5-6.)  But

17   Figma's witnesses have already been questioned on the subject matter of the Amended

18   Complaint, and Figma is making witnesses available to discuss all aspects of what Defendants

19   claim is "new" information.[2]  Figma has no more knowledge about Defendants' unauthorized

20   access than Defendants themselves.  And Figma does not, contrary to Defendants' speculation,

21   intend to seek a "third round" of depositions on the existing schedule.  (*See* Opp. 9.)  In any

22   event, Figma will work with Defendants in scheduling reasonable follow-up discovery and is

23   confident the case will be ready for trial using the Amended Complaint as the operative pleading.[3]

24           Defendants' other protestations about "additional work" are unsupported:  They say only

25   _____

26   [2] A Figma witness who investigated Defendants' unauthorized access will be deposed next week
     and expert reports have been served on other technological aspects and damage theories—
27   including Figma's proposed claims and damages under the DMCA, CFAA, and UCL.

28   [3] "[A]dditional discovery … by the non-moving party" does not by itself "constitute[] a sufficient
     showing of prejudice."  *Esebag v. Whaley*, 2021 WL 6102470, at *3 (C.D. Cal. Mar. 4, 2021).

1   that Motiff has "collected thousands of documents," which is unsurprising given Defendants'

2   painstaking efforts to breach Figma's systems and copy its software down to the last detail.  (Opp.

3   6.)  Any "wear and tear" on their employees is of Defendants' own making:  the Motiff parties,

4   not Figma, are solely responsible for illegitimately accessing and copying Figma's platform.

5          Defendants' cited cases are inapposite.  Each involved lengthy pretrial schedules where a

6   party delayed many months—or years—or pursued multiple broadening amendments.  *See, e.g.*,

7   *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809-10 (9th Cir. 1988) (holding movant should

8   have been aware of one of two new claims as of filing its original complaint, made multiple

9   pleading attempts, and delayed six months after all information supporting its new claims became

10  known); *Scognamillo v. Credit Suisse First Bos.*, LLC, 587 F. Supp. 2d 1149, 1155 (N.D. Cal.

11  2008) (denying motion for leave to file *sixth* amended complaint *five years* into litigation); *Callan*

12  *v. Amdahl Corp.*, 1995 WL 261420, at *5 (N.D. Cal. Apr. 24, 1995) (motion to amend filed

13  14 months into litigation and would have transformed case "focused on individual wrongful

14  discrimination claims . . . to class-wide claims . . . of defendant's fiduciary duties.").

15         Nor can Defendants claim to be "surprised by new allegations."  (Opp. 5 (quoting *Booker*

16  *v. Glotel, Inc.*, 2006 WL 823218, at *3 (N.D. Cal. Mar. 28, 2006).)  As the correspondence

17  among counsel reflects, Figma raised Defendants' unauthorized access and misuse of its systems

18  repeatedly in the weeks leading up to the filing of this motion.  Defendants apologized and said

19  they would take corrective actions, yet their unauthorized access continued—including in new

20  and more troubling ways.  (*See, e.g.*, ECF No. 115-1 (Hung Decl. Exs. 9-12).)[4]

21         Defendants have made no credible showing of prejudice, let alone *undue* prejudice.

22  **B.     Figma Acted Diligently in Seeking to Amend; It Did Not Unduly Delay**

23         As noted above, Figma acted reasonably in uncovering, analyzing, and bringing its new

24  claims to address Defendants' ongoing misconduct.  The investigation was time-consuming

25  because Defendants' witnesses provided partial or conflicting information about the entities

26  responsible for the Motiff product, and the technical methods used to access Figma's protected

27

28  [4] Figma sent Defendants a further letter as recently as June 6 regarding Defendants' continuing unauthorized access.  Defendants have not replied.

1    information are complex and have changed over time.  (ECF No. 115-1 (Hung Decl. ¶ 3.))

2        Before the hearing on May 15, the Court had not set a case schedule.  Figma could not

3    have foreseen that the Court would set this case on a four-month track to trial.  Once the schedule

4    was set, Figma moved within the month to evaluate additional potential claims against the Motiff

5    entities, to prepare its Amended Complaint, and to satisfy counsel's duties under Rule 11, while

6    continuing to receive often-conflicting and confusing information as to which entities and

7    individuals were behind the unauthorized access to Figma's platform.  (*See* Mot. 3-5.)

8        Against this backdrop, Defendants complain that Figma "has continued to aggressively

9    press forward with broad ranging discovery," including depositions in Hong Kong on June 10-17,

10   while Motiff propounded "only" dozens of requests of its own.  (Opp. 3.)  The need for that

11   discovery is obvious:  Defendants deployed teams of personnel from multiple related companies

12   in China to exploit Figma's platform and replicate virtually every quirk and element of Figma's

13   flagship product.  To do so, Defendants deployed sophisticated technical hacks that required

14   effort and analysis by Figma and its counsel to comprehend.  (Mot. 3-4; FAC ¶¶ 73-80.)

15   Unwinding Defendants' complex scheme in seven weeks—from the production of Ethan Zhang's

16   40-page spreadsheet on April 7, through depositions and discovery disputes due to Defendants'

17   obstruction, to seeking leave to file the Amended Complaint—is not "undue delay."

18       **C.    Defendants, Not Figma, Are Engaged in "Gamesmanship"**

19       Defendants say that Figma is involved in gamesmanship, but they are projecting.

20   Defendants, not Figma, invoked "employee privacy" in deposition as a basis to withhold

21   information about Motiff personnel who were using personal or "burner" accounts to access

22   Figma's system.  (ECF No. 115-1, Ex. 4, 107:5-14.)  Defendants even refused to produce basic

23   organizational charts, yet incredibly now say Figma is seeking unfair advantage by naming as

24   defendants closely related companies (*see* Opp. 4-5)—including two companies that employ

25   Motiff's central figures, Ryan and Ethan Zhang (ECF No. 115-1, Exs. 4-5).  It defies credulity for

26   Defendants to say that *Figma* is causing a "scramble," when Figma has been forced to unearth

27   Defendants' misconduct and simultaneously combat ongoing breaches of its platform.  (*Id.*, Exs.

28   9-12.)  The timing of Figma's motion is also not the result of "bad faith or a dilatory motive," as

1   Defendants claim.  (Opp. 9.)  Yes, defense counsel was in Hong Kong when the motion was filed;

2   so too was Figma's counsel, taking depositions over Defendants' improper objections.

3           **D.      Amendment Would Not Be Futile**

4           An amendment is futile "only if no set of facts can be proved under the amendment to the

5   pleadings that would constitute a valid and sufficient claim." *Barahona v. Union Pac. R.R. Co.*,

6   881 F.3d 1122, 1134 (9th Cir. 2018) (citation omitted).  Accordingly, "[d]enial of leave to amend

7   on this ground is rare." *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003).

8   At most, Defendants have identified disputed factual or legal issues, which are not a basis for

9   denying leave to amend.  *Entangled Media, LLC v. Dropbox Inc.*, 348 F.R.D. 649, 656 (N.D. Cal.

10  2025).  Notably, Defendants do not argue that Figma's UCL claim is futile; their arguments

11  concerning the CFAA and DMCA claims are make-weight.

12          The CFAA claim properly pleads all required elements, including loss.  The statute

13  defines loss as "any reasonable cost to any victim, including the cost of responding to an

14  offense."  18 U.S.C. § 1030(e)(11).  Figma's allegation that it "expend[ed] resources to

15  investigate the repeated, unauthorized access and abuse of its computers" fits squarely within this

16  definition.  (FAC ¶ 112.)  While *Van Buren v. United States*, 593 U.S. 374 (2021), interpreted

17  "loss" to "focus on technological harms" (*id.* at 392), as Defendants acknowledge (Opp. 12),

18  courts in this district have correctly "decline[d] to construe *Van Buren* . . . as foreclosing a loss

19  based on . . . investigative costs."  *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218,

20  1265 (N.D. Cal. 2022); *cf. X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948

21  (N.D. Cal. 2024) (declining to find covered investigatory losses where the servers to be

22  investigated were "not even [plaintiff's] servers").

23          Defendants' argument concerning Figma's DMCA claim is also meritless; it misstates

24  Defendants' conduct as merely "using a password and user name to access a service."  (Opp. 12.)

25  This is not what the Amended Complaint alleges.  (FAC ¶¶ 73-80 (explaining hidden feature

26  flags, forcing Internet browsers to load non-public software, creation of fictitious organizational

27  account, use of "burner" accounts, and VPNs to evade Figma's efforts to block Defendants).)

28  *See* 17 U.S.C. § 1201(a)(3)(A) (defining "circumvent a technological measure" as avoiding a

technological measure "without the authority of the copyright owner").  In any event, the sole authority Defendants cite, *iSpot.tv, Inc. v. Teyfukova*, recognizes that creating accounts to gain unauthorized access can violate the DMCA.  2023 WL 1967958, at *12 n.12 (C.D. Cal. Jan. 25, 2023) (citing cases).  Nothing in the proposed Amended Complaint is futile.

> **E.    If the Court Concludes the Schedule Should Be Adjusted, Doing So Is Preferable to Denying Leave to Amend and Prompting Piecemeal Litigation**

Figma's claims under the CFAA, DMCA, and UCL are meritorious, and the addition of the three Motiff-affiliated entities is necessary to ensure that Figma will not be delivered an illusory victory:  winning at trial but being unable to enforce a judgment because of a corporate shell game.  Accordingly, Figma is determined to pursue all available remedies against all proposed Defendants (including new claims that Figma's expert values at $383 million).  Figma sees no reason to depart from the existing trial schedule given the work that has already been completed and the expert discovery now being scheduled.  But if the Court disagrees, Figma respectfully requests a modest adjustment to the schedule to permit all claims to be tried together.

The alternatives that Defendants appear to favor—*viz.*, conducting a trial on copyright and contract claims against three of six culpable entities, while leaving closely related claims for unauthorized access to the same Figma platform at issue here against six affiliated entities for another day or lawsuit—would not serve the efficient administration of justice.

## III.    CONCLUSION

Defendants have failed to meet their heavy burden of showing undue prejudice, bad faith, or futility to overcome Rule 15's liberal standard.  The proposed Amended Complaint is necessary to address the full scope of Defendants' ongoing wrongdoing, including very recent misconduct in defiance of the Court's order.  Figma's motion for leave should be granted.

Dated: June 20, 2025

MORRISON & FOERSTER LLP

By:  */s/ Richard S.J. Hung*
Richard S.J. Hung

*Attorneys for Plaintiff*
FIGMA, INC.